DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| RAJESH RADHAKRISHNAN,<br>Plaintiff<br><br>v.<br><br><br>MICHAEL CHERTOFF, as Secretary of<br>DEPARTMENT OF HOMELAND<br>SECURITY, ET AL.,<br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 07-327S |

**DEFENDANTS' MOTION TO DISMISS**
**FOR LACK OF SUBJECT MATTER JURISDICTION**

Defendants, by and through their undersigned counsel, move for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) as set forth in the accompanying memorandum of law filed herewith.

Respectfully submitted,

MICHAEL CHERTOFF, Secretary of
Department of Homeland Security, et. al.
Defendants

By their Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Richard B. Myrus
RICHARD B. MYRUS
Assistant U.S. Attorney
United States Attorney's Office
Fleet Center
50 Kennedy Plaza, 8th floor
Providence, RI 02903
401/709-5000
401/709-5017 (fax)
Email: richard.myrus@usdoj.gov

DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| RAJESH RADHAKRISHNAN,<br>Plaintiff | ) | |
| v. | ) | C.A. No. 07-327S |
| MICHAEL CHERTOFF, as Secretary of<br>DEPARTMENT OF HOMELAND<br>SECURITY, ET AL.,<br>Defendants | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

## I. INTRODUCTION

In this action, pro se plaintiff Rajesh Radhakrishnan, a citizen of India, seeks an order compelling defendants to expedite his, and his spouse's, Form I-485 applications to adjust status to lawful permanent residency. Plaintiff alleges that defendants have violated the Administrative Procedures Act ("APA") by unreasonably delaying the adjudication of their adjustment-of-status applications and that he is entitled to a writ of mandamus to compel the United States Citizenship and Immigration Services ("USCIS") to process the applications immediately.

Plaintiff's Complaint should be dismissed because the Court lacks subject matter jurisdiction to adjudicate plaintiff's claims. The Immigration and Naturalization Act § 242 divests the courts of jurisdiction over suits, such as plaintiff's, that concern a decision or action committed to the discretion of the Attorney General or the Secretary of Homeland Security. See 8 U.S.C. 1252(a)(2)(b). Moreover, even in the absence of this jurisdictional bar, plaintiff cannot establish the prerequisites to the Court's exercise of jurisdiction under the mandamus statute. Specifically, plaintiff cannot show that he has a clear right to immediate adjudication or that the

defendants have a duty to act on his application within any particular time frame. Last, the Court is precluded from reviewing the plaintiff's claim under the APA because the APA exempts from judicial review actions that are "committed to agency discretion by law." 5 U.S.C. § 701(a)(2).

## II. BACKGROUND

### A. Statutory and Regulatory Framework

Section 245 of the Immigration and Naturalization Act ("INA") authorizes the Attorney General to adjust to permanent residence status certain aliens who have been admitted into the United States. 8 U.S.C. § 1255. Adjustment of status, however, is committed to the Attorney General's discretion as a matter law. Section 1255(a) provides:

> The status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence . . . .

8 U.S.C. § 1255(a).[1] Moreover, the statute does not set forth any time frame in which the government must make a determination on an application to adjust status, and no time limit is specified in the regulations delineating the USCIS's procedures for processing an application for adjustment of status. See 8 C.F.R. § 245 et. seq.; see also 8 C.F.R. § 103.2(b)(18) (conferring discretion on immigration officers to withhold adjudication while applications are investigated); Qiu, 486 F. Supp.2d at 418-19 (addressing section 103.2(b)(18)).

Before a decision is rendered on an alien's application to adjust status, USCIS, in

---

[1] While the text of 8 U.S.C. § 1255(a) refers to the Attorney General as the official who may grant an adjustment of status, the authority to adjudicate applications for adjustment of status has been transferred to the Secretary of Homeland Security and the USCIS. See 6 U.S.C. §§ 271(b)(5), 557 (2006); Qiu v. Chertoff, 486 F. Supp.2d 412, 416 n.2 (D.N.J. 2007). For ease and consistency, however, this memorandum refers to the Attorney General's discretion under section 1255(a).

conjunction with the Federal Bureau of Investigation ("FBI"), conducts several forms of security and background checks to ensure that the alien is eligible and that he or she is not a risk to national security or public safety. See Declaration of Genise X. Walker submitted herewith ("Walker Decl."), ¶ 4; Eldeeb v. Chertoff, 2007 WL 2209231, at *1-2 (M.D. Fla. July 30, 2007) (describing the FBI's name check process); 8 U.S.C. § 1105(a). These checks currently include: (1) an FBI name check, which is run against FBI investigative databases compiled by law enforcement agencies; (2) an FBI fingerprint check, which provides information relating to criminal background within the United States; and (3) a check against the Interagency Border Inspection System. (See Walker Decl., ¶ 4.)

In fiscal year 2006, the FBI processed in excess of 3.4 million name checks, approximately 1.6 million of which were submitted by the USCIS. (Declaration of Michael A. Cannon submitted herewith ("Cannon Decl."), ¶ 21-22.)

The FBI's records indicate that the FBI received a name check request for plaintiff from the USCIS in April 2005 and a subsequent request in July 2005.[2] (Cannon Decl., ¶¶ 41-42.) The FBI is performing its name check of plaintiff in accordance with the FBI's standard protocol, but has not yet completed the check. (Cannon Decl., ¶¶ 41-42.) The USCIS has determined that until the FBI completes plaintiff's name check, the USCIS cannot adjudicate plaintiff's application. (See Walker Decl., ¶ 8; SAC, ¶ 23.)

[2] According to USCIS's records, USCIS requested plaintiff's name check in July 2005. (See Walker Decl., ¶ 7.)

### B. Plaintiff's Allegations

Plaintiff asserts that he has resided legally in the United States since August 1998.[3] (Second Amended Complaint ("SAC"), ¶2). He alleges that on March 11, 2005, he filed a Form I-485 Application to Adjust Status to Permanent Resident on the basis of his employment. (SAC, ¶ 10). He further alleges that his spouse filed an application as his derivative beneficiary on that same date.[4] (Id., ¶¶ 10 and 17.)

According to plaintiff, he has contacted the USCIS several times both in person and via the customer service phone line to determine why his case has been delayed. (SAC, ¶¶17 and 23). Plaintiff alleges that despite his efforts, the USCIS has not acted on his, or his spouse's, application. (SAC, ¶ 8.) According to plaintiff, the UCIS informed him on September 8, 2007, that his application was not ready for decision because the required background investigation had not been completed .[5] (SAC, ¶ 25.)

Plaintiff seeks relief pursuant to the APA and asks the Court to issue a writ of mandamus pursuant to 28 U.S.C. § 1361.[6]

---

[3] In reciting plaintiff's allegations, defendants in no way concede their veracity.

[4] Rajesh Radhakrishnan is the sole plaintiff named in this case. Although the Second Amended Complaint identifies plaintiff's spouse and seeks relief regarding her adjustment of status application, plaintiff has not alleged that he has standing to assert a claim on her behalf. (SAC, ¶ 2.) Moreover, plaintiff is a pro se litigant and cannot represent any other party in this matter. Local Rule Gen 205.

[5] Plaintiff also assets that on October 10, 2007, he received a request from the USCIS for confirmation that his required Tuberculin skin test had been conducted. (SAC, ¶ 27.) Plaintiff's Complaint is silent as to whether he has complied with this request.

[6] Plaintiff also cites the Declaratory Judgment Act, 28 U.S.C. § 2201, but does not request declaratory relief.

## III. LEGAL ANALYSIS

Plaintiff has the burden of establishing that the Court has subject matter jurisdiction over this matter. Bank One Texas, N.A. v. Montle, 964 F.2d 48, 50 (1st Cir. 1992). "No presumption of truthfulness attaches to the [plaintiff's] allegations [of jurisdiction]." Media Duplication Servs. Ltd. v. HDG Software, Inc., 928 F.2d 1228, 1235 (1st Cir. 1991). Moreover, matters outside the pleadings can be presented and considered by the court in ruling upon a motion to dismiss for lack of subject matter jurisdiction. Gonzalez v. United States, 284 F.3d 281, 288; Dynamic Image Techs. Inc. v. United States, 221 F.3d 34, 37(1st Cir. 2000).

### A. Plaintiff's Complaint Should Be Dismissed Under Rule 12(b)(1) Because 8 U.S.C. § 1252(a)(2)(B) Divests the Court of Jurisdiction.

Because the adjudication of plaintiff's I-485 application is expressly committed to the discretion of the Attorney General under the INA, 8 U.S.C. § 1252(a)(2)(B)(ii) strips this Court of subject matter jurisdiction over plaintiff's claims.[7] Section 1252(a)(2)(B) provides that, notwithstanding any other provision of law, including the mandamus statute, no court shall have jurisdiction to review:

> (i) any judgment regarding the granting of relief under section 1182(h), 1182(I), 1129b, 1229c, or 1255 of this title, or

[7] In addition to section 1252(a), section 1252(g) of Title 8 states that, except as otherwise provided in that section, and notwithstanding any other provision of law, including the mandamus statute, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any aliens." See Gomez-Chavez v. Perryman, 308 F.3d 796, 800 (7th Cir. 2002) ("Under § 1252(g), courts are barred from reviewing discretionary decisions to "commence proceedings, adjudicate cases, or execute removal orders."); Rogatch v. Chertoff, 2007 WL 1160358, at *2 (D. R.I. Apr. 17, 2007).

> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of [Title 8].

8 U.S.C. § 1252(a)(2)(B).[8]

Subsection (i) is inapplicable because there has not been any "judgment regarding the granting of relief" with respect to plaintiff's application. Subsection (ii), however, applies broadly to "any other decision or action." Under 8 U.S.C. § 1252(a)(2)(B)(ii), courts are barred from reviewing any decision or action the "authority for which is specified . . . to be discretion[ary]" under this "subchapter." Here, plaintiff seeks to compel the USCIS's adjudication of an adjustment of status application under 8 U.S.C. § 1255, which falls squarely within the scope of section 1252(a)(2)(B)(ii).

First, "this subchapter" refers to Subchapter II of Chapter 12 of Title 8 of the U.S. Code, which is composed of 8 U.S.C. §§ 1151 through 1381. Section 1255(a), which grants the Attorney General discretionary authority to adjudicate adjustment of status applications, is thus part of Subchaprter II.

Second, plaintiff seeks judicial review of "any other decision or action" under 1252(a)(2)(B)(ii). Indeed, plaintiff is seeking judicial review of both an agency decision and agency action. Specifically, plaintiff's Complaint challenges the USCIS's decision that it cannot immediately address plaintiff's adjustment application because the FBI name check has yet to be completed. (See SAC, ¶¶ 23 and 25; Walker Decl., ¶ 8.) In addition, plaintiff is seeking judicial

---

[8] As amended by the REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, 119 Stat. 231 ("Section 106").

review of UCIS's action in adjudicating his application. In contrast to the word "judgment" in section 1252(a)(2)(B)(I), "action" in section 1252(a)(2)(B)(ii) encompasses the series of acts that comprise the adjustment-of-status process, including the completion of background and security checks and the pace at which the process proceeds. See Safadi v. Howard, 466 F. Supp. 2d 696, 699 (E.D. Va. 2006).

Third, the authority for the decisions and actions regrading plaintiff's application is specified to be in the Attorney General's discretion. Section 1255(a) provides that an alien's status "may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe." Id. (emphasis added). Moreover, section 1255(a) provides no time frame for the adjudication of I-485 applications. By failing to specify any temporal limitations, and in leaving it to the Attorney General to prescribe any appropriate regulations, Congress vested the Attorney General with complete discretion over the process of adjudicating an I-485 application. The Attorney General's discretion necessarily includes not only whether to grant an adjustment, but also how and when to do so. See Grinberg v. Swacina, 478 F. Supp.2d 1350, 1353 (S.D. Fla. 2007) (holding that Congress intended to include the pace of processing an adjustment of status application within the Attorney General's discretionary function); Safadi, 466 F. Supp.2d at 699.

With respect to section 1252(a)(2)(B)(ii)'s jurisdiction-stripping language, the court in Safadi observed, "this statute's meaning is refreshingly free from ambiguity and its terms are pellucidly clear: It means that courts are precluded from reviewing any discretionary decision or action of USCIS," including decisions or actions regarding the adjustment-of- status process. Safadi, 466 F. Supp.2d at 698. In short, the USCIS is engaged in the continuing "action" of adjudicating plaintiff's application, and section 1252(a)(2)(B)(ii) precludes judicial intervention

into this discretionary process. See Tao Luo v. Keisler, 2007 WL 3357241, at *1-2 (D.D.C. Nov. 14, 2007) (reviewing cases and adopting the holding in Safadi as the "best reasoned approach"); Virelles v. Gonzalez, et al., 2007 WL 2979866, at * 2-4 (S.D. Fla. Oct. 11, 2007) (same); Abanov v. Gonzalez, 2007 WL 2872765, at *4-5 (S.D. Tx. Sept. 28, 2007) (same); see also Azadegan v. Chertoff, 2007 WL 2822783, at *4-5 (E.D. Mich. Sept. 27, 2007) (granting motion to dismiss).[9] Plaintiff's Complaint should be dismissed because, as this Court recently concluded in Rogatch, 2007 WL 1160358, at *2:

> Plaintiff's application for adjustment of status was filed pursuant to 8 U.S.C. § 1255. Section 1255(a) specifically confers broad discretion to grant or deny applications for adjustment of status such as that filed by Plaintiff. It thus appears that Section 1252(a)(2)(B)(ii) operates to exclude from this Court's jurisdiction any relief pursuant to 28 U.S.C. § 1361.

**B. The Court Lacks Subject Matter Jurisdiction To Grant Plaintiff's Request for Mandamus Under 28 U.S.C. § 1361.**

Even if 28 U.S.C. § 1252(a)(B)(ii) did not divest the Court of jurisdiction, the Court would lack jurisdiction to grant plaintiff's request for mandamus under 28 U.S.C. § 1361.[10] "The remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." Allied

---

[9] Although several courts in other jurisdictions have reached a different conclusion, "the majority of courts [ ] have dismissed similar actions for lack of subject matter jurisdiction, under the rationale that Section is 242 and 245 of the [INA] preclude judicial review of any discretionary 'decision or action' of the Attorney General in immigration matters. These courts have held that this phase includes the pace at which immigration decisions are made." Grinberg, 478 F. Supp.2d at 1352; but see Tang v. Chertoff, 493 F. Supp.2d 148 (D. Mass. 2007); Wu v. Chertoff, 2007 WL 1223858 (N.D. Cal. 2007).

[10] The Declaratory Judgment Act, which plaintiff also invokes, "is not an independent source of federal jurisdiction; the availability of such relief presupposes the existence of a judicially remediable right." Schilling v. Rogers, 363 U.S. 666, 677 (1960 ) (citing Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950)).

Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 34 (1980). Thus, according to the United States Supreme Court, the remedy of mandamus under 28 U.S. C. § 1361 "will issue only to compel the performance of 'a clear nondiscretionary duty.'" Pittston Coal Group v. Sebben, 488 U.S. 105, 121 (1988) (quoting Heckler v. Ringer, 466 U.S. 602, 616 (1984)).

Here, plaintiff cannot establish that defendants owe him a "clear nondiscretionary duty." See Safadi, 466 F. Supp.2d at 700. First, as discussed above, the ultimate decision regarding the adjustment of an alien's status is committed to the discretion of the Attorney General by statute. 5 U.S.C. § 1255(a); see also Elkins v. Moreno, 435 U.S. 647, 667 (1978) ("Adjustment of status is a matter of grace, not right."). Second, in contrast to the statute governing naturalization applications, for example, neither section 1255(a) nor its corresponding regulations provide a mandatory time frame in which adjustment-of-status applications must be adjudicated. Compare 8 U.S.C. § 1255 with 8 U.S.C. §1447(b). Consequently, USCIS has no specific, mandatory duty to adjudicate plaintiff's application at any particular time.

In failing to specify any temporal limitations, and in leaving it to the Attorney General to prescribe appropriate regulations, Congress vested the Attorney General with full discretion over the process of adjudicating an I-485 application. Therefore, "[i]n keeping with the plain language of [8 U.S.C. § 1255(a)], courts have consistently found mandamus inappropriate in actions based on the government's failure to adjust an applicant's status." Saleh v. Ridge, 367 F. Supp.2d 508, 511 (S.D.N.Y. 2005); see Tao Luo, 2007 WL 3357241, at *2 n.4; Safadi, 466 F. Supp.2d at 698-700 (E.D. Va. 2006) (finding no section 1361 jurisdiction); Checknan v. McElroy, 313 F. Supp.2d 270, 274 (S.D.N.Y. 2004 ("courts have repeatedly found that mandamus relief is not available for delays in processing applications"); Zheng v. Reno, 166 F.

Supp.2d 875, 880-81 (S.D.N.Y. 2001) (mandamus relief unavailable for delays in the adjustment process); but see Salehian v. Novak, 2006 WL 3041109, at *3 (D. Conn. Oct. 23, 2006) (exercising mandamus jurisdiction to compel adjudication of adjustment-of-status application).[11]

Contrary to plaintiff's assertion, defendants have not failed to act with respect to his application. Rather, given the large volume of applications requiring adjudication, the extensive background check that is required for national security and public safety, and the limited resources available, the USCIS and the FBI are proceeding with the adjudication of applications for adjustment of status consistent with existing protocols. (See Cannon Decl., ¶ 42.) USCIS has begun its adjudicative process for plaintiff's application and requested an FBI background check. (See Cannon Decl., ¶ 42.) Pursuant to USCIS policy, applicants must pass all required security checks before their applications can be adjudicated. See Eldeeb, 2007 WL 2209231, at * 1; Walker Decl, ¶ 5. The delay in adjudicating plaintiff's I-485 application is not due to agency inaction, but rather to the volume of pending name check requests. (Cannon Decl., ¶¶ 23-30.)

---

[11] Plaintiff also has named the FBI as a defendant in this case. The FBI, however, does not owe plaintiff a clear, nondiscretionary duty to perform a name check in connection with plaintiff's application for adjustment of status. See Eldeeb, 2007 WL 2209231, at *21 (citing cases); Shelabi v. Gonzalez, 2006 WL 3032413, at *5 (E.D. Mo. Oct. 23, 2006); but see Kaplan v. Chertoff, 481 F. Supp.2d 370 (E.D. Pa. 2007). Therefore, the Court is without jurisdiction to review the pace at which the FBI is processing plaintiff's applications. See Eldeeb, 2007 WL 2209231, at *21; Shelabi, 2006 WL 3032413, at *5.

**C. The APA Precludes the Court's Review of Plaintiff's Claim Because His Claim Concerns Action that Is Committed to Agency Discretion.**

Plaintiff invokes the APA as a basis for the Court's jurisdiction. (SAC ¶ 3.) The APA, however, provides that a reviewing court only has jurisdiction to "compel agency action unlawfully withheld or unreasonably delayed."[12] 5 U.S.C. § 706 (1). As the Supreme Court explained in Norton v. So. Utah Wilderness Alliance, 542 U.S. 55, 63 (2004), "the only agency action that can be compelled under the APA is action legally required. This limitation appears in § 706(1)'s authorization for courts to 'compel agency action unlawfully withheld.' " Id. The Supreme Court further noted that although the APA also provides jurisdiction to compel agency action "unreasonably delayed," a delay "cannot be unreasonable with respect to action that is not required." Id. at 63 n.1. Thus, for example, the APA precludes review where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2); Brock v. Pierce County, 476 U.S. 253, 260 n.7 (1986).

The Supreme Court outlined the limitations of APA jurisdiction in Heckler v. Chaney, 470 U.S. 821, 830 (1985), in which the Court interpreted section 701(a)(2) of the APA to mean that "review is not to be had if the statute is drawn so that the court would have no meaningful standard against which to judge the agency's exercise of discretion." As the Supreme Court explained, "if no judicially manageable standards are available for judging how and when an agency should exercise its discretion, then it is impossible to evaluate agency action for 'abuse of discretion.' " Id.

---

[12] It is well settled that the APA does not provide the Court with an independent basis for subject matter jurisdiction. See Califano v. Sanders, 430 U.S. 99, 107-07 (1977). Rather, subject matter jurisdiction must lie, if at all, under 28 U.S.C. 1331 in combination with the APA.

As discussed above, the adjudication of an adjustment of status application is expressly committed to agency discretion. See 8 U.S.C. § 1255(a). Moreover, no statutory or regulatory provisions provide a "meaningful standard" by which to measure the time it takes the USCIS to process an application.[13] See Heckler, 470 U.S. at 830. Therefore, there is no standard by which the Court can assess whether USCIS has acted "within a reasonable time," 5 U.S.C. § 555(b), or "unreasonably delayed adjudication," 5 U.S.C. § 706(1), under the APA.

Not surprisingly, in light of Norton and Heckler, many courts have declined to invoke jurisdiction under the APA in immigration cases. In Keane v. Chertoff, 419 F. Supp.2d 597, 602 (S.D.N.Y. 2006), for example, the district court found that Heckler precluded APA and federal question jurisdiction. After noting that the plaintiff "does not cite a single statutory or regulatory limitation on the BCIS's authority that might serve as a 'meaningful standard against which to judge the agency's exercise of discretion,' " the district court concluded that "this Court must have the statutory or regulatory measuring stick in hand before the APA applies." Id. at 602 (finding no APA jurisdiction over denial of application for readjustment of status); see Rogatch, 2007 WL 1160358, at *2 (citing Norton); Mustafa v. Pasquerell, 2006 WL 488399, at *2-4 (W.D.Tex. Jan. 10, 2006) (rejecting mandamus and APA cause of action in light of Norton); see also Safadi, 466 F. Supp.2d at 700 (rejecting mandamus and APA allegations, citing, inter alia, 5 U.S.C. § 701(a)(2)); Karan v. McElroy, 2003 WL 21209769, at *1 (S.D.N.Y. May 23, 2003) ("decision whether or not to change an applicant's immigration status is a decision delegated to the discretion of the Immigration and Naturalization Service"); cf. Zheng

[13] In contrast to adjustment-of-status applications for which Congress provided no relevant deadlines, Congress vested district court's with jurisdiction over naturalization applications that are not adjudicated within 120 days after examination. See 8 U.S.C. § 1447(b).

v. Reno, 166 F. Supp.2d 875, 879-880 (S.D.N.Y. 2001) (judicial creation of duty to act on adjustment-of-status application within specified time frame, where none is prescribed by statute, "would have potential for mischievous interference with the functioning of already overburdened administrative agencies,") (internal quotations and citations omitted); but see Tang, 493 F. Supp.2d at 151-54; Kim v. Ashcroft, 340 F. Supp.2d 384 (S.D.N.Y. 2004).

This is not a case in which the USCIS has refused or failed to process plaintiff's adjustment application. Rather, plaintiff is frustrated over the pace of the process. Unfortunately, however, "delays of this nature are inevitable and becoming more frequent in light of heightened security concerns in the post-9/11 world." Mustafa, 2006 WL 488399, at 5 (quoting Alkenani v. Barrows, 356 F. Supp.2d 652, 657 (N.D. Tex. 2005)). As the district court in Safadi observed, "plaintiff's frustration over the pace of the adjudication process is better addressed to the political branches which, as the Supreme Court has noted, have 'the responsibility for regulating the relationship between the United States and our alien visitors.' " Safadi, 466 F. Supp.2d at 701 n.7 (quoting Mathews v. Diaz, 426 U.S. 67, 81 (1976)).

## IV. CONCLUSION

For the foregoing reasons, the Government respectfully requests that its motion to dismiss be granted.

Respectfully submitted,

MICHAEL CHERTOFF, Secretary of
Department of Homeland Security, et. al.
Defendants

By their Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Richard B. Myrus
RICHARD B. MYRUS
Assistant U.S. Attorney
United States Attorney's Office
Fleet Center
50 Kennedy Plaza, 8th floor
Providence, RI 02903
401/709-5000
401/709-5017 (fax)
Email: richard.myrus@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of December, 2007, I electronically filed the within Motion to Dismiss and supporting Memorandum with the Clerk of the United States District Court for the District of Rhode Island using the CM/ECF System. The following participant has received notice by postage prepaid mail.

Rajesh Radhakrishnan
49 Ballou Street
Cumberland, RI 02864

/s/ Richard B. Myrus
RICHARD B. MYRUS
Assistant U.S. Attorney