**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **Rajesh Radhakrishnan** | ) |
| **Plaintiff** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION** |
| | ) **NO. CA 07 327S** |
| ***Michael Chertoff*** **as Secretary** | ) |
| **Department of Homeland Security;** | ) |
| ***Emilio T Gonzales*** **as Director** | ) |
| **U.S. Citizenship and Immigration Services;** | ) |
| ***Robert S. Mueller III*** **as Director** | ) |
| **Federal Bureau of Investigation;** | ) |
| **Evelyn Upchurch as Director** | ) |
| **Texas Service Center, USCIS** | ) |
| **Alberto Gonzalez as Attorney General** | ) |
| | ) |
| **Defendants** | ) |
| | ) |
| | ) |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

COMES NOW, Plaintiff Rajesh Radhakrishnan, pro se and respectfully requests this Honorable Court to DENY Defendants' Motion to Dismiss as ungrounded, for the reasons set forth in the attached memorandum.

Respectfully Submitted

Rajesh Radhakrishnan

Rajesh Radhakrishnan
49 Ballou St
Cumberland
RI 02864 USA
Ph: 401 441 0485

## CERTIFICATE OF SERVICE

I hereby certify that on January 7, 2008, I filed the Opposition to Defendants' Motion to Dismiss with the Clerk of the United States District of Rhode Island and a copy has been forwarded by certified mail, postage prepaid, to the Defendants' Counsel at:

Robert Clark Corrente,
United States Attorney
United States Attorney's Office
Fleet Center
50 Kennedy Plaza, 8th Floor,
Providence
RI 02903

Rajesh Radhakrishnan

Rajesh Radhakrishnan
49 Ballou St
Cumberland
RI 02864 USA
Ph: 401 441 0485
Email: radhakrishnan.rajesh@gmail.com

| | | |
|---|---|---|
| **Rajesh Radhakrishnan** | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION** |
| | ) | **NO. CA 07 327S** |
| ***Michael Chertoff* as Secretary** | ) | |
| **Department of Homeland Security; et. al.** | ) | |
| **Defendants** | ) | |
| | ) | |
| | ) | |

## I. INTRODUCTION

Plaintiff seeks by this action to compel Defendants to adjudicate plaintiff and his spouse's application for adjustment of status( hereinafter "I-485") that has been pending since March 11, 2005. Plaintiff filed his application at the Vermont Service Center ("VSC") of United States Citizenship and Immigration Servicess("USCIS"). Subsequently, it was transferred to Texas Service Center("TSC"). The processing timeframe at TSC is currently 6 months (**attached hereto as exhibit A**). Plaintiffs' application was filed nearly 34 months ago.

Defendants have moved for dismissal of the action contending that this court lacks subject matter jurisdiction to adjudicate plaintiffs' claims. Specifically, they claim that 8 U.S.C. § 1252(a)(2)(b) divests this court of jurisdiction over plaintiffs' claims. Defendants also move for dismissal of the action contending that plaintiff cannot establish the prerequisites to the court's exercise of jurisdiction under the mandamus statute. They argue that defendants do not have a duty to act on his application within any time frame. Lastly, they contend that this court is precluded from reviewing the plaintiff's claims under the APA because the APA exempts from judicial review actions that are "committed to agency discretion by law."

Plaintiff opposes the Government's Motion to Dismiss because of the federal issues in dispute and because this Court has subject matter jurisdiction in this matter.

## II. STATUS OF PLAINTIFF APPLICATION

According to Defendants, the delay in processing the I-485 application of Rajesh Radhakrishnan is due to the pending FBI name check[1]. Defendants provide two declarations:

- **a.** Declaration of Genise X. Walker, Supervisory Adjudications Officer, Texas Service Center("Walker Declaration")
- **b.** Declaration of Michael A. Cannon, Section Chief, National Name Check Program Section, FBI ("Cannon Declaration")

The process of applying for permanent residence status includes the capturing by the USCIS of biometrics information taken in the form of electronic fingerprinting and capturing of the individual's identity. The fingerprint check is required by law. See, Act

[1] Significantly, FBI records indicate that two name check requests were submitted for plaintiff, Rajesh Radhakrishnan from USCIS.(Cannon Decl., ¶¶ 41-42.). Neither of the two name check requests have been completed. Cannon Declaration does not specify if the two namecheck requests are identical in nature or if they differ. Walker declaration does not refer to the existence of two namecheck requests for the plaintiff, Rajesh Radhakrishnan.(Walker Decl., ¶ 7). Walker declaration seems to indicate that they are waiting for the completion of the namecheck request initiated in July 2005.

August 26, 1994, P.L. 103-317, Title V, §506(d), 108 Stat. 1766 which provides "the Immigration and Naturalization Service(now USCIS) shall conduct full fingerprint identification checks through the Federal Bureau of Investigation for all individuals over 16 years of age adjusting immigration status in the U.S. pursuant to this Section. (Amending the Section, 8 U.S.C. § 1182, and §1182(n.)." This is the sole statutory basis for the review conducted by the USCIS of an individual's background.

In addition, the USCIS has since 2002 conducted additional security checks to that which is statutorily required. (Cannon Decl., ¶¶ 23-24.). The FBI fingerprint checks have not been stated in Walker Declaration as being an issue for plaintiff Rajesh Radhakrishnan. The issue here is the additional FBI name checks which are not required by statute. As further explained in Canon Declaration, the name check is totally different from the FBI fingerprint checks. While some of the cases involve complex highly sensitive information, there is no indication that Plaintiff Rajesh Radhakrishnan is such an individual. There is no mention of how many "Hits" Plaintiff's name generated in the FBI name check process and how many of these "Hits" have been processed to date. (Cannon Decl., ¶¶27-28.). There is no indication of any ongoing investigation of any kind. A name hit could be because FBI has derogatory information such as drug related or terror related information on the subject or it could be not derogatory, what FBI calls Matter of Opinion, which probably includes any brushes with the law, good or bad. Defendants have presented no evidence and made no argument that plaintiff Rajesh Radhakrishnan's name check is delayed as a result of the time required to investigate such information. Even after 34 months FBI doesn't know whether Plaintiff's hit['s] was indeed derogatory and whether Plaintiff is a threat to the nation and its citizenry.

That the name check is pending is not due to an exercise of discretion by the Attorney General or Secretary of Homeland Security, but rather a willful negligence by FBI's NNCP section staff which routinely flags USCIS name check requests as "routine request with no specific deadline".

The CIS Ombudsman in his Annual Report to Congress June 2007(**relevant pages attached hereto at Exhibit B** and referred hereinafter as the "Ombudsman Report") also has observed that newer cases are processed more quickly while cases more than six months old are increasingly backlogged in USCIS. As far as the USCIS is concerned Plaintiffs' application cannot be adjudicated and is not delayed because the USCIS is not the delaying factor but the FBI is and as far as FBI is concerned the name check has no "specific deadline". Since the USCIS is not willing to request expedite name check processing from the FBI and since the Plaintiff cannot request expedite from the FBI he has only two options:

(i) to sit and wait forever and pray that some good Samaritan in FBI sees his pending name check or

(ii) file a lawsuit and seek judicial intervention to break this deadlock.

Plaintiff has chosen the latter. In fact the Plaintiff is looking forward to learn much about his name check because of the rights associated with the judicial action, namely <u>document requests</u>. In Tang v Chertoff, the court opined that "If the agencies involved find themselves short of the resources necessary to fulfill their statutory duty to act within a reasonable time, that is a policy crisis. ... Rather, it is defendants who ask the Court to relieve the pressure by excusing them from their statutory duty and letting the cost fall on immigrant plaintiffs. I will follow the law and leave it for the political

branches to fix the system…." See Tang v. Chertoff, 493 F.Supp.2d 148, D.Mass., June 26, 2007.

The government provides no assurances that the FBI name check for the plaintiff will ever be completed. Defendants indicate that the case remains pending for the completion of name check. The USCIS has contracted out to a third party, the FBI (which is also one of the defendants in the Complaint), to conduct security and background checks on its behalf. The FBI's duty is therefore subsumed under that of the CIS. The CIS cannot merely blame to the FBI, as both are arms of the federal government. Paunescu v. INS, 76 F. Supp. 2d at 903 n.2 (N. D. Ill. 1999). Plaintiff can also state an APA claim against FBI. An agency's mandatory duty to act may be expressed in a single statute or from several Congressional enactments which, read together, clearly imply a mandatory duty. Kaplan v. Chertoff, N. C 06-5304, 2007 U.S. Dist. LEXIS 22935, (E.D. Pa. 2007). The Kaplan court, after careful analysis of several congressional schemes, including Pub. L No. 101-515, 104 Stat, 2102, 2122 (1990) and 8 CFR §§316.4, 334.2, and 72 Fed. Reg. 4888-01 (proposed Feb. 1, 2007), held that Congress has, by implication, imposed on the FBI mandatory duty to complete the background checks. As a result, the APA requires that the FBI complete the criminal background checks in a reasonable amount of time. The USCIS has accepted the filing of mandamus suits as a criteria for expediting security checks in the past[2] (**Attached hereto as Exhibit C**). In a recent mandamus case in the 9th District Court, where FBI name check caused a delay in processing, the Court granted summary judgment compelling the defendants to adjudicate two I-485 applications. Singh v. Still, No. C 06-2458, 2007 U.S. Dist. LEXIS 16334 (N.D. Cal. 2007). The Court found that the USCIS had a duty to process the applications and the FBI had a duty to process the name checks within a reasonable time, regardless of who was responsible for the delay. The USCIS in that case attempted to place the responsibility for the delay on the FBI's name check, but the court noted that "even if the FBI were largely responsible for the delay as Defendants suggest, its conduct would properly be within the scope of the complaint herein." Id. at *4. The Singh Court further noted that "mere invocation of national security is not enough to render agency delay reasonable per se." Id. at *5.

The Government cites to issues of national security and moral fitness as being cardinal determinations for this agency. Again, the lack of action and the admitted lack of funding for such an allegedly important task as the FBI name check process belies the Government arguments on this issue. Again, at its core, this case is not about a discretionary determination on adjustment of status. It is about an agency that has shirked its responsibilities both to the applicants and to the public it is obligated to serve. Any serious approach to national security would not allow name checks to go un-performed for more than two years. In this light, it is interesting that the two factual assertions put forth by the Government seem to contradict. On one hand the Government asserts the importance of matters of national security. (Walker Declaration ¶5, Cannon Decl. ¶¶

[2] In Abusadeh v. Chertoff(2007 U.S. Dist. LEXIS 94428) the court recognized that the statute does not limit the FBI's time to act and that the FBI has not had an opportunity to act after receiving an instruction from USCIS to expedite Abusadeh's name-check review. Rather than impose a limit on the FBI's time to complete the name check on the plaintiff at this stage, the court allowed the FBI an opportunity to complete the name check in a reasonably prompt period after it received a request from the USCIS to handle it on an expedited basis.

21,23). On the other hand, it asserts that the lack of funding for the FBI name check process is the reason for delays like the ones experienced by the Plaintiff and says there is a budgetary root cause (Cannon Decl. ¶¶ 33,34,38). Id. In truth, the current backlog in "security" clearances has very little to do with security and no deference should be given on that issue. The current program stands in violation of the statutory and regulatory directive for a six month review of "investigations," 8 C.F.R. 103.2(b)(18). The name check program, as it is currently structured, is an unfunded administrative and executive mandate not authorized by Congress. If it were truly a matter of national security, it would be a priority and the funding would be available. Its failure to act is not excusable. The investigation and adjudication has been "unreasonably delayed" and further inaction is "arbitrary, capricious and contrary to the law." The inaction and failure to file reports or review of its alleged investigations is a violation of the Government's own regulations and procedures. It merits intervention by this Court. This is not a situation, as asserted by the Government, in which the decision on when to adjudicate the Plaintiff's application after the background check has been completed is within the discretion of the agency. If the Court were to accept that extreme position it would mean that the USCIS could, after whatever interminable delay is inflicted by the FBI name check process, initiate another interminable delay or even decide never to adjudicate at all. In reality, the appearance is that the agencies have already chosen a path of non-adjudication. The USCIS and FBI inaction and refusal to adjudicate clearly run afoul of the agency's own regulations and represent a failure to exercise discretion which is clearly reviewable with a remedy available through mandamus and the Administrative Procedures Act (APA). This is not a case in which the Court will be called upon to "arbitrarily set a deadline." Rather, the Court can apply a standard of law and a duty to adjudicate that are clearly in the regulations and the statute and require action in a reasonable time frame where that action has been unlawfully withheld.

Under mandamus the agency does not have discretion to ignore its own regulations. In fact, the Third Circuit has remedied such a situation in another immigration context. *See*, *Ngo v. INS*, 192 F.3d 390, 400 (3rd Cir. 1999) (Appendix of Court providing for Interim Procedures for agency to follow until it provides appropriate implementation of statute and regulations). The regulation relating to timing of review of investigations – a minimum of every six months – is such an unavoidable obligation. The failure of the government to make a decision is a violation of the type of duty identified in 28 U.S.C. §1361. Under Mandamus, this Court has the power to compel action to perform that duty although it cannot mandate whether the decision is to approve or to deny. The refusal to adjudicate is also unlawful and an "unreasonable delay" under the APA.

Furthermore, the value and effectiveness of FBI name check itself is being called into question. The Ombudsman Report concluded that the FBI name check process was of limited value and may actually have imposed greater risk to national security:

"The Ombudsman agrees with the assessment of many case workers and supervisors at USCIS field offices and service centers that the FBI name check process has limited value to public safety or national security, especially because in almost every case the applicant is in the United States during the name check process, living or working without restriction. Delays in the name check process actually prolong an individual's presence in the United States while the check is pending. In this sense, the

current USCIS name check policy may increase the risk to national security by extending the time a potential criminal or terrorist remains in this country." It is the position of the Defendants that no time frame applies and that the defendants are under no obligation to ever complete the name check and that the Plaintiff can be relegated to Immigration limbo indefinitely if not forever. This extreme assertion of executive authority is as set forth below contrary to the Adminstrative Procedures Act, as well as concepts of seperation of powers. See, Pinho v. Gonzalez, 432 F.3d 193, 202(3rd Cir. 2005). In Haidari v. Frazier, the court opined that "the USCIS does not possess unfettered discretion to relegate aliens to a state of 'limbo,' leaving them to languish there indefinitely. This result is explicitly foreclosed by the APA." See Haidari v. Frazier, 2006 U.S. Dist. LEXIS 89177(D. Minn. 2006) at * 17. There's no apt way to describe the Plaintiffs' current state other than "state of limbo". In Santillan v. Gonzalez, Judge Patel observed that "Absent any such particularized showing, defendants' national security argument cannot excuse the various permutations of bureaucratic errors, administrative backlogs, and inter-agency communication lapses that have caused the delays at issue in this lawsuit. Accordingly, this court finds that defendants' delay in ... is unreasonable under section 706(1)." See Santillan v. Gonzales, 388 F. Supp. 2d 1065(N.D. Cal 2005).

The Honorable Court may note that the Plaintiff is not raising an issue with the legality of such a name check but only pointing out that such name checks may indeed be not appropriate going by the Statute, regulations and internal communications between USCIS and FBI. The Plaintiffs do realize that the Attorney General has the absolute discretion to constitute any type of checks on any applicant for immigration benefits but he also has a non-discretionary duty to complete the checks in a reasonable time.

Defendants cite Eldeeb v. Chertoff, 2007 WL 2209231 at *1. In Eldeeb's case, he did have a "hit" in IBIS check as a "possibly excludable alien smuggler". USCIS spent a year investigating this and eventually determined that the hit was false. Here, USCIS initiated the FBI namecheck nearly a year after Eldeeb filed his application. There was no such delay in initiating Plaintiffs' namecheck. Results of IBIS checks are usually available immediately, but the IBIS check is not deemed completed until all "eligibility issues arising from the initial system response are resolved."*Id.* Walker Declaration states no such issue in Plaintiff's IBIS checks.

Defendants indicate at *4 that Plaintiffs' complaint is silent as to whether he complied with the request for evidence("RFE") from USCIS. Plaintiff and his spouse have indeed complied with the request (**Attached hereto as Exhibit D).**

## III. PLAINTIFFS' COMPLAINT SHOULD NOT BE DISMISSED UNDER FRCP 12(b)(1).

Defendants move for dismissal pursuant to FRCP 12(b)(1). Plaintiff opposes this move. Supreme Court has distinguished between jurisdiction – which is the court's power to hear the case – and the sufficiency of a valid cause of action. *See, e.g., Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1988); *see also Ahmed v. DHS,* 328 F.3d 383, 386-87 (7th Cir. 2003) (distinguishing between the court's power to adjudicate the case, which is jurisdictional, and the court's power to grant relief, which is not jurisdictional).
The failure to state a valid cause of action calls for a judgment on the merits and not for dismissal for want of jurisdiction. *Bell v. Hood,* 327 U.S. 678, 682 (1946). The Supreme Court has made clear that:

'jurisdiction … is not defeated … by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover.' Rather, the district court has jurisdiction if 'the right of the petitioners to recover under their complaint will be sustained if the [ ] laws of the United States are given one construction and will be defeated if they are given another …'

*Steel Co. v. Citizens for a Better Environment,* 523 U.S. at 89 (quoting *Bell,* 327 U.S. at 682, 685). Thus, one court has held that in resolving whether mandamus jurisdiction is present in an immigration case, the allegations of the complaint are taken as true (unless patently frivolous) to avoid "tackling the merits under the ruse of assessing jurisdiction." *Ahmed,* 328 F.3d at 386-387.

Applying these principles, the Seventh Circuit held in *Ahmed* that the question of whether a statute imposed a "duty" on the government for purposes of mandamus relief was not a jurisdictional question. As the court explained:

[T]he district court has jurisdiction under *§ 1361* [the mandamus statute] to determine whether the prerequisites for mandamus relief have been satisfied: does the plaintiff have a clear right to the relief sought; does the defendant have a duty to perform the act in question; and is there no other adequate remedy available. … A conclusion that any one of those prerequisites is missing should lead the district court to deny the petition, not [for lack of jurisdiction], but because the plaintiff has not demonstrated an entitlement to this form of extraordinary relief. *Ahmed,* 328 F.3d at 386-87.

In a related case, Judge Sidney A. Fitzwater(Juburi v Chertoff, N.D. Texas, 2007 U.S. Dist. LEXIS 58176) opined that :

> [A]pplying the above-described standard in this case, the court is unable to say that plaintiffs' complaint is wholly insubstantial and frivolous, or that it is patently without merit. Construing the allegations in plaintiffs' favor, the complaint suggests that plaintiffs timely filed adjustment-of-status applications and followed all instructions and required procedures. At the time they filed this suit, their I-485 applications had been pending for nearly three years. According to their well-pleaded complaint, defendants have violated their statutory and regulatory duties to adjudicate plaintiffs' I-485 applications within a reasonable time. Plaintiffs posit that there has been ample time for defendants to complete any background checks and issue a decision, and that the delay is unreasonable. The court cannot therefore say that the complaint is wholly insubstantial and frivolous, or patently without merit.

Therefore the honorable court should note that this is not a jurisdictional question and cannot be dismissed under Rule 12(b)(1).

## IV. LEGAL ANALYSIS

### 1. PLAINTIFF'S CLAIMS ARE NOT PRECLUDED BY 8 U. S. C. §1252(a)(2)(b)

In their Motion, Defendants argue that Plaintiff's claims are barred by 8 U.S.C. § 1252(a)(2)(b) because that statute precludes review of a discretionary decision or action of CIS. First and foremost, § 1252(a)(2)(b) (ii) is inapplicable where the challenge is to non-discretionary agency conduct, even when such conduct is related to a discretionary application for relief. For example, in *Cho* v. *Gonzales,* 404 F.3d 96,99-101 (1st Cir. 2005), the first circuit Court found that it had jurisdiction to review a determination that the petitioner was statutorily ineligible for a hardship waiver because the statutory

eligibility issue was a non-discretionary determination. The first Circuit Court rejected the government's arguments that jurisdiction was precluded under 8 U.S.C § 1252(a)(2)(b) (ii) simply because the waiver itself was a discretionary one. *Id.*

*A* majority of courts that have ruled on § 1252(a)(2)(B)(ii) agree. *See, e.g., Firstland International, Inc. v. US. INS, 377* F.3d 127, 131 (2d Cir. 2004); *Camphill Soltane* **v.** *US. DOJ,* 381 F.3d 143, 148 (3d Cir. 2004); *Shokch* v. *Thompson,*369 F.3d 865, 868 (5th Cir. 2004); *Singh* v. *Gonzales, 45* 1 F.3d 400,410-11 (6th Cir. 2006); *Sun Pedro v. Ashcroft,* 395 F. 3d 11 56, 1 157-58 (9th Cir. 2005); *Sierra* v. INS, 258 F.3d 1213, 1217 (10th Cir. 2001), Zafar v. U.S. Atty Gen., 461 F.3d 1360 (11th Cir. 2006);

By its specific terms, 8 U.S.C. § 1252(a)(2)(B)(ii) only bars review of a "decision or action" of the Attorney General or the Secretary of DHS, and only when such decision or action "is specified under this subchapter to be in the discretion" of the Attorney General or the Secretary of DHS. Courts generally read this section narrowly and require that the grant of discretion be explicit in a relevant statutory provision. Here, the agency's failure to adjudicate an adjustment application is not "specified" in the adjustment statute as being within the agency's discretion. 8 U.S.C. § 1255 authorizes discretion to grant or deny an adjustment application, but does not specify any agency authority to fail to act on an adjustment application Similarly, the Defendants rely primarily on a Virginia district court decision, *Safadi v. Howard,* 466 *F.* Supp.2d 696,698 (E.D. Va. 2006) [3] for the conclusory statement that § 1252(a)(2)(B)(ii) [4]preclude review of discretionary decisions and that an adjustment application is a discretionary decision. Defendants at * at 6. Neither the Safadi court nor the defendants have demonstrated that USCIS was carrying out a discretionary act in failing to adjudicate Plaintiffs' adjustment application.[5] To the contrary, and as will be demonstrated later in this response, USCIS has a non discretionary duty to adjudicate Plaintiff's adjustment application.

---

[3] The *Safadi* decision was issued without guiding circuit court precedent, since the Fourth Circuit has not addressed the scope of § 1252(a)(2)(b). In Safadi, however, the court expressly stated that its decision did not address the existence of jurisdiction in the case of refusal to process an application, or a delay so unreasonable as to be tantamount to a refusal. Id. at *13. Also worth mention is Mustafa v. Pasquarell, No. SA-05-CA-658-XR, 2006 U.S. Dist. LEXIS 8047 (W.D. Tex. Jan. 10, 2006), cited by the Safadi court. Mustafa considered mandamus standards, rather than the jurisdiction-stripping statute at issue. Mustafa was based, in part, on the conclusion that because the governing statute and regulations do not impose a specific time limit, the timing of an adjudication must be considered a matter of discretion. Alaka and its progeny have rendered this reasoning unpersuasive; the absence of language cannot mean the presence of discretion. See Alaka v. Attorney General, 456 F.3d 88, 95 (3d Cir. 2006). The Mustafa court also relied on 8 C.F.R. 103.2(b)(18), which permits the withholding of adjudication. In the instant complaint, Defendants do not assert that they have acted pursuant to that section.

[4] 8 U.S.C. § 1252(a)(2)(b)(i) is not an issue in this case because there has been no decision on plaintiff's adjustment application. *Accord, Da Costa v. Gonzales,* 449 F.3d 45 (1st Cir. 2006) (finding that where BIA did not reach the merits of an adjustment application but denied for statutory eligibility grounds, review was not barred by 8 U.S.C. § 1252(a)(2)(b)(i)).

[5] Defendants erroneously reason that 1) the challenged conduct constitutes "action" under 8 U.S.C. § 1252(a)(2)(b)(ii); and 2) as a result, such action must necessarily be discretionary simply because Defendants characterize it as "action." Defendants motion at 13. Even were their first premise correct, however. which Plaintiff does not concede, the first Circuit Court has disproved the circular reasoning of appellees' second premise. In *Cho* v. *Gonzales,* the Court determined that the "decision or action" in the case was the agencies determination that the petitioner was ineligible for a discretionary waiver. The Court then went on to hold that this ineligibility ruling was a nondiscretionary legal determination, reviewable under 1252(a)(2)(B)(ii). 404F.3d 96,99-101.

Courts must narrowly interpret bars to judicial review and may only limit review where the plain language of the statute indicates that review is precluded. *See Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). "[t]he jurisdiction stripping language [of Section [*6] 1252] applies not to all decisions the Attorney General is entitled to make, but to a narrower category of decisions where Congress has taken the additional step to specify that the sole authority for the action is in the Attorney General's discretion." Alaka v. Attorney General, 456 F.3d 88, 95 (3d Cir. 2006).

Plaintiff's case clearly does not fall within either § 1252(a)(2)(B)(ii). This section does not strip federal courts of jurisdiction where the Government has a mandatory, non-discretionary duty to act and fails to do so. In the instant case, Plaintiff is not challenging a discretionary decision or action. Plaintiff recognizes that § 1252(a)(2)(b) does not allow this Court to compel an Agency to exercise its discretion in a particular manner on an adjustment of status application.

Plaintiff's request for adjudication of his pending I-485 application is not converted into a challenge of a discretionary action simply because the underlying relief requested is discretionary. See Pilica v. Ashcroft, 388 F.3d 941, 945-48 (6th Cir. 2004)(Section 1252(a)(2)(B) does not strip the court of jurisdiction to hear the denial of a motion to remand where the underlying relief sought on remand was adjustment of status where the denial of the motion itself was not a judgment "regarding the granting of relief").

Defendants also argue at *5 that, "In addition to section 1252(a), section 1252(g) divests this court of jurisdiction. In support, they cite, Gomez-Chavez v. Perryman, 308 F.3d 796,800(7th Circ. 2002). This argument was put forth by Defendants in Cao v. Upchurch, 496 F.Supp.2d 569 E.D.Pa. Jul 16, 2007, and thoroughly rebuffed by Judge Stewart Dalzell(cited verbatim below).

*Defendants next argue that 8 U.S.C. § 1252(g) bars our review of their handling of plaintiffs' applications. Section 1252(g) states, in relevant part, that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." Defendants cite Gomez-Chavez v. Perryman, 308 F.3d 796 (7th Cir. 2002) for the proposition that Section 1252(g) applies even where the relevant agency has failed to act.*

*Before we reach that question, however, we must examine whether Section 1252(g) applies in the context of an application for adjustment of status. 8 U.S.C. § 1252 is entitled "Judicial review of orders of removal." This must mean, in the absence of some explicit language directing us to do otherwise, that we should read this section as applying to cases in which a litigant seeks review of a removal decision. In the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 213, div. B, ("RIDA"), Congress inserted the words "and regardless of whether the judgment, decision, or action is made in removal proceedings" into Section 1252(a)(2)(B), thereby making the language of that subsection applicable to all immigration decisions. RIDA § 101(f)(2). Though it could have inserted identical language into 1252(g), Congress elected not to do so. Were we to read Section 1252 as applying outside the removal context generally, the amendment to 1252(a)(2)(B) would be rendered surplusage.*

*Defendants cite to no case that explicitly applies Section 1252(g) outside of the removal context. See, e.g., Li v. Agagan, 2006 WL 637903 (5th Cir. Mar. 14, 2006) ("8 U.S.C. § 1252(g) precludes jurisdiction because Appellant was actually seeking review of*

*the decision to execute a removal order.") (emphasis added). "Thus, because [plaintiffs'] petition for adjustment of status is separate and distinct from any matter related to an order of deportation, § 1252(g) 'has nothing to do with the present case.'" Sabhari v. Reno, 197 F.3d 938, 942 (8th Cir. 1999) (quoting Shah v. Reno, 184 F.3d 719, 722 (8th Cir. 1999)).* Therefore Section 1252(g) is not applicable here.

In *Gomez-Chavez*, the Seventh Circuit held that § 1252(g) barred its jurisdiction over a mandamus petition to require adjudication of an adjustment of status application. But in that case, the INS had already issued a removal order against Mr. Gomez-Chavez, and therefore, by seeking adjustment of status, he was effectively seeking to stop or vacate the removal order. *See id.* at 802 (stating that Mr. Gomez-Chavez admitted that the sole reason for requesting the hearing at that time was to obtain a waiver from the removal proceedings). See Judge Adelberto Jordan's opinion in Cacace v. Swacina, No. 07-20410, slip op (S.D. Fla. May 17, 2007). That is not the case in instant complaint.

Defendants cite Grinberg at *7,8; holding that Congress included to include pace of processing an adjustment of status application within Attorney General's discretionary function. See Grinberg 478 F. Supp. 2d at 1352. The *Grinberg* court failed to construe the statute with appropriate attention to the characteristics of discreteness and finality in the preceding terms "judgement" and "decision." Wholly changing the nature of the word "action," the court expanded "action" to include the pace of the agency's decision making or agency inaction. This interpretation ignores the meaning of other terms in the same provision that focus on the finality and discreteness of the action. *See Iddir*, 301 F.3d at 497-98. It is important to note that the district court in *Grinberg*, despite broadly defining "action" to incorporate agency inaction, also attempted to show that the agency engaged in some affirmative action on the application. To support this reasoning, the court cited an excerpt from the affidavit submitted by Rosalinda Fernandez of the Miami District of the USCIS: "it is anticipated that a decision on the Grinberg family's application for adjustment of status will be rendered."[6] *Grinberg v. Swacina*, 478 F. Supp. 2d 1350, 1354 (S.D. Fla. 2007). Far from providing evidence that the government is acting on the application, Fernandez's statement simply repeated the existing statutory and regulatory promise that an application for adjustment of status will be adjudicated. *See* 8 U.S.C. § 1255(a) ("the status of an alien . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe . . . "); *see also* 8 C.F.R. § 245.2(a)(5)(i) (providing that the "applicant *shall* be notified of the decision of the director and, if the application is denied, the reasons for the denial") (emphasis added). In its attempts to show adjudicatory "action" on the application, the court abandoned its own definition of action – which incorrectly included the opposite of action – and simultaneously failed to show that the agency has made any progress on Mr. Grinberg's application.

**2. DEFENDANTS HAVE NOT PRODUCED EVIDENCE THAT THEY HAVE ACTED IN PURSUANT TO § 103(b)(18) IN WITHHOLDING ADJUDICATION ON PLAINTIFFS' APPLICATION.**

The Defendants also rely on Qiu v Chertoff, 486 F. Supp. 2d(D.N.J. 2007). In this case(look at case docket), Judge Chesler relied primarily on his earlier ruling in Li v.

---

[6] In Grinberg, the court stated another compelling factor: USCIS had since then approved the applications of other members of the Grinberg family. This is not the case in instant complaint.

Gonzalez(2007 WL 1303000 D.N.J, appeal filed, No. 07-2990(3rd Cir)). It is interesting to note that 8 C.F.R § 103.2(b)(18) is not mentioned in defendants motion to dismiss in Qiu while the statute is merely quoted by defendants in Li. Defendants (so is Judge Chesler) are correct that the decision to withhold adjudication under § 103.2(b)(18) is a discretionary one. But there is no evidence in the record indicating that Defendants have acted pursuant to that section in withholding adjudication on Plaintiffs' application or that disclosure of information would prejudice the investigation. Nor is there any evidence that they complied with the somewhat detailed procedural requirements set forth in the regulation. See Elmalky v. Upchurch, 2007 WL 944330 (N.D.Tex.)*4. Also *see Patel v. I.N.S.*, 2000 WL 298921, at *2 n.3 (E.D. Mo. Jan. 20, 2000) (concluding that INS failed to present sufficient evidence that it complied with § 103.2(b)(18)'s procedural requirements). Plaintiff is looking forward to avail document requests to force defendants to submit to this court all documentary evidence pertaining to this issue.

Assuming *arguendo* that Defendants had complied with the requirements of this regulation, such actions would go to the reasonableness of the delay. That is a question that is premature to decide at this stage. See *Wu v. Chertoff*, 2007 WL 1223858 (N.D.Cal)*3; *Gelfer v. Chertoff*, 2007 WL 902382 (N.D.Cal.)*2.

8 C.F.R. § 103.2(b)(18) does not authorize a failure to act, does not authorize unfettered discretion, and does not allow the agency to escape the reasonableness requirements of 5 U.S.C. § 555(b). See, e.g., Gemini Realty, Inc. v. Gonzalez, 2006 U.S. Dist. LEXIS 74194, at *12 (M.D. Fla. Oct. 11, 2006)

**3.USCIS HAS A DUTY TO ADJUDICATE PLAINTIFF'S APPLICATION TO ADJUST STATUS.**

Two alternate legal sources impose such a duty here. First, the INA and agency regulations, viewed as a whole, demonstrate Congress's intent (and the agency's interpretation of this intent) that USCIS has a duty to adjudicate a properly filed adjustment application that is accompanied by the correct fee. Alternatively, § 555(b) of the Administrative Procedures Act (APA) imposes an independent duty upon USCIS to adjudicate such an application.

**i. The INA and its implementing regulations impose a "duty" on USCIS to adjudicate an adjustment of status application.**

Either a statute or a regulation can impose a duty on an agency. *See Norton v. Southern Utah Wilderness Alliance,* 542 U.S. 55, 65 (2004) (regulations have the force of law and can compel agency action)[7]. The existence of a duty is determined by standard rules of statutory and regulatory construction. Moreover, the first circuit Court has recognized the "long standing principle of construing any lingering ambiguities in deportation statutes in favor of the alien." *Goncalves v Reno,* 144 F.3d 110, 133 (1st Cir. 1998) (quoting *INS v Curdma-Fonseca,* 480 U.S. 421,449 (1987)).

A fundamental principle of statutory and regulatory construction is that the provisions be read as a whole and in context. *K-Mart Corp* v *Cartier, Inc.*, 486 U.S. 281,291 (1988). Here, a comprehensive review of the relevant provisions compels the conclusion that both Congress and the agency imposed upon USCIS a duty to adjudicate

[7] Unlike in Norton, however, the alleged failure to act in this case is a discrete failure to act, i.e.. the failure to adjudicate Plaintiff's application, rather than a broad and general deficiency in compliance, which was the unreviewable issue in Norton.

an adjustment application. The adjustment of status statute, 8 U.S.C. § 1255(a), gives USCIS discretion over the ultimate adjustment decision, but also includes nondiscretionary eligibility requirements: a denial based upon one of these eligibility prerequisites "is not a discretionary denial; it is mandated by statute." *Singh v Gonzales,* 413 F.3d 156, 160, n.4 ( 1st Cir. 2005). Central among the non-discretionary eligibility requirements is the requirement that a non-citizen "makes an application for such adjustment." 8 U.S.C. § 1255(a)(l). Additionally, Congress intended that USCIS charge a fee, and anticipated that such fees would recover the costs of adjudicating the application. *See* 8 U.S.C. § 1356(m). Finally, Congress also intended that the adjustment application actually be adjudicated and mandated what USCIS is to do upon approval of an application. 8 U.S.C. § 1255(b).

Through its regulations, the agency consistently interpreted these statutory provisions as expressing Congress's intent to impose a duty upon USCIS to adjudicate an adjustment application. The regulations create a tight structure of non-discretionary responsibilities that must be carried out by an officer adjudicating all applications for immigration benefits.

**1. The mandatory adjudication fee creates a duty to adjudicate the application.**

The regulations mandate payment of an advance fee for I-485 applications. An application is incomplete without the fee and will be returned. 8 C.F.R. §§ 103.2(a)(l) and (a)(7). The imposition of such an adjudication fee necessarily imposes upon the agency a duty to adjudicate every application for which it has accepted such a fee.

These fees are deposited in a special "Immigration examinations fee account" and used to pay for the costs related to adjudicating such applications. 8 U.S.C. § 1356(m). "These fees are used to fund the full cost of processing immigration and naturalization benefit applications and petitions, biometric services and associated support services." 72 Fed. Reg. 4887 (Feb. 1,2007). When plaintiff applied for adjustment, the adjudication fee was $385. 8 C.F.R. § 103.7(b) (2004). Effective August 2007, the fee increased to $905. ***See*** 72 Fed. Reg. 2985 1 (May 30,2007) (amending 8 C.F.K. § 103.7(b)). As DHS explained:

> These fees fund the cost of processing applications . . . USClS is revising these fees because the current fee schedule does not adequately reflect current USClS processes or recover the full costs of services provided by USCIS. Without an immediate adjustment of the fee schedule, USClS cannot provide adequate capacity to process all applications and petitions in a timely and efficient manner.

Id.

In adopting the fee increase, USCIS understood that collection of the fee imposed upon it an obligation to adjudicate applications in a timely and efficient manner. ***See,*** *e.g.,* 72 Fed. Reg. 4887,4892-93 (Feb. 1,2007) (proposed rule discussing USCIS' efforts to reach Presidential goal of six month processing time and elimination of backlogged applications). Despite this fee requirement, defendants reason that plaintiff does not have a right to have his application acted on "at a certain pace." (citations omitted). It is untenable for the government to collect almost $1000 from an applicant specifically for adjudicating an adjustment application without recognizing a corresponding duty to timely adjudicate the application.

**2. The statute and regulations impose a duty to issue a decision; this, in turn, imposes a duty to adjudicate the application.**

Congress imposed a non-discretionary duty upon USCIS to record the lawful permanent residence of individuals "upon approval" of their adjustment applications. 8 U.S.C. § 1255(b). This duty necessarily requires the adjudication of an adjustment application as an implicit, mandatory, antecedent act.

This non-discretionary duty is explicit in the agency's implementing regulations. *See* 8 C.F.R. § 103.2(b)(19) (general regulation, pertaining to all applications, stating: "an applicant *shall* be sent a written decision on his or her application"); 8 C.F.R. § 245.2(a)(5) (specific regulation, pertaining to adjustment of status applications, stating: "the applicant *shall* be notified of the decision of the director"). Moreover, the adjustment application form itself explicitly informs the applicant that a decision will be made on the application: "Decision. You will be notified in writing of the decision on your application." Such an instruction is incorporated into the regulations, with the same effect. *See, e.g,* 8 *C.F.R.* § 103.2(a)(l).

This non-discretionary, ministerial duty of notifying an applicant of the decision on an application - whether an approval or denial - cannot be carried out unless the application is first adjudicated. Thus, the duty of making a decision and notifying the applicant encompasses within it the duty of actually adjudicating the application.

**3. The remaining regulatory structure demonstrates that USCIS has a duty to adjudicate the application.**

In addition to the above, numerous other regulatory provisions presume that a decision must be made on all applications, thus underscoring the mandatory nature of an adjudication leading to a decision. For example, the regulations mandate certain circumstances where an application for an immigration benefit - including adjustment of status - must be decided in a particular way. Thus, an application *shall* be denied where the evidence submitted does not establish eligibility. 8 C.F.R. § 103.2(b)(12) (emphasis added). An applicant's failure to submit requested evidence which precludes a material line of inquiry also *shall* be grounds for denying a petition. 8 C.F.R. § 103.2(b)(14) (emphasis added). If the evidence establishes eligibility, the application for an immigration benefit *will* be approved unless the benefit is discretionary, in which case it can only be approved if the evidence establishes both eligibility and a basis for a favorable exercise of discretion. 8 C.F.R. § 103.2(b)(8)(i) (emphasis added).

Aspects of the timing and sequence of the adjudicatory process are also regulated. An applicant can only withdraw an application up until the time a decision is issued, 8 C.F.R. § 103.2(b)(6), clearly presuming that a decision will be issued. In certain circumstances, a decision denying an application cannot be issued until the applicant has been given notice and an opportunity to respond. 8 C.F.R. § 103.2(b)(8)(ii)-(iv). When an application for an immigration benefit is denied, the officer shall explain in writing the specific reasons for the denial. 8 C.F.R. 4 103.3(a)(l)(i); *see also* 8 C.F.R. § 245.2(a)(5) (same, addressing adjustment of status applications). [8]Following a decision, the applicant

---

[8] Defendants cite 8 C.F.R. § 103.2(b)(18) as confering discretion on immigration officers to withhold adjudication while applications are investigated. 8 C.F.R. § 103.2(b)(18) describes a district director's authority to withhold adjudication if an investigation has been undertaken. 8 C.F.R. § 103.2(b)(18) allows for extended investigation and adjudication in limited circumstances. It provides very clear and finite time periods in which an application may be withheld and carefully specifies the immigration officials charged

*shall* be permitted to inspect the record of proceedings with limited exceptions, 8 C.F.R. § 103.2(b)(16), again, presuming that a decision will be made.

One regulation imposes a mandatory duty on USCIS to render a decision, *upon the request of the applicant,* even in the absence of all requested evidence. 8 C.F.R. § 103.2(b)(14) (emphasis added). It would make no sense for the government to have imposed upon itself a duty to adjudicate a case where requested evidence is not submitted, but no corresponding duty where all requested evidence is submitted. Viewed in their entirety, the statute and regulations impose a duty to adjudicate an adjustment application.

**ii. The APA provides an Alternative Statutory Duty, Under the Mandamus Statute, to Adjudicate (I-485)Adjustment Applications.**

In addition to USCIS' duty to adjudicate appellant's application pursuant to the INA and its implementing regulations, USCIS also has a duty to adjudicate adjustment applications under the APA. Section § 555(b) of the APA requires that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). Under this section, an agency has a duty to "conclude" matters such as a "determination of an issue, request, or controversy in a proceeding." 5 U.S.C. § 555(b) (emphasis added). Section 551 of the APA defines an agency "proceeding" as an "agency process" such as "adjudication" which is the "final disposition . . . of an agency in a matter . . ." 5 U.S.C. § 551(5)-(12). See also Action for Children's Television v. FCC, 564 F.2d 458,474 n. 28 (D.C. Cir. 1977) (finding that § 555(b) applies to any "agency function").

The first circuit court and other circuits agree that § 555(b) creates a non-discretionary duty to conclude agency matters. See Caswell v. Califano, 583F.2d 9, 16-17 (1st Cir. 1978) (finding § 555(b) creates an agency "duty" to act within a reasonable time); *Friends of the Bow* v. *Thompson,* 124 F.3d 1210, 1220-21 (10th Cir. 1997) (reasoning that the "duty" under § 555(b) broadly applies to all "matters" before an agency, including the failure to complete "agency proceedings" such as "adjudications"); *Litton Microwave Cooking Prods. V. NLRB,* 949 F.2d 249, 253 (8th Cir. 1991) (finding that the Board had a statutory duty under the APA to conclude matters within a reasonable time); *Estate of French v. FERC,* 603 F.2d 1 158, 1167 (5th Cir. 1979) (finding that the Commission had a "duty" to decide issues within a reasonable time under § 555(b)).

Moreover, the APA establishes a mandatory duty to resolve matters within a reasonable time and a violation of this duty by USCIS gives the court authority to grant mandamus relief. Courts have explicitly tied an agency's duty under the APA to the availability of mandamus relief. In *Sierra Club v. Thomas,* the court held that agencies have a statutory duty under the APA to avoid unreasonable delay and that the court must review the agency's delay to determine whether it "is so egregious as to warrant mandamus." 828 F.2d 783, 797 (D.C. Cir. 1987) (citations omitted). *See also Mashpee Wampanoug Tribal Council, Inc. v. Norton,* 336 F.3d 1094, 1099 (D.C. Cir. 2003)

---

with review. However, there is no evidence indicating that Defendants have acted pursuant to that section in withholding adjudication on Plaintiff's application.

(mandamus relief is available when an agency fails to comply with its non-discretionary duty under the APA to decide matters within a reasonable time).

Many district courts that have examined 5 U.S.C. § 555(b) in the immigration context have found that the APA creates a duty to adjudicate immigration applications within a reasonable time. *See Tang* v. *Chertoff,* 493 *F.* Supp. 2d 148, 154 (D. Mass. June 26,2007) ("numerous courts" have found 5 U.S.C. § 555(b) "definite enough to support a cause of action" for delayed action on an adjustment application); *Pool* v. *Gonzales,* No. 07-258, 2007 U.S. Dist. LEXIS 39946 (D.N.J. June 1, 2007) (holding that jurisdiction exists when USCIS does not act on an adjustment application within a reasonable time under ) § 555(b)); *Haidari v. Frazier,* No. 06-3215, 2006 U.S. Dist. LEXIS 89177, *9-10 (D. Minn. 2006) (finding mandamus jurisdiction because defendants' non-discretionary duty to adjudicate plaintiffs' applications exists in the APA).

The explicit requirement in the APA that agencies act within a reasonable time is distinct from an action brought to remedy a violation of an INA provision or an agency regulation. *See, e.g., Mashpee,* 336 F.3d at 1099 (reasoning that plaintiff "did not seek an order directing the BIA to comply with its own regulations," but sought an order that the agency comply with the nondiscretionary duty under the APA to act on a matter "within a reasonable time"). This duty does not require any counterpart in the INA or its implementing regulations. It is a separate statutory duty conferred upon an agency exclusively under the APA that, when violated, authorizes a court to grant mandamus relief. Thus, in addition to the duty imposed on the agency under the INA and its implementing regulations, the APA creates an independent duty requiring USCIS to adjudicate plaintiff and his spouses' application within a reasonable time.

Moreover, 28 USC §1331 grants to the federal courts original jurisdiction over all federal questions including jurisdiction to review agency action. *See Califano v. Sanders,* 430 U.S. 99, 99 (1977). Given the language and purpose of this statute, the only plausible argument divesting this court from subject matter jurisdiction over the instant claim would be a contention that no federal question is involved in this controversy. However, Defendants do not dispute that a federal question is present in the Plaintiffs' claim. Indeed, it is a common judicial practice to consider claims of immigration agency inaction (or unreasonable action) brought under 28 §USC 1331. Thus, the Eleventh Circuit Court of Appeal has upheld jurisdiction under 28 USC §1331 to challenge failure to give notice of the right to apply for asylum. *See Jean v. Nelson,* 727 F.2d 957 (11th Cir. 1984)(en banc), aff'd, 472 U.S. 846 (1985). Other courts have taken the similar position. *See, e.g., El Rescate Legal Serv., Inc., v. Executive Office of Immigration Review,* 959 F.2d 742 (9th Cir. 1992) (upholding jurisdiction under 28 §USC 1331 to challenge systematic problems with translations in immigration court); *Montes v. Thornburgh,* 919 F.2d 531 (9th Cir. 1990) (allowing jurisdiction under 28 § USC 1331 to challenge action of the immigration judge who refused to accept documents).

Numerous other courts have found the exercise of jurisdiction proper under the APA and 28 U.S.C. § 1331 to compel the INS to adjudicate an application for adjustment to permanent status.[9] *See, e.g.,* Yu v. Brown, 36 F. Supp. 2d 922, 929 (D.N.M. 1999),

---

[9] Although the Declaratory Judgment Act (28 U.S.C. § 2201 et. seq.) does not confer an independent basis for jurisdiction, it does provide Plaintiffs with additional remedies where jurisdiction exists under 28 U.S.C. § 1331. See State ex. Rel. Missouri Highway and Transportation Com'n v. Cuffley, 12 F.3d 1332,

Juburi v Chertoff, 2007 U.S. Dist. LEXIS 58176(N.D. TX, Aug. 2007). Many courts have also concluded that jurisdiction lies over an APA claim under 28 U.S.C. § 1331 and 5 U.S.C. § 555(b) for failing to adjudicate an application within a reasonable period of time even where there is no mandamus jurisdiction. *See Kim v. Ashcroft*, 340 F.Supp.2d 384 (S.D. NY 2004) (motion to dismiss denied where allegations in alien's complaint were sufficient to state a claim for a violation of the APA due to CIS' failure to adjudicate the adjustment of status application within a reasonable time); *Saleh v. Ridge*, 367 F.Supp.2d 508 (S.D.N.Y. 2005); *Am. Acad. of Religion v. Chertoff*, 2006 WL 1751254 (S.D.N.Y. 2006) (holding that the Government failed to adjudicate Ramadan's B-visa application within a reasonable period of time); *Bartolini v. Ashcroft*, 226 F.Supp.2d 350 (D. CT 2002) (federal question jurisdiction existed over alien's claim based on right to have INS adjudicate his adjustment of status application within a reasonable time as required by APA). In all these cases, the courts found that they had jurisdiction over the APA claim through 28 U.S.C. § 1331 and addressed the reasonableness of the delay.

**4. UNDER THE MANDAMUS STATUTE, AN AGENCY'S DUTY TO ACT DOES NOT DEPEND ON A STATUTORY OR REGULATORY TIMEFRAME.**

The Government's Motion at *2 argue that the statute does not set forth any time frame in which the government must make a determination on an application to adjust status; and no time limit is specified in the regulations. Moreover, this court noted the absence of a "statutory or regulatory timeframe" governing the adjudication of adjustment applications when it found that the agency's inaction was "purely discretionary." *See Rogatch*, 2007 *U.S.* Dist. LEXIS 28450 at *5. In fact, while a statutory timeframe may be useful in evaluating the reasonableness of a delay, its absence has no bearing on whether a duty exists under the APA to conclude an agency matter within a reasonable time.

The seminal case on assessing claims of agency delay, *TRAC* v. *FCC,* 750 F.2d 70 (D.C. Cir. 1984), specifically acknowledges that courts will be called on to assess delay even in the absence of a statutory timeframe. The *TRAC* court lists six factors useful in assessing delay. *See TRAC,* 750 F.2d at 80. The second factor addresses cases in which Congress provided a timetable for agency action in the enabling statute. Id. By setting forth a single factor applicable only in cases where the enabling statute does provide a timeframe, the *TRAC* court necessarily contemplates that courts will assess delay in the absence of timeframes.

There are numerous examples of courts accepting jurisdiction and assessing whether, in the absence of statutory timeframes, an agency's delay is reasonable. *See e.g, Caswell,* 583 F.2d at * 15 (finding courts "absent express statutory time limits . . . must decide whether delays exceed the bound of reasonableness"); *Pennsylvania* v. *Nat'l Ass'n of Flood insurers,* 520 F.2d 11,26-27 (3d Cir. 1975) (mandamus relief available when an agency fails to act pursuant to a statutory duty despite the absence of a statutory timeframe); *Fallini* v. *Hodel,* 783 F.2d 1343, 1346-47 (9th Cir. 1986) (finding that appellants must act within a reasonable time because although "Congress did not provide a time limit within which [to act], an unreasonable delay would violate the spirit and purpose of the [Act]"); *Tang,* 493 F. Supp. 2d at 155 (noting that Congress's use of the word "unreasonably" in the APA meant that Congress intended the court to analyze the

---

1334 (8th Cir. 1997).

reasonableness of agency delay in the absence of a fixed statutory deadline); *Toor v.* Still, No. 07-0645, 2007 U.S. Dist. LEXIS 53 173, * 12- 13 (N.D. Cal. July 10, 2007) (applying APA "reasonableness" standard to delayed adjudication of an adjustment application); *Kim* v *Ashcroft,* 340 *F.* Supp. 2d 384,393 (S.D.N.Y. 2004) ("although there is no statutory or regulatory deadline by which the CIS must adjudicate an application, at some point, defendants' failure to take any action runs afoul of section 555(b)").

By distinguishing between agency action that is "unlawfully withheld" and agency action "unreasonably delayed," *see* 5 U.S.C. § 706(1), the APA necessarily calls on courts to review agency delay even in the absence of statutory time frames. As the Tenth Circuit explained, the distinction between "unlawfully withheld" and "unreasonably delayed" turns on whether the enabling statute provides a timeframe:

> [I]f an agency has no concrete deadline establishing a date by which it must act, and instead is governed only by general timing provisions -- such as the APA's general admonition that agencies conclude matters presented to them "within a reasonable time," [ ] -- a court must compel only action that is delayed unreasonably. Conversely, when an entity governed by the APA fails to comply with a statutorily imposed absolute deadline, it has unlawfully withheld agency action and courts
> . . . . must compel the agency to act.

Forest Guardians v. *Babbitt,* 174 F.3d 1178, 1190 (10th Cir. 1998). Here, where there is no specified timeframe for adjudication of an adjustment application, the district court must consider - as a merits rather than a jurisdictional issue - whether USCIS' action is "unreasonably delayed." *See Toor,* 2007 US. District LEXIS *53* 173. at * 14 (in evaluating *jurisdiction* on a motion to dismiss, court noted that resolution of the "reasonableness" of the delay was premature).

In addition, the presence of a timeframe in one part of the INA and its absence in another part does not indicate Congressional intent to bar courts from reviewing the latter. i.e.. Defendants might argue that because Congress provided an explicit timeframe for adjudication of naturalization applications, but no explicit timeframe for adjustment applications, Congress meant to preclude jurisdiction over delayed adjustment applications. That reasoning is flawed. First, Congress is presumed to know that the APA provides a standard of reasonableness, so it not surprising that <u>it did not set specific deadlines for adjudication of every immigration application.</u> *See Razaq* v. *Poulos,* No. 06-*2461,* 2007 U.S. Dist. LEXIS 770, * 11 (D. Cal. 2007) (finding that Congress enacted the APA as "a generally applicable prescription that would offer agencies the time they legitimately needed to complete their assigned tasks but that would not permit those agencies to evade their duties altogether by retreating indefinitely into inaction").

Further, this is not the first case to involve one section of a title that does not set adjudication timeframes and another section of the same title where Congress did establish timeframes. In *Airline Pilots Association v. Civil Aeronautics Board,* the court found that the delay in adjudicating airline employee assistance claims was unreasonable, even in the absence of specific adjudication timeframes. 750 F.2d 8 1, 88 (D.C. Cir. 1984). This was true notwithstanding the fact that provisions of the same statute - also involving applications in the airline industry - do provide adjudication "timetable[s] mandated by statute." *Airline Pilots Association,* 750 F.2d at 86 & n.27.

Finally, courts have held that Congress must explicitly indicate when an agency should not be subject to the reasonableness standard under the APA. *See, e.g., Sierra Club,* 828 F.2d at 796-98 (holding that the EPA was subject to the standards of reasonableness under the APA because the provisions at issue were not specifically exempted by statute from coverage under the APA).

Given the long standing mandate in § 555(b) requiring agencies to act within a reasonable time, it is incorrect to understand that USCIS does not have a non-discretionary duty to adjudicate adjustment applications within a reasonable time. Here, the INA, its implementing regulations and the APA all mandate that USCIS act on plaintiffs' application and act in a timely manner. The absence of a statutory or regulatory timeframe for adjudication does not exempt the agency from this duty.

The Government's Motion at p. 11 suggests that Plaintiff is seeking judicial review of an agency action. The case at bar does not seek judicial review of any action, whether discretionary or non-discretionary. It seeks to compel Defendants to take action in adjudicating their visa I-485 applications. It seeks only to compel the government defendants to adjudicate Plaintiffs' visa petition and application for adjustment of status and does not seek to compel a specific decision and should not be dismissed. It is the Administrative Procedures Act which requires that the government act in a timely manner, but the APA standing alone is not alleged to confer subject matter jurisdiction.

Defendants cite Heckler v Chaney, 470 U.S. 821,830(1985) at *11. Here the Supreme Court held that :

> "The APA's comprehensive provisions for judicial review of "agency actions" are contained in 5 U.S.C. 701-706. Any person "adversely affected or aggrieved" by agency action, see 702, including a "failure to act," is entitled to "judicial review thereof," as long as the action is a "final agency action for which there is no other adequate remedy in a court," see 704. The standards to be applied on review are governed by the provisions of 706.But before any review at all may be had, a party must first clear the hurdle of 701(a). That section provides that the chapter on judicial review "applies, according to the provisions thereof, except to the extent that - (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." Petitioner urges that the decision of the FDA to refuse enforcement is an action "committed to agency discretion by law" under 701(a)(2)."

Essentially Supreme Court found that the action in question is committed to agency discretion by law, which is not the case in Plaintiffs' case. Here, USCIS has not refused to act. It has already set in motion some of the processing required. According to Heckler v. Cheney, "when an agency does act to enforce, that action itself provides a focus for judicial review". Therefore the court has judicial authority to review USCIS action to completion.The USCIS is required by the INA to exercise its discretion and issue a decision upon an application. Also Heckler case is related to 5 USC 706(2) - "abuse of discretion", while Plaintiffs' case relate to 5 USC 706(1) - "unlawfully withheld or unreasonably delayed" action. The SC concluded that review is precluded for abuse of discretion in Heckler because the underlying law - Federal Food, Drug, and Cosmetic Act

did not provide guidelines for this particular case. The court further noted:

> "We of course only list the above concerns to facilitate understanding of our conclusion that an agency's decision not to take enforcement action should be presumed immune from judicial review under 701(a)(2). For good reasons, such a decision has traditionally been "committed to agency discretion," and we believe that the Congress enacting the APA did not intend to alter that tradition. Cf. 5 Davis 28:5 (APA did not significantly alter the "common law" of judicial review of agency action). In so stating, we emphasize that the decision is only presumptively unreviewable; the presumption may be rebutted where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers.[Footnote 4] Thus, in establishing this presumption in the APA, Congress did not set agencies free to disregard legislative direction in the statutory scheme that the agency administers."

The INA does provide guidelines for the government as to how to process an I-485 application and by failing to adjudicate a I-485 application in reasonable time, the government violates statutory scheme laid down in the INA. Moreover, both 8 USC 1154 and regulations require the USCIS to issue a decision upon an application. Then we have a judicial standard to review agency delay as outlined in <u>TRAC</u> above. Whether to adjudicate an application is not an action committed to the AG discretion by law and does not fall within the scope of 5 USC 701(a)(2).
For example, in immigration context consider the interview for I-485 applicants. USCIS cannot be ordered to conduct an interview. It's left to the agency discretion. This is protected under 701(a)(2). But delaying the decision on I-485 application is not. It's rather reviewable under 706(1). Here the question is not USCIS' refusal to process Plaintiffs' application but rather the unreasonable delay in processing the application.

For the aforementioned reasons, <u>Heckler</u> is not applicable here.
Defendants argue at * 11 that § 701(a)(2) of the APA itself precludes review where "agency action is committed to agency discretion by law", citing Brock v Pierce County, 476 U.S. 253, 260 n.7 (1986). However, the "question whether to adjudicate an adjustment application ... is not discretionary, but is governed by Section 6 of the APA, which requires USCIS to take action on applications presented to it 'within a reasonable time.'" Koren, 2007 U.S. Dist. LEXIS 35128, 2007 WL 1431948 at *5 (emphasis in original) (citing 5 U.S.C. § 555(b)); see also Kim, 340 F. Supp. 2d at 389 ("Were it otherwise, the CIS could hold adjustment applications in abeyance for decades without providing any reasoned basis for doing so."); Bartolini, 226 F. Supp. 2d at 353-54 n.3; Qionglin Fu v. Gonzales, No. 07-207, 2007 U.S. Dist. LEXIS 39623, 2007 WL 1742376, at * 3 (N.D. Cal. May 17, 2007). "[W]hile it is undisputed that the substance of the Attorney General's decision is discretionary, he does not have discretion to decide not to adjudicate at all." Tang, 493 F. Supp. 2d at 155 (citations omitted). Accordingly, courts have routinely found that alleging a violation of Section 6 of the APA brings the action within federal question jurisdiction so long as the claim is not "patently without merit," see, e.g., Koren, 2007 U.S. Dist. LEXIS 35128, 2007 WL 1431948 at *6; Loo v. Ridge, 2007 U.S. Dist. LEXIS 17822, 2007 WL 813000 at *3; Am. Acad. of Religion v.

Chertoff, 463 F. Supp. 2d 400 (S.D.N.Y. 2006); Salehian v. Novak, No. 3:06-cv-459 (PCD), 2006 U.S. Dist. LEXIS 77028, 2006 WL 3041109, at *2;

Likewise, in Keane v. Chertoff, 419 F. Supp.2d 597, 599-601 (S.D.N.Y. 2006), another case cited by defendants, the plaintiff sought, not to compel adjudication within a reasonable time, but to schedule a face-to-face interview, which was not required under any statute or regulation. As in So. Utah and Heckler, since the agency had absolutely no duty to interview plaintiff as part of the adjudication process, the court refused to compel it. Unlike those cases, the government here does have a duty to adjudicate plaintiffs' application for adjustment of status.

**5. 28 U.S.C. § 1361 PROVIDES MANDAMUS JURISDICTION OVER DEFENDANTS FAILURE TO ADJUDICATE PLAINTIFFS' APPLICATION IN A TIMELY MANNER.**

A mandamus Plaintiff must demonstrate that: (1) he or she has a clear right to the relief requested; (2) the defendant has a clear duty to perform the act in question; and (3) no other remedy is available. *Barron v. Reich, 13 F. 3d 1370, 1374 (9th Cir. 1994); Iddir v. INS*, 301 F.3d 492, 499 (7thCir. 2002).

The court may compel the government to take action, but the court cannot compel the agency to exercise its discretion in a particular manner, nor can it grant the relief the Plaintiff seeks from the agency. *Patel v. Reno*, 134 F. 3d 929, 931-932 (9th Cir. 1998). To determine if the Plaintiff has a right to the adjudication of his case, the courts look to the statute in question to determine what Congress directed. *Iddir*, supra at 499.

How this applies to instant petition ?

1. Plaintiff established clear right for adjustment of status to permanent residence under INA 245(a) (8 USC § 1255) because
   - Plaintiff properly submitted I-485 application for such adjustment and USCIS acknowledged it with corresponding Notice of Action(Exhibit A in SAC)
   - Plaintiff is eligible for an immigrant visa on approved I-140 and is admissible to the US for permanent residence(Notice of Action, Exhibit B in SAC)
   - An immigrant visa was immediately available to him at the time Plaintiffs' application was filed(Exhibit G in SAC)

2. Defendants have mandatory, non-discretionary duty to adjudicate Plaintiffs' I-485 application to adjust status to permanent resident(INA 245(a) (8 USC § 1255)) and Defendants fail to act so far.

3. Plaintiff has already highlighted in his complaint, all his (unsuccessful) attempts to obtain remedy. As is amply demonstrated, no other remedy exists.

   Defendants cite Saleh v Ridge 367 F. Supp.2d 508,511(S.D.N.Y 2005) at *9 trying to establish that "courts have consistently found mandamus inappropriate in actions based on the government's failure to adjust applicant's status. The honorable court should note that the Saleh court did find that APA section 555 claim is not patently without merit, and the Court has jurisdiction of Plaintiff's APA claim pursuant to 28 U.S.C. § 1331. In order to better understand the true meaning of "the government's

failure to adjust an applicant's status" in this case, we need to first review the factual background, and put the citation in it's original context. Mr Saleh entered the country illegally in May 1985. He was charged with, and pled guilty to Conspiracy to Traffic in Counterfeit Clothing in violation of 18 U.S.C. sections 371 and 2320, during the pendency of Saleh's application for adjustment of status. On July 15, 1999, Saleh was sentenced to thirty-six months of probation. Hence the length of time, plaintiff's application has been pending is attributable to his own actions.

Likewise in Checknan v. McElroy, 313 F. Supp.2d (cited at *9), Mr. Checknan filed a complaint compelling the INS to place him in removal proceedings. That is not the case in instant complaint.

Likewise in Zheng v Reno 166 F. Supp. 2d 875,880-881(S.D.N.Y 2001)(cited at *12,13), the plaintiff, Hui Jin Zheng, seeked a writ of mandamus and a declaratory judgment requiring the Immigration and Naturalization Service ("INS") to schedule an interview regarding her application for adjustment of her immigration status. That is not the case in instant complaint.

Several courts have found that the Immigration & Nationality Act establishes a clear right to relief for adjustment of status applicants. See *Aboushaban v. Mueller*, 2006 WL 3041086 (N.D. Cal.); *Iddir*, 301 F.3d at 500 (affirmed in *Ahmed v. DHS*, 328 F.3d 383 (7th Cir. 2003); *Paunescu v. INS*, 76 F. Supp. 2d 896, 901 (N.D. Ill. 1999); *Yu, supra, at* 932 ; *Agbemaple v. INS*, 1998 WL 292441 (N.D. Ill.);

Several courts have held that the USCIS has a non-discretionary duty to adjudicate adjustment applications and that this duty supports a mandamus action. See e.g. Liu v. Chertoff, No. 06-2808, 2007 WL 2023548, *3 (E.D. Cal. Jul. 11, 2007); Lei Xu v. Chertoff, No. 07-366, 2007 WL 2033834, (D.N.J. 2007); Saleem v. Keisler, No. 2007 WL 3132233 (W.D. Wis. Oct. 26, 2007); Hoyoung Song v. Klapakas, No. 06-05589, 2007 WL 1101283 (E.D. Pa. Apr. 12, 2007); Guangming Liu v. Chertoff, No. 06-3297, 2007 WL 1202961 (C.D. Ill. Apr. 23, 2007); Paunescu v. INS, 76 F. Supp. 2d 896, 901 (N.D. Ill. 1999), Linville v. Barrows, 489 F. Supp. 2d 1278, 1281 (W.D. Okla. 2007), Duan v. Zamberry, 2007 U.S. LEXIS 12697, *6 (W.D. Pa. Feb. 23, 2007), Linville v. Barrows, 498 F. Supp. 2d 1278, 1282 (W.D. Okla. 2007); Yang Tang v. Chertoff, 2007 U.S. Dist. LEXIS 46030, *10 (D. Mass. June 10, 2007); Al-Juburi v. Chertoff, Civ. Action No. 3:06-cv-1270-D, 2007 U.S. Dist. LEXIS 58176, *10 (N.D. Tex. Aug. 9, 2007); Landry v. Chertoff, Civ. Action No. 07-0506, 2007 U.S. Dist. LEXIS 49081 (E.D. La July 5, 2007)

## V. NO OTHER REMEDY IS AVAILABLE

The courts will not grant mandamus relief if the Plaintiff has an alternative, fully adequate remedy available. This means that Plaintiffs must exhaust their administrative remedies. For nearly three years, Plaintiff has inquired in person, phoned, and made inquiries through the US Senator(Refer to Second Amended Complaint). Despite these numerous inquiries to the agency, Plaintiff's application remains pending. Plaintiff has no other adequate remedy other than recourse to this Court for relief. See, *Yu*, supra at 932.

## VI. CONCLUSION

The Complaint filed in the instant case sets forth a claim(s) for relief that lies within this Court's subject matter jurisdiction. Additionally, Plaintiff states claims for which relief can be granted. Therefore, Plaintiff respectfully asks the court to overrule Defendants' Motion to Dismiss and establish a discovery schedule and to direct Defendants to answer Plaintiffs' Complaint. Accordingly, Defendants Motion must be denied.

Dated this January 7, 2008

Rajesh Radhakrishnan

Rajesh Radhakrishnan, Plaintiff
49 Ballou St
Cumberland
RI 02864