| | |
|---|---|
| **Rajesh Radhakrishnan**<br>**49 Ballou St Cumberland**<br>**RI 02864**<br><br>**Smitha Sankaran Nair**<br>**49 Ballou St Cumberland**<br>**RI 02864**<br>**Plaintiffs'**<br><br>**v.** | **CIVIL ACTION**<br>**NO. CA 07 327S** |
| ***Michael Chertoff***<br>**Secretary, Department of Homeland Security**<br>**Office of the General Counsel**<br>**U.S. Department of Homeland Security**<br>**20 Massachusetts Ave, NW, Suite 402**<br>**Washington, D.C. 20528** | **THIRD AMENDED COMPLAINT** |
| ***Emilio T Gonzales***<br>**Director of the U.S. Citizenship and**<br>**Immigration Service**<br>**Office of the General Counsel**<br>**U.S. Department of Homeland Security**<br>**20 Massachusetts Ave, NW, Suite 402**<br>**Washington, D.C. 20528** | |
| ***Robert S. Mueller III***<br>**Director of Federal Bureau of Investigation**<br>**J. Edgar Hoover Building**<br>**935 Pennsylvania Avenue**<br>**NW, Washington, DC 20535-0001** | |
| **Evelyn Upchurch , Director**<br>**Texas Service Center**<br>**U. S. Citizenship and Immigration Services**<br>**Mesquite, TX 75185** | |
| **Alberto Gonzalez, Attorney General**<br>**U.S. Department of Justice**<br>**950 Pennsylvania Av., NW**<br>**Washington, DC 20530-0001** | |
| **Condoleezza Rice**<br>**United States Secretary of State**<br>**U.S. Department of State** | |

**2201 C Street NW** )
**Washington, DC 20520** )
**Defendants** )
)
______________________________________)

**PLAINTIFF'S THIRD AMENDED COMPLAINT**
**FOR WRIT IN THE NATURE OF**
**MANDAMUS AND INJUCTIVE RELIEF**

Plaintiffs, Rajesh Radhakrishnan and Smitha Sankaran Nair, **Pro Se** present third amended Complaint before this Honorable Court.

## I. INTRODUCTION

1. This is a civil action to compel the Defendants to process the necessary background checks and adjudicate Plaintiff's Application to Adjust Status to Permanent Resident(Form I-485)(hereinafter "I-485"). Plaintiff, Rajesh Radhakrishnan's and Plaintiff, Smitha Sankaran Nair's I-485 applications were filed on March 11, 2005 with the U.S. Citizenship and Immigration Services, (hereinafter "USCIS") Vermont Service Center in Saint Albans, Vermont. Plaintiffs have made numerous inquiries and requests for their I-485 applications to be adjudicated. Defendants have failed to complete Plaintiffs background checks and failed to adjudicate their I-485 applications within a reasonable time.

## II. JURISDICTION

2. This Court has subject matter jurisdiction over this petition under 28 U.S.C. § 1331 (Federal question statute) since this is a civil action arising under the Constitution and the laws of the United states, including the Fifth Amendment to the U.S. Constitution, provisions of Title 8 U.S.C. § 1101 et seq. (Immigration and Nationality Act, INA) and applicable regulations, policies and procedures arising thereunder. This Court may grant relief in this action under 28 U.S.C. § 1361 (Mandamus Act); 28 U.S.C. § 1651 (All Writs Act); 28 U.S.C. § 2201 (Declaratory Judgment Act); and under 5 U.S.C. § 701 et seq. (Administrative Procedures Act).

## III. VENUE

2. .
3. Venue is proper in this district as Plaintiffs resides in Cumberland, Rhode Island which is in this District and no real property is involved in this action. See 8 U.S.C. § 1391(e).

## IV. PARTIES

2. .
3. .
4. Plaintiffs are citizens of India. Plaintiff, Rajesh Radhakrishnan was admitted to the United

States in August, 1998 as an F1 non-immigrant student. On January 11, 2001, his status changed to H1B, a non-immigrant category, until 26 November, 2003. Subsequently, his H1B was extended for a further period of three years until 26 November, 2006. Plaintiff Smitha Sankaran Nair was admitted to the United States in December 2004 as an H-4 non-immigrant dependent visa.

5. Defendant Emilio T. Gonzalez is sued in his official capacity as the Director of the United States Citizenship & Immigration Services (USCIS), an agency within the U.S. Department of Homeland Security, which is charged by law with the duty of adjudicating I-485 applications for adjustment of status to lawful permanent resident and for the adminstration of the USCIS and the implementation of the immigration laws of the United States.

6. Defendant Michael Chertoff is sued in his official capacity as the Secretary of the Department of Homeland Security. In that capacity, he has responsibility for the administration and enforcement of the immigration laws pursuant to 8 U.S.C. §1103(a), including the accurate, efficient and secure processing of immigration benefits. As a result of a massive reorganization, the Immigration and Naturalization Service (I.N.S.) was dissolved on March 1, 2003, and its functions were taken over by the Department of Homeland Security.

7. Defendant Alberto Gonzalez is sued in his official capacity as the attorney general of the United States and is charged with the authority and duty to direct, manage, and supervise all employees and all files and records of the Department of Justice including the security checks required to obtain an immigration benefit such as the I-485 adjustment of status to lawful permanent residence.

8. Defendant Robert S. Mueller, III is sued in his official capacity as the Director of the Federal Bureau of Investigation (hereinafter "FBI"), an agency within the United States Department of Justice, which is responsible for conducting both criminal record checks and National Name Check Program ("NNCP"). The NNCP disseminates information from the FBI's Central Records System in response to requests submitted by federal agencies, including the USCIS. Upon the request of the USCIS, the FBI performs name checks and other security checks on all applicants for adjustment of status to lawful permanent residence.

9. Defendant Evelyn Upchurch, is sued in his official capacity as the Director of the Texas Service Center of USCIS of the DHS. In his capacity as the director of the Texas Service Center, USCIS, Mr. Upchurch is responsible for the adminstration of immigration benefits and services including the processing of employment based immigration petitions. As such, he has decision-making authority over the matters alleged in this complaint.

10. Defendant Condoleeza Rice is sued in her official capacity as the U.S. Secretary of State. She is generally charged with implementing U.S. foreign policy and is further authorized to delegate such powers and authority to subordinate employees of the Bureau of Consular Affairs("BCA"), which is an agency within the Department of State. The BCA is responsible for the issuance of visas to foreign nationals for entry to the U.S. and is also responsible for

the tracking and allocation of visa numbers to foreign nationals. The BCA releases a monthly visa bulletin that indicates when a foreign national may appy for a class of immigrant visas based on his or her priority dates. Only visa applicants with a priority date earlier than the cut off date listed for each category in the Visa Bulletin may be assigned a visa number and granted an immigrant visa. In that capacity, she also has responsibility for issue of immigrant visa numbers pursuant to 8 U.S.C. § 1255(b).

## V. EXHAUSTION OF ADMINSTRATIVE REMEDIES

11. Plaintiffs have exhausted all their administrative remedies. Plaintiffs have supplied the USCIS documents that clearly establish their eligibility to Register Permanent Resident or Adjust Status. Plaintiffs have made numerous enquiries concerning the status of their I-485 applications to no avail. Plaintiffs have no other adequate remedy available for the harm they seeks to redress – the failure of Defendants to adjudicate their Form I-485 Application to Adjust Status to Permanent Resident in a timely manner.

## VI. STATEMENT OF FACTS

12. Plaintiff, Rajesh Radhakrishnan is the beneficiary of an immigrant petition in the EB2 category, form I-140 filed by his petitioning employer, Simulia, Inc. (world renowned for simulation software ABAQUS), which was approved on February 12, 2002. Attached hereto as **Exhibit A** (an acknowledgement document by the USCIS). Plaintiff, Rajesh Radhakrishnan is an applicant in the EB2 Category of employment based immgration. Plaintiffs are citizens of India.

13. Plaintiffs properly filed an application I-485, Application to Register Permanent Resident or Adjust Status, pursuant to Section 245 of the Immigration & Naturalization Act on March 11, 2005. Attached hereto as **Exhibit B** (an acknowledgement document by the USCIS).

14. An immigrant visa was immediately available to the plaintiffs at the time, I-485 was filed.

15. An immigrant visa was immediately available to the plaintiffs at the time of filing this complaint (on August 29, 2007).

16. USCIS publishes processing dates every month online at: https://egov.uscis.gov/cris/jsps/Processtimes.jsp?ServiceCenter=TSC. In August 2007, at the time of filing instant complaint, Texas Service Center was completing/processing AOS applications filed on or before October 27, 2006 while Plaintiffs submitted his application in March 2005. Attached hereto as **Exhibit C**.

17. Plaintiffs submitted their fingerprints to USCIS on May 17, 2005. Plaintiff, Rajesh Radhakrishnan submitted his fingerprints for the second time on May 5, 2007. Plaintiff, Smitha Sankaran Nair submitted her fingerprints for the second time on June 14, 2007. Attached hereto as **Exhibit D** (copy of fingerprint notices from USCIS).

18. Plaintiffs have applied for multiple Employment Authorization Documents that were approved. Both plaintiffs have one Travel Parole Applications that were granted to them.

19. Since August, 2005, Plaintiff, Rajesh Radhakrishnan has been contacting USCIS over the phone about the case status to figure out why the processing of their cases has been delayed and has received no definitive responses or relief.

20. On March 12, 2007, Plaintiffs and got a response from Vermont USCIS that the I-485 case was transferred to the Nebraska USCIS office to speed up processing. Attached hereto as **Exhibit E** (copy of transfer notice issued by USCIS). If Defendants wanted to speed up processing, Plaintiffs seeks to know why their long pending namechecks were not expedited instead. Defendants are well aware of the fact that USCIS namecheck requests are routinely flagged as "routine requests with no specific deadlines" by the FBI NNCP staff.

21. On April 5, 2007, Plaintiff, Rajesh Radhakrishnan requested Congressional Assistance from the office of Jack Reed to get the case Adjudicated and FBI name check finalized. Attached hereto as **Exhibit F** (copy of Plaintiff's letter to Congressman Jack Reed's office submitted via the Congressman's website). On May 23, 2007, Plaintiff received information from the office of Jack Reed indicating that he has send additional correspondence to the USCIS Texas Service Center. Attached hereto as **Exhibit F**.

22. On May 14, 2007, plaintiff, Rajesh Radhakrishnan appeared before the USCIS Providence in order to enquire about the status of his case. Plaintiff was finally told by an immigration officer that USCIS still had not completed the FBI Name Check Clearance and that it has been pending since May, 2005.

23. On July 12, 2007, Plaintiff, Rajesh Radhakrishnan contacted the USCIS via the national hotline to enquire about the status of the case. The USCIS officer informed the Plaintiff that the case is still under review. A Service request about the the cases was initiated on the recommendation of the USCIS officer.

24. On July 25, 2007, Plaintiff, Rajesh Radhakrishnan decided to file a FOIPA(Freedom of Information Privacy Act) to see if the reason behind the FBI Name Check Clearance delay was due to a Record in the FBI Central Record System(CRS). The FBI name check is made against the CRS system which is updated by 20 other agencies for various reasons.

25. On August 17, 2005, Plaintiff, Rajesh Radhakrishnan got a response back from David M. Hardy, Section Chief of CRS stating that there were "No Records" or "Hits" in the system based on the name provided by the Plaintiff. Attached hereto as **Exhibit G**. This is the same system coincidently that the FBI make repeated Name Check inquiries against on behalf of USCIS for all applicants filing for Permanent Residency in the light of September 11, 2001.

26. Defendant FBI's inaction and refusal to complete Plaintiff's namecheck and to transmit a "FBIQUERY System" response is both arbitrary and capricious, as the FBI has a mandatory, non-discretionary duty, as required by law, to complete this process. Defendant FBI's

inaction is a violation of the APA in that it has unreasonably delayed action on Plaintiff's FBI NNCP namecheck. The APA provides a remedy to compel agency action unlawfully withheld or unreasonably delayed.

27. On August 24, 2007, Plaintiff, Rajesh Radhakrishnan contacted the USCIS via the national hotline to enquire again about the status of the service request. The USCIS officer informed the plaintiff that the USCIS had still not completed his background check; and therefore was unable to approve the petition.

28. On September 7, 2007, Plaintiff, Rajesh Radhakrishnan received information from the office of Jack Reed indicating that he has send additional correspondence to the USCIS Texas Service Center. As in **Exhibit F**, he had obtained no further information. Attached hereto as **Exhibit H**.

29. On September 8, 2007, Plaintiff, Rajesh Radhakrishnan received a response from the USCIS Texas Service Center. It states: *"The processing of your case has been delayed. A check of our records establishes that your case is not yet ready for decision, as the required investigation into your background remains open"*. Attached hereto as **Exhibit I.**

30. On September 14, 2007, plaintiffs appeared before the USCIS Providence in order to enquire about the status of Plaintiff Smitha Sankaran Nair's background checks. Plaintiff was finally told by an immigration officer that her "name check" has cleared( No information was given on when the name check was cleared), but the processing of her case cannot proceed unless the primary applicant, Plaintiff, Rajesh Radhakrishnan's "security clearance" is cleared.

31. On October 10, 2007, the plaintiffs attorney for I-485, received two Request for Evidence (**RFE**) letters from USCIS Texas Service Center for both plaintiffs'. Both stated that *" The medical examination (Form I-693) contained in your Service file does not indicate that the required Tuberculin skin test was conducted. You should return to the civil surgeon who first examined you( or another civil surgeon authorized by this service) to properly complete the form I-693 medical examination to include the required tuberculin skin test"*. Attached hereto as **Exhibit J**. The original I-693 was completed in December 2004. It included the Chest X-ray results to prove that plaintiffs did not have active Tuberculosis. Plaintiffs seeks to know why the RFE was issued in October 2007, when the completed I-693 was available to USCIS with the original I-485 application submitted in March 2005. Plaintiffs request the honorable court that USCIS be ordered to prove that the mandatory tuberculin skin test results were verified for all I-485 applications approved since March 2005. Plaintiffs have strong reasons to believe that the changed guidelines were issued by the Center for Disease Control and Prevention(CDC) in March 2007(attached hereto as **Exhibit K**). The RFE indicated that plaintiffs have 30 days to respond to this letter. Plaintiff's life is continously being put on hold(held at ransom) until the I-485 application is adjudicated because of RFE's like these. Plaintiff is concerned about the extended processing time for these RFE's. Plaintiff suspects that the USCIS is using the RFE injudiciously to justify the inexcusable delay in adjudicating I-485 application like the plaintiff's. USCIS requests have been complied with and the online status of the applicant indicates that USCIS received the

response on October 26, 2007. Attached hereto as **Exhibit N.** If Defendants had expedited the namechecks by then, Plaintiffs applications would surely have been adjudicated before the January Visa Bulletin came into effect.

32. On November 9, 2007, Plaintiff, Smitha Sankaran Nair received a response from USCIS Texas Service Center. It states: *The processing of your case has been delayed. We are currently awaiting the results of required security checks on this case.* Attached hereto as **Exhibit L**

33. Plaintiff, Rajesh Radhakrishnan has been unable to apply for the job of Senior Stress Analyst with the current employer as the job requires U.S. Citizenship or Permanent residency. Attached hereto as Exhibit **M.** This job is a promotion from the plaintiff's current position( Development Engineer II) with the company. The defendants inability to timely adjudicate plaintiff's application has caused enormous financial burden and emotional stress on Plaintiff's family as they have to pay high mortgages in a financially unsecure housing market and yet are unable to advance their career in a dynamic and vibrant job market.

34. Plaintiffs have always complied with immigration and civil laws, has never been arrested or convicted of a crime and have never presented a security risk to the United States. Plaintiff, Rajesh Radhakrishnan has been lawfully present in the United States or over 9 years since Aug 1998. Plaintiff, Smitha Sankaran Nair has been lawfully present in the United States since Dec 2004.

35. Plaintiffs understand the need for a criminal record check and a security or name check clearance for applicants for permanent residence. However, Plaintiff Rajesh Radhakrishnan's name check is pending with the defendant FBI since April 2005. It seems that the FBI namecheck results are the only pending factor in adjudicating Plaintiff Rajesh Radhakrishnan's application. Defendants cite national security concerns to require that plaintiffs namecheck be complete, notwithstanding the fact that the FBI was unable to identify any national threats due to Plaintiffs for over 2.5 years. In doing so, Defendants USCIS seem to engage in a deliberate pattern of deception; and that, as a result, Plaintiffs were forever prevented from obtaining visa numbers for the fiscal years 2005-2008. These claims have enough "possible validity" to constitute a colorable cause of action for equitable estoppel. See Mauting v. INS, 16 Fed. Appx. 788 (9th Cir. 2001). Plaintiffs suspects that no background investigation is ongoing at this time and their cases are just sitting on a shelf somewhere where it will likely remain for eternity unless this Court orders Defendants to complete the name check investigations in an expedited manner. Plaintiffs assert that the Defendants have no legal basis for failing to proceed with this case.

36. Though no statutory deadline is imposed for adjudication of Plaintiffs applications, if either of them is truly a security threat to the US, it behooves the Defendants, USCIS and the FBI to act on their application promptly so that this threat is quickly identified.

37. Plaintiffs are aware that the USCIS is free to issue a decision in their case as Defendant USCIS deems legally appropriate and just. Though Defendant can deny or approve Plaintiffs

application in the exercise of its discretion, the duty to adjudicate the I-485 application is not discretionary. The Adminstrative Procedures Act(hereinafter "APA") imposes on the defendants a non-discretionary duty to complete the processing of Plaintiff's I-485 application within a reasonable time, see 5 U.S.C § 555(b). The Defendants have violated their statutory and regulatory duties owed to Plaintiffs to timely adjudicate his I-485 application, which has been pending for over thirty four months. The delay in adjudicating these I-485 cases are unreasonable.

38. Plaintiffs have a clear right to have their I-485 application adjudicated in a timely manner. The adjudication of an I-485 adjustment of status application is ministerial, non-discretionary task that Defendants must perform within a reasonable period of time. See, *Nyaga v. Ashcroft*, 323 F.3d (11th Circ. 2003). The court in Nyaga held that although it did not have jurisdiction to order the Immigration Service to issue a decision, the court can order the Immigration Service to "adjudicate the application thoroughly and make a decision one way or another." Id. at 1253;. (*Yu v. Brown*, 36F. Supp. 2d 922, 925 (D.N.M. 1999); Agbemaple v. I.N.S., 1998 U.S. Dist. LEXIS 7953 (N.D. Ill. May 12, 1998). In Yu, where plaintiff sought a writ of mandamus to force INS to act on her application for lawful permanent residence two and half years after she applied, the court concluded that Yu's petition properly stated a claim for mandamus. Also in Elkhatib v. Bulter, 2005 U.S. Dist. LEXIS 22858 (S.D. Fla. Jun 6, 2005) court found that respondents have a non-discretionary duty to process Plaintiff's application within a reasonable period of time.

39. As of August 29, 2007, more than 2 years and 5 months after submitting all documents to USCIS, no resolution on Plaintiffs application has been reached so he filed the initial complaint with the Rhode Island District Court. This action challenges only the defendants timeliness in adjudication of Plaintiffs applications, not the granting or denial of that application.

40. Section 202 (8 U.S.C. § 1571) of the Title II of the American Competitiveness in the Twenty-first Century Act of 2000(AC21) clearly lays down the parameters of reasonableness in immigration adjudication, stating: "...It is the sense of Congress that the processing of an immigration benefit application should be completed not later than **180 days** after the initial filing of the application.

41. On December 10, 2007, Department of State(DOS) issued the January 2008 Visa bulletin (available at http://travel.state.gov/visa/frvi/bulletin/bulletin_3897.html) (refered herein as January bulletin). On January 7, 2008, DOS issued the February 2008 Visa bulletin( available at http://travel.state.gov/visa/frvi/bulletin/bulletin_3925.html) (refered herein as February Bulletin). Both bulletins are attached hereto as **Exhibit O.** January Bulletin states that visa numbers for Indian Nationals under the employment based EB2 category will have retrogressed to January 2000. Plaintiffs have a priority date of April 3, 2000 and thus were affected by the retrogression in January 2008. The February Bulletin states that visa numbers are unavailable for Indian Nationals in the EB2 category for the rest of fiscal year. The Nyaga court observed that "Because the statute did not plainly prohibit the adjudication of Nyaga's application, the court turned to congressional intent and concluded that "Congress

could not have intended for aliens to lose their eligibility .. due solely to government inaction.". See *Nyaga v. Ashcroft*, 323 F.3d 906 (11th Cir. 2003) . In instant complaint, Defendants, USCIS are well aware of the fact that Indian Nationals in the employment based immigration categories frequently face retrogression of visa numbers. Defendants USCIS have recklessly violated the congressional intent of processing applications as expressed in 8 U.S.C. 1153(e) and adjudicated applications with priority dates later than the plaintiffs. They have and will continue to hold Plaintiff's life and careers in a state of limbo. There is no order to the movement of priority dates for immigrant visa numbers, especially with regard to high demand nations like India and China.

42. How can immigrant visa numbers run out for plaintiffs in instant complaint with a priority date of April 3, 2000, when only recently USCIS was recklessly adjudicating I-485 applications with priority date as recent as July 2007(Archived visa bulletins are available at http://travel.state.gov/visa/frvi/bulletin/bulletin_1770.html). Plaintiffs wish to bring to the attention of honorable court the reasons behind the current retrogression of visa numbers for applicants from select countries like India and China. The U.S. government makes only a certain number of immigrant visas (green cards) available each year and these are allocated among the various immigrant visa categories and countries from which applicants seek to emigrate (8 U.S.C. § 1152 & 1153). Congress further intended that immigrant visa numbers to immigrants under the employment based category be issued based on their priority dates(8 U.S.C. § 1153(e)). When USCIS unlawfully witholds processing of applicants with pending FBI namechecks these applicants are denied their congressionally mandated position in the first-in, first out queue for immigrant visa numbers. USCIS recently embarked upon recklessly issuing visa numbers for applicants with later priority date than plaintiffs. The only hope for Plaintiffs to receive justice in this situation is to trust the judicial system and file timely lawsuits.

43. Plaintiffs wish to bring to the attention of honorable court developments in two related mandamus lawsuits filed recently in the District Court of Columbia. In these two lawsuits, Defendants seem to have completed the adjudication of I-485 applications of plaintiffs in record time. The case numbers for these lawsuits are 07-CV-2268 and 07-CV-2299. **(Attached hereto as Exhibit P)**. The lawsuits were filed around 20 December, 2007. The plaintiffs in both these cases, brought forward the argument that they would soon be adversely affected by retrogression pursant to the visa bulletin of January 2008.[2] Plaintiff, Rajesh Radhakrishnan notified Defendants Attorney, Richard Myrus over the phone around December 12, 2007 that he too would be affected by the same retrogression and wished to have his namecheck expedited or in the alternative have visa numbers pre-allocated for him and his spouse. Plaintiff also cited case CV-07-0967-PK(District of Oregon) to the Defendants Attorney(where Plaintiff Karthigeyan Seetharam's adjudication seemed to have been expedited in a similar manner or a visa number was preallocated to him). Plaintiff was specifically told that his request could not be accommodated. Plaintiffs request the honorable court to force USCIS and the FBI to release all pertinent information on how

2 In case 07-CV2268, Plaintiff Jayasekar Kovuri is an Indian Citizen who had a labor priority date of 12/07/2000 in EB2 Category and I-485 filing date was 12/2002. In case 07-CV2299, Plaintiff Anand Srinivasan is an Indian Citizen who had a labor priority date of March 1998 in EB3 Category and I-485 filing date was 05/01/2006.

applications of these individuals were adjudicated in record time and why those factors were not applied to Plaintiffs in instant complaint. Of specific interest is the nature of FBI namechecks that were completed if any and if they were expedited on request from USCIS. If indeed, the checks were expedited, of specific interest is who authorized them and why. Also of specific interest is whether visa numbers were pre-allocated to these plaintiffs. USCIS should also be forced to inform the honorable court of all specific instances where expedite namecheck requests for I-485 applicants and/or preallocation of visa numbers were issued under similar circumstances. In these cases, the Government implicity agree to their mandatory duty to adjudicate I-485 applications.[3] By their actions to adjudicate these applications, Defendants implicity agree that inaction on the Government's part cannot be employed to penalize an alien who appears to have always acted in good faith and timely submitted all documents to process his I-485 application. Immigration agents may have no duty to inform aliens of matters of national security, but they have primary responsibility to complete investigations of such nature in a timely fashion, esp. if the nature of their investigation lies in their faulty databases on which basis they initiated the investigation. The delay is not justifiable if they cannot prove to the court any set/s of facts that show plaintiffs to be a risk to this country. USCIS officials are under a duty to accord to him within a reasonable time the decision on his I-485 application to which he is entitled by law. By its maneuvers here, the INS has ensnared plaintiff in a "Catch-22" predicament; the Service's conduct is analogous to the entrapment of a criminal defendant and, as such, cannot be countenanced. Given the present uncertainty about retrogression date movement, this would "result in the loss of all that makes life worth living" for the plaintiff. When such serious injury may be caused by USCIS decisions, its officials must be held to the highest standards in the diligent performance of their duties. Here, their duty was clear. Just like the plaintiffs mentioned in these lawsuits, Plaintiff had a clear right under the USCIS own regulation to have his I-485 application adjudicated in a timely manner. USCIS officials, by their inaction, deprived Plaintiffs in instant complaint of that right without justification. See *Fano v. O'Neill*, 806 F.2d 1262 (5th Cir. 1987) (allegation that INS acted "willfully, wantonly, recklessly, and negligently" in delaying processing of alien's visa application encompassed element of affirmative misconduct necessary to state equitable estoppel claim); Justice and fair play can only be achieved in this case by holding, as we do, that the Government is estopped from denying plaintiff the benefit of securing a visa-number in seeking an adjustment of his status under 8 U.S.C. § 1255. **After the mandatory checks(background check, name check) are completed,** Plaintiff's application should be remanded so that they may be adjudicated under the same circumstances as if the FBI had completed all required checks within a reasonable time after receiving their applications on March 2005.

44. Plaintiffs contend that they were eligible for a visa number for extended periods of time since filing their I-485 application and were prevented from obtaining it only because of the USCIS's( and FBI's) unjustified delay in completing plaintiff's extended background checks(which are not statutorily required). The delay resulted from wilful negligence and are oppressive in nature to plaintiffs right to timely adjudication. Defendants have not even attempted to offer any explanation for having ignored applicants files for extended periods of

---

3 These lawsuits were filed in District of Columbia, where they cite the precedent opinion of Judge Emmet G. Sullivan in Liu v Novak, 509 F.Supp. 2d 1, 13(D.D.C. Aug 30, 2007).

time. In support plaintiff behooves USCIS to submit to honorable court the list of all applicants with priority dates later than plaintiffs who have been adjudicated. There is in short, no apparent justification from the USCIS or the FBI for the unreasonable delay in completing the namechecks. Plaintiff further alleges that since filing the complaint in Aug 2007, Defendants had adequate time to expedite the namechecks for plaintiff(refer to previous paragraph) and adjudicate the application before plaintiffs were affected by retrogression in Jan 2008. Plaintiff further alleges that both USCIS( in cohorts with FBI) in response to DOS opening the floodgates with visa numbers completed the security checks and consumed about 60,000 visa numbers in June 2007. Notwithstanding the workload of either agencies, that a record number of visa numbers were consumed by USCIS weakens their argument that they are overburdened with applications. To support the argument of affirmative misconduct against the USCIS, plaintiff urges the honorable court to require that defendants submit information on details of namechecks conducted for all approved applicants approved in June 2007. Plaintiff also urges that Defendants be required to state under oath where visa number were pre-allocated to applicants whose namechecks had not been **completed**(emphasise). The CIS Ombudsman's report for fiscal year 2007 indicates that USCIS service centers process newer and simpler cases in a prioritized manner to obtain additional grants in future years( the grant allocation is proportional to the cases adjudicated by each service center).

45. Under § 706 of the Administrative Procedure Act (APA), a court may set aside any agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). In Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984), the Supreme Court established a two-pronged framework for judicial review of an administrative agency's interpretation of the statutes and regulations that it administers: If congressional intent is clear, both the court and the agency must give effect to the unambiguously expressed intent of Congress. If, however, Congress has not directly addressed the exact issue in question, a reviewing court must defer to the agency's construction of the statute so long as it is reasonable. In this case, congressional intent is clear in 8 USC 1153(e). *Immigrant visas made available under subsection (a) or (b) of this section shall be issued to eligible immigrants in the order in which a petition in behalf of each such immigrant is filed with the Attorney General.* On November 29, 1991, the Service published a final rule on employment-based petitions in the Federal Register at 56 FR 60897-60913. The final rule, codified at 8 CFR 204.5(d), provided that the priority date for an employment-based petition accompanied by a labor certification shall be the date on which any office within the employment service system of the Department of Labor accepted the request for labor certification. A priority date determines when an alien who has had an immigrant visa petition approved on his or her behalf may submit his or her application for permanent resident status or an immigrant visa. Plaintiff, Rajesh Radhakrishnan has a priority date of April 3, 2000. Plaintiff, Smitha Sankaran Nair, being a derivative applicant carries the same priority date. USCIS (continuing) action in adjudicating applications with a priority date later than that of plaintiff is indeed arbitrary, capricious and an abuse of discretion. USCIS action in selectively expediting namechecks for applicants who have filed mandamus lawsuits is an abuse of discretion.

46. The Ninth circuit court in Mauting v. INS, 16 Fed. Appx. 788 (9th Cir. 2001) opined that Estoppel may be applied against the INS where it engages in some "affirmative misconduct" beyond mere negligence. In instant complaint, Estoppel against the government applies because the USCIS wrongful act of issuing Green Cards to applicants with a priority date later than the plaintiffs(on the sole basis that plaintiffs in instant complaint have a long-pending namecheck due to FBI inaction) is in violation of 8 U.S.C. 1153. "Deference to the [agency's] interpretation of the immigration laws is only appropriate if Congress' intent is unclear." See Socop-Gonzalez v. INS 272 F.3d 1176, 1183 (9th Cir. 2001). This constitutes serious injustice. Plaintiff further notes that public's interest will not suffer undue damage by imposition of the liability of obtaining a visa number for the plaintiffs. Unlike diversity visa applicants, employment based applicants can claim visa numbers from any fiscal year. Unused employment based immigrants visa are however lost[4]. In instant case, Plaintiffs allege that the USCIS recklessly issued visa numbers to applicants with later priority dates and unlawfully witheld adjudication in Plaintiffs case, in violation to it's own regulations(8 C.F.R. §103.2(b)(18)). Defendants in claiming that national security requires that plaintiffs namechecks be complete, notwithstanding the fact that the FBI was unable to identify any security threats due to Plaintiffs for the past thirty six months; seem to engage in a deliberate pattern of deception; and that, as a result, the Plaintiffs were forever prevented from obtaining visa numbers from the fiscal years 2005-2008. These claims have enough "possible validity" to constitute a colorable cause of action for equitable estoppel.

47. These allegations if proved right would enable this court to estopp the Government agencies. See Santiago v. INS, 526 F.2d 488, 492 (9th Cir.1975) (en banc) (holding in the immigration context that the court continues "to believe that estoppel is available in such cases where the particular facts warrant it") (citing INS v. Hibi, 414 U.S. 5, 8 (9th Cir.1973)); USCIS has had much more than reasonable time to complete all requirements for adjudicating Plaintiffs long pending adjustment application. To date, neither the USCIS nor it's contracting agency, FBI, has offered any plausible explanation that warrants withholding of the adjudication. Also see Sun Il Yoo v INS, 534 F.2d. 1325, ( 9th Cir.1976) "*in short, no apparent justification for the Service's unreasonable delay in recognizing the bona fides of Yoo's petition. Such conduct, it seems to us, fully merits the [**7] characterization of "oppressive"*. Also see, Galvez v. Howerton, 503 F. Supp. 35(C.D. Cal. 1980) *"In the present case,... the plaintiffs were clearly eligible for permanent resident status at the time they filed their applications.... The Court finds that the INS has engaged in affirmative misconduct ... and that defendants are estopped from denying them permanent resident status."*.

48. Defendants have sufficient information to determine Plaintiffs eligibility pursuant to applicable requirements and complete the processing procedures. Plaintiffs have done

4 In Fiscal Years 1999 and 2000, the annual numerical limits for Employment-based immigrant visa numbers were not reached. The American Competitiveness in the Twenty-First Century Act (Pub. L. 106–313 enacted October 17, 2000) recaptures those Employment-based numbers that were available but not used in Fiscal Years 1999 and 2000. Beginning in Fiscal Year 2001, those unused numbers (which totaled 130,107) are made available to applicants in the Employment First, Second, and Third preference categories once the annual Employment-based numerical limit has been reached.

everything possible to get their cases adjudicated but the Defendants have clearly not given the Plaintiff any form of relief.

## VII. INJURY TO PLAINTIFF

49. The delay has resulted in significant hardship to the Plaintiffs. Plaintiffs have been deprived of the status of lawful permanent residence which has resulted in their incurring numerous additional expenses, including but not limited to legal expenses, USCIS filing fees, and other expenses directly related to their not having Lawful Permanent Resident Status.

50. Plaintiffs are waiting and will continue to wait for a significant amount of time for a decision on their AOS application. Their status in the United States has been and will continue to be uncertain. Plaintiffs could not plan ahead because they have not known and do not know when they would become a permanent resident.

51. Plaintiffs have lost a significant time while pursuing his adjustment of status application, making inquiries with USCIS, meeting with lawyers, applying for yearly work authorization renewals, reporting for fingerprinting, and otherwise pursuing his delayed permanent residency.

52. Plaintiffs have to obtain yearly work authorization permits while his AOS application is pending. Plaintiffs have to obtain advance parole document to travel abroad to meet their family. Plaintiffs had to obtain transit visa from British Embassy to merely travel via London Heathrow Airport to their home country(India) to visit family. This results in significant out-of-pocket expenses, including attorneys' fees, inconvenience and loss of wages.

53. Some universities and colleges consider a person without permanent residency to be an out-of-state resident and hence charge him or her out-of-state tuition. Due to that Plaintiff Smitha Sankaran Nair could not proceed with her educational plans.

54. Due to delays in adjudication of Plaintiff's permanent residency application, Plaintiff's naturalization(to become a U.S. Citizen) have been delayed. Therefore Defendants' unreasonable delay in adjudicating AOS application deprived Plaintiffs for longer time of citizenship benefits like a right to vote and fully participate in our democracy; receive a United States passport; travel freely into and out of the United States; hold a job that is restricted to United States citizens; run for public office. Also, Plaintiffs have been and will continue to be unable to petition for his family members to immigrate to the United States as immediate relatives.

55. Plaintiffs rights to due process of law and equal protection under the Fifth Amendment to the United States Constitution have been and are being violated and will continue to be violated by Defendants' failures as described herein.

## VIII. GROUNDS FOR RELIEF

56. Defendants, despite having a duty to act within reasonable time, have failed to process and

adjudicate Plaintiff's application for permanent residency in a timely manner.

57. Defendant USCIS' duty to process and adjudicate Plaintiff's application "within a reasonable time" is a non-discretionary duty mandated by federal and judicial precedent..

58. Defendant USCIS' conduct in failing to process Plaintiff's application and adjudicate his case in a reasonably timely manner has caused unnecessary and injurious delays to Plaintiff, in violation of his rights.

59. Plaintiffs have exhausted all administrative remedies available and have determined that no adequate remedy exists.

**Count I.**
**Mandamus Action**
**28 U.S.C. § 1651, 28 USC § 1361, 8 C.F.R. §103.2(b)(19) and 8 C.F.R. §245.2(a)(5)(i)**

60. Plaintiffs incorporate all allegations made hereinabove that are pertinent to this Court.

61. Defendants in their response dated 21 December 2007, submitted the Canon Declaration from FBI. This declaration from the FBI clear demonstrates that Defendant FBI has a non-discretionary duty to complete all USCIS-requested NNCP namechecks within a reasonable time. There is no legal authority for the argument that FBI may choose not to complete a USCIS-requested NNCP name check. Plaintiff have demonstrated that their claim for relief from the FBI's inaction is clear and certain in that there is no legal authority for the FBI to justify it's inaction or to refuse to complete their USCIS-requested NNCP namecheck. The FBI's duty to complete plaintiff's NNCP name checks are purely ministerial in nature and so plainly prescribed by Executive Order that the Agency's duty is free from doubt. Plaintiff's exhaustion of remedies show that there is no other adequate remedy available to them.

62. Defendants are charged with the mandatory responsibility of administering and implementing the Immigration and Nationality Act.

63. Defendants bear sole responsibility for timely adjudication of AOS application and for orderly attendant procedures.

64. Defendants have failed to discharge their mandated duties.

65. As a result, Plaintiff has suffered and continues to suffer irreparable harm and damages entitling him to declaratory, injunctive and other relief.

66. Plaintiff has exhausted all possible administrative remedies and there exists no other adequate remedy.

67. Strong humanitarian factors favor granting of Mandamus relief.

**Count II.**
**Administrative Procedures Act**
**5 U.S.C. §§ 555, 701 et seq., 8 C.F.R. §103.2(b)(19) and 8 C.F.R. §245.2(a)(5)(i)**

68. By failing to render timely decision on Plaintiff's application, Defendants have violated the Administrative Procedures Act and this constitutes agency action that is arbitrary and capricious, and not in accordance with law. The Court of Appeals for DC Circuit noted that while "[t]here is no per se rule as to how long is too long to wait for agency action … a reasonable time for agency action is typically counted in weeks or months, not years". *In re American Rivers and Idaho Rivers*, 372 F.3d 413, 415 (D.C. Cir. 2004). The delay in this instant case is not judicially unmanageable as the USCIS failed to achieve a concrete goal – to issue a decision upon an application and violated the APA provision to do so within a reasonable time. 5 U.S.C. § 555(b). This Court has power under 5 U.S.C. § 706(1) to compel agency to perform "action unlawfully withheld or unreasonably delayed". The Defendants required by 8 C.F.R. § 103.2(b)(19) and by 8 C.F.R. § 245.2(a)(5)(i) to provide the Plaintiff a notice about the decision upon Plaintiff's application and they have failed to do so within a reasonable time.

**Count III.**
**Administrative Procedures Act**
**5 U.S.C. § 701 et seq. and 8 C.F.R. §103.2(b)(18)**

69. Plaintiffs incorporate all allegations made hereinabove that are pertinent to this Court.

70. The Code of Federal Regulations establishes conditions under which the adjudication of the Plaintiff's application can be withheld. The Plaintiff's application has been pending for over 2.5 years at the time of filing his complaint with the District Court. So, according to the requirements of 8 C.F.R. § 103.2(b)(18), his application should have been reviewed twice by the USCIS district director (at 1 and 1.5 year marks), once by the USCIS regional commissioner (at 2 year mark) and once by the Associate Commissioner, Examinations, with the concurrence of the Associate Commissioner, Enforcement. There is no evidence that these procedures have been followed. Therefore, the USCIS have violated the Federal regulations and "unlawfully withheld" adjudication of the legal alien's application. Furthermore, 8 C.F.R. § 103.2(b)(18) is not part of the Subchapter II of the Chapter 12 of the INA, therefore jurisdictional bar of the INA § 242(a)(2)(B)(ii) does not preclude review of the withholding of adjudication. Thus, this Court has the power to grant a relief under 5 U.S.C. § 706(1) and to compel the USCIS to perform agency action "unlawfully withheld".

71. Defendants have failed to discharge their mandated official duties.

72. As a result, Plaintiffs have suffered and continues to suffer irreparable harm and damages entitling him to declaratory, injunctive and other relief..

**Count IV.**
**Declaratory Judgment Act**

**28 U.S.C. § 2201, 8 C.F.R. §103.2(b)(18), 8 C.F.R. §103.2(b)(19) and 8 C.F.R. §245.2(a)(5)(i)**

73. Plaintiffs incorporate all allegations made hereinabove that are pertinent to this Court.

74. Plaintiffs contend that Defendants' actions and decisions relating to delays in I-485 adjudication and attendant procedures are unconstitutional, violate the INA and the applicable regulations, and are arbitrary and capricious and seek a declaration to that effect under 28 USC § 2201.

75. Defendants have failed to discharge their mandated official duties.

76. As a result, Plaintiffs have suffered and continues to suffer irreparable harm and damages entitling him to declaratory, injunctive and other relief.

**Count V.**
**Equal Access to Justice Act**
**5 U.S.C. § 504 and 28 U.S.C. § 2412**

77. Plaintiffs incorporate all allegations made hereinabove that are pertinent to this Court.

78. If prevailed, Plaintiffs will seek legal fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 5 U.S.C. § 504 and 28 U.S.C. § 2412.

## IX. PRAYER

79. WHEREFORE, in view of the arguments and authority noted herein, the Plaintiffs respectfully prays that the Court:

(a) Assume jurisdiction over this cause.

(b) Compel Defendants to conduct and complete all mandatory checks( including security checks/name checks) to conclusion within 30 days of this Court's order.

(c) Compel Department of State(DOS) to release visa numbers for plaintiffs upon completion of the mandatory checks.

(d) Compel Defendants Gonzalez and Chertoff to promptly adjudicate plaintiffs I-485 applications upon receipt of visa numbers from DOS.

(e) Grant such other and further relief as the Court deems proper under the circumstances; and

(f) Grant Plaintiffs the right to seek reasonable fees, which covers the filing fees and time cost the Plaintiff spent to prepare the case, pursuant to the Equal Access to Justice Act.

Respectfully Submitted,

Dated January 16, 2008

Rajesh Radhakrishnan

Rajesh Radhakrishnan
**PRO SE**
49 Ballou St
Cumberland RI 02864

Telephone ( 401)401-0591
Facsimile ( 401)-276-4408
Email: rip@3ds.com

Smitha Sankaran Nair

Smitha Sankaran Nair
**PRO SE**
49 Ballou St
Cumberland RI 02864