Orlov v. Howard
D.D.C.,2007.
Only the Westlaw citation is currently available.
United States District Court,District of Columbia.
Alexei ORLOV, Plaintiff,
v.
Phyllis A. HOWARD, District Director, U.S. Citizenship and Immigration Services, et al., Defendants.
**Civil Action No. 07-350 (JDB).**

Dec. 10, 2007.

**Background:** Alien sued Citizenship and Immigration Services (CIS), seeking to compel response to application seeking adjustment of status. CIS moved to dismiss, for lack of jurisdiction.

**Holdings:** The District Court, John D. Bates, J., held that:

(1) pace of processing application was discretionary decision removed from court's jurisdiction by Immigration and Nationality Act (INA);

(2) court did not have jurisdiction under Administrative Procedure Act (APA);

(3) absence of clear right to have decision made in particular time frame precluded claim under Mandamus Act.

Suit dismissed.

**[1] Aliens, Immigration, and Citizenship 24 ⟹ 385**

24 Aliens, Immigration, and Citizenship
24V Denial of Admission and Removal
24V(G) Judicial Review or Intervention
24k385 k. Jurisdiction and Venue. Most Cited Cases
Discretionary pace of processing application for adjustment of alien status was "decision or action" of Citizenship and Immigration Services (CIS), removed from federal court jurisdiction by Immigration and Nationality Act (INA). Immigration and Nationality Act, § 242(a)(2)(B), 8 U.S.C.A. § 1252(a)(2)(B).

**[2] Aliens, Immigration, and Citizenship 24 ⟹ 385**

24 Aliens, Immigration, and Citizenship
24V Denial of Admission and Removal
24V(G) Judicial Review or Intervention
24k385 k. Jurisdiction and Venue. Most Cited Cases
Administrative Procedure Act (APA) provision requiring that decision be made when there has been unreasonable delay and action is required to be taken, did not provide district court with jurisdiction to require Citizenship and Immigration Services (CIS) to rule on application for change of alien status; APA applied only where agency action was required, Congress had established no statutory deadlines for reaching decision and there were regulations allowing for withholding of adjudications for consecutive six month periods in some cases. 5 U.S.C.A. §§ 701(a)(1, 2), 702; Immigration and Nationality Act, § 242(a)(2)(B), 8 U.S.C.A. § 1252(a)(2)(B); 8 C.F.R. § 103.2(b)(18).

**[3] Mandamus 250 ⟹12**

250 Mandamus
250I Nature and Grounds in General
250k12 k. Nature of Acts to Be Commanded. Most Cited Cases
In order for conduct to be required, under Mandamus Act, act sought to be compelled must be a clear nondiscretionary duty. 28 U.S.C.A. § 1361.

**[4] Aliens, Immigration, and Citizenship 24 ⟹ 384**

24 Aliens, Immigration, and Citizenship
24V Denial of Admission and Removal
24V(G) Judicial Review or Intervention
24k384 k. In General. Most Cited Cases

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Attachment C

**Mandamus 250 ⚷73(1)**

250 Mandamus
250II Subjects and Purposes of Relief
250II(B) Acts and Proceedings of Public Officers and Boards and Municipalities
250k73 Specific Acts
250k73(1) k. In General. Most Cited Cases

Failure of alien to establish clear right to have decision made on his application for adjustment of alien status, within any particular time frame, precluded order under Mandamus Act that Citizenship and Immigration Services (CIS) act on application. 28 U.S.C.A. § 1361.

Thomas K. Ragland, Maggio & Kattar, P.C., Washington, DC, for Plaintiff.
Heather D. Graham-Oliver, U.S. Attorney's Office, Washington, DC, for Defendants.

### *MEMORANDUM OPINION*

JOHN D. BATES, District Judge.

***1** Plaintiff Alexei G. Orlov, a citizen of the Russian Federation, brings this action against Phyllis A. Howard, District Director of the Washington Field Office of the U.S. Citizenship and Immigration Services; Emilio T. Gonzalez, Director of the U.S. Citizenship and Immigration Services; Michael Chertoff, Secretary of the U.S. Department of Homeland Security; and Robert S. Mueller, Director of the Federal Bureau of Investigation. Plaintiff asks this Court to compel defendants to adjudicate without further delay his pending Form I-485 application for an adjustment of immigration status to become a lawful permanent resident. Currently before the Court is defendants' motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Upon careful consideration of the motion and the parties' memoranda, the applicable law, and the entire record, the Court will grant defendants' motion.

### BACKGROUND

Plaintiff came to the United States in 1993 with a J-1 student visa. Compl. ¶ 10. In 2001, he married a U.S. citizen, Dr. Kristin K. Froemling, and in 2003, plaintiff's wife filed with the Washington Field Office of the U.S. Citizenship and Immigration Services ("USCIS") a Petition for an Alien Relative (Form I-130) along with plaintiff's Application to Register Permanent Residence or Adjust Status (Form I-485). *Id.* USCIS issued a receipt notice for plaintiff's application dated March 27, 2003. *Id.*

According to the declaration of Susan P. Dibbins, Field Office Director of the Washington District Office of USCIS, after an alien applies for an adjustment of status, USCIS conducts a number of investigations to ensure that the alien is not a risk to national security and that the alien is eligible for the benefit sought. *See* Decl. of Susan P. Dibbins ¶ 1. In addition to record checks against the Department of Homeland Security ("DHS") immigration systems, "these background checks currently include (a) a Federal Bureau of Investigation ("FBI") fingerprint check for relevant criminal history records on the alien (e.g., arrests and convictions); (b) a check against the DHS-managed Interagency Border Inspection System ("IBIS") that contains records and 'watch list' information from more than twenty federal law enforcement and intelligence agencies; and (c) an FBI name check, which is run against FBI investigative databases containing information that is not necessarily revealed by the FBI's fingerprint check or IBIS." *Id.* According to Dibbins, "[n]o immigration benefit (e.g., adjustment of status, naturalization/U.S. citizenship) is granted unless and until all the above-required background checks have been completed and resolved." *Id.*

Fingerprint checks for plaintiff were submitted to the FBI on May 7, 2003, and USCIS received the results on May 8, 2003. *Id.* ¶ 9. Because these fingerprint checks "expire" every fifteen months, USCIS submitted additional fingerprint requests to the FBI on December 14, 2004, and on March 1, 2006, and received results for each submission. *Id.* At the time of the parties' filings, the third set of fingerprint checks was set to expire on June 1, 2007, so

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

plaintiff was issued a fingerprint appointment for August 14, 2007. *See* Supp. Decl. of Susan P. Dibbins ¶ 2.

*2 Regarding the IBIS checks, USCIS represents that such checks were initiated on plaintiff on July 20, 2005, and on May 1, 2007, and both checks have been concluded. *See* Decl. of Susan P. Dibbins ¶ 10. Thus, the main outstanding item relating to plaintiff's application is the FBI name check. USCIS submitted the original name check request to the FBI on May 5, 2003, and USCIS is still awaiting the results of this investigation. *Id.* ¶ 11.In Dibbins' declaration, she attests that "[u]pon receipt and analysis of the results of the pending security checks, USCIS will continue to review Mr. Orlov's adjustment application and complete its adjudication as expeditiously as possible under the circumstances."*Id.* ¶ 12.

Believing USCIS has unreasonably delayed the adjudication of his adjustment of status application, plaintiff filed with this Court a verified complaint for mandamus and a declaratory judgment, seeking to "compel the Defendants and those acting under them to take all appropriate action to adjudicate the Plaintiff's Application to Adjust Status to Lawful Permanent Resident (Form I-485) without further delay."Compl. ¶ 1. Defendants have now moved to dismiss this action for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Defendants argue that the Immigration and Nationality Act ("INA") "divests courts of jurisdiction over suits where, as here, the Plaintiff seeks judicial review of either an agency's discretionary decision or action, INA § 242(a)(2)(B)(ii), 8 U.S.C. § 1252(a)(2)(B)(ii)"; that "mandamus may not issue here because the Plaintiff lacks a clear right to an immediate adjudication of the application to adjust status"; and that "the APA precludes judicial review of an agency's discretionary decisions."Defs.' Mot. to Dismiss at 9-10. As discussed below, this Court agrees that it lacks jurisdiction over plaintiff's complaint.

## STANDARD OF REVIEW

"[I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader."*Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *see Leatherman v. Tarrant Cty. Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *Phillips v. Bureau of Prisons,* 591 F.2d 966, 968 (D.C.Cir.1979). Therefore, the factual allegations must be presumed true, and plaintiff must be given every favorable inference that may be drawn from the allegations of fact.*Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683;*Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1113 (D.C.Cir.2000). However, the Court need not accept as true "a legal conclusion couched as a factual allegation," nor inferences that are unsupported by the facts set out in the complaint. *Trudeau v. Fed. Trade Comm'n,* 456 F.3d 178, 193 (D.C.Cir.2006) (quoting *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

*3 Under Rule 12(b)(1), the party seeking to invoke the jurisdiction of a federal court-plaintiff here-bears the burden of establishing that the court has jurisdiction. *See U.S. Ecology, Inc. v. U.S. Dep't of Interior,* 231 F.3d 20, 24 (D.C.Cir.2000); see also *Grand Lodge of Fraternal Order of Police v. Ashcroft,* 185 F.Supp.2d 9, 13 (D.D.C.2001) (a court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority"); *Pitney Bowes, Inc. v. United States Postal Serv.,* 27 F.Supp.2d 15, 19 (D.D.C.1998)." '[P]laintiff's factual allegations in the complaint ... will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim."*Grand Lodge,* 185 F.Supp.2d at 13-14 (quoting 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350 (2d ed.1987)). Additionally, a court may consider material other than the allegations of the complaint in determining whether it has jurisdiction to hear the case, as long as it still accepts the factual allegations in the complaint as true. *See Jerome Stevens Pharm., Inc. v. FDA,* 402 F.3d 1249, 1253-54

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(D.C.Cir.2005); *EEOC v. St. Francis Xavier Parochial Sch.,* 117 F.3d 621, 624-25 n. 3 (D.C.Cir.1997); *Herbert v. Nat'l Acad. of Scis.,* 974 F.2d 192, 197 (D.C.Cir.1992).

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court is mindful that all that the Federal Rules of Civil Procedure require of a complaint is that it contain " 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"*Bell Atl. Corp. v. Twombly,* 550 U.S. ----, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *accord Erickson v. Pardus,* 551 U.S. ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam)."A Rule 12(b)(6) motion tests the legal sufficiency of a complaint."*Browning v. Clinton,* 292 F.3d 235, 242 (D.C.Cir.2002). Thus, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."*Bell Atl. Corp.,* 127 S.Ct. at 1965 (citations omitted).

## DISCUSSION

### I. Subject Matter Jurisdiction Under the Immigration and Nationality Act

[1] The Immigration and Nationality Act, 8 U.S.C. § 1252(a)(2)(B), provides that:

Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review-

(i) any judgment regarding the granting of relief under section ... 1255 [adjustment of status] ..., or

***4** (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security....FN1

As 8 U.S.C. § 1252(a)(2)(B)(i) makes clear, courts have no jurisdiction to review USCIS's ultimate decision to grant or deny an adjustment of status application, and as 8 U.S.C. § 1252(a)(2)(B)(ii) makes clear, "courts are precluded from reviewing *any* discretionary decision or action of USCIS."*Safadi v. Howard,* 466 F.Supp.2d 696, 698 (E.D.Va.2006) (citing *El-Khader v. Perryman,* 264 F.Supp.2d 645, 649 (N.D.Ill.2003) ("The meaning of the statute is clear and unambiguous-it precludes the courts from reviewing any discretionary decision of" USCIS.), *aff'd sub nom.El-Khader v. Monica,* 366 F.3d 562 (7th Cir.2004)). Courts have disagreed, however, as to whether 8 U.S.C. § 1252(a)(2)(B)(ii) encompasses the pace of processing adjustment applications.

Several courts have determined that federal courts lack jurisdiction to review delays in the adjustment process. *See, e.g., Dmitrenko v. Chertoff,* 2007 WL 1303009, at *1 (E.D.Va. Apr.30, 2007); *Grinberg v. Swacina,* 478 F.Supp.2d 1350, 1352 (S.D.Fla.2007); *Safadi,* 466 F.Supp.2d at 699-700;*Mustafa v. Pasquerell,* 2006 WL 488399, at *5 (W.D.Tex. Jan.10, 2006); *Zheng v. Reno,* 166 F.Supp.2d 875, 880-81 (S.D.N.Y.2001). But other courts have determined that 8 U.S.C. § 1252(a)(2)(B)(ii) does not preclude judicial review of such claims. *See, e.g., Abbasfar v. Chertoff,* 2007 WL 2409538, at *4 (N.D.Cal. Aug.21, 2007); *Song v. Klapakas,* 2007 WL 1101283, at *4 (E.D.Pa. Apr.12, 2007); *Duan v. Zamberry,* 2007 WL 626116, at *3 (W.D.Pa. Feb.23, 2007). In fact, two judges of this Court have differed as to the appropriate resolution of the issue. *Compare Tao Luo v. Keisler,* 2007 WL 3357241, at *2 (D.D.C. Nov.14, 2007) (no jurisdiction) *with Liu v. Novak,* 509 F.Supp.2d 1, 7 (D.D.C.2007) (jurisdiction). In the absence of binding authority from the D.C. Circuit, this Court agrees with the well-reasoned approach

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

of those courts that have determined that under 8 U.S.C. § 1252(a)(2)(B)(ii) Congress clearly intended to preclude judicial review in this situation.

The threshold inquiry in the analysis of this issue is whether the pace of processing adjustment applications falls within the discretion of USCIS. Significantly, the statutory framework does not set forth any timeframe in which an adjustment determination must be made. If Congress intended to constrain the USCIS to adjudicate an application within a specific amount of time, this Court believes it would have provided a time limitation as it did in 8 U.S.C. § 1447(b), which provides that a determination on a naturalization application must be made within 120 days after an examination is conducted. Instead, using broad language, 8 U.S.C. § 1255(a) merely provides that: "The status of an alien ...*may be adjusted* by the Attorney General, *in his discretion* and under such regulations *as he may prescribe,* to that of an alien lawfully admitted for permanent residence if" certain conditions are met.

***5** The plain meaning of the statute therefore is to grant USCIS the power and the discretion to promulgate regulations governing how (and when) adjustment decisions are made, but not to prescribe any time limitation whatsoever. "Pursuant to this discretionary authority, USCIS has promulgated regulations regarding the adjudication process, including the performance of background and security checks."*Safadi,* 466 F.Supp.2d at 698 (citing 8 C.F.R. pt. 25). USCIS has also promulgated regulations to withhold adjudication of applications pending completion of an investigation. Specifically, 8 C.F.R. § 103.2(b)(18) titled "Withholding adjudication" provides that:

A district director may authorize withholding adjudication of a visa petition or other application if the district director determines that an investigation has been undertaken involving a matter relating to eligibility or the exercise of discretion, where applicable, in connection with the application or petition, and that the disclosure of information to the applicant or petitioner in connection with the adjudication of the application or petition would prejudice the ongoing investigation. If an investigation has been undertaken and has not been completed within one year of its inception, the district director shall review the matter and determine whether adjudication of the petition or application should be held in abeyance for six months or until the investigation is completed, whichever comes sooner. If, after six months of the district director's determination, the investigation has not been completed, the matter shall be reviewed again by the district director and, if he/she concludes that more time is needed to complete the investigation, adjudication may be held in abeyance for up to another six months. If the investigation is not completed at the end of that time, the matter shall be referred to the regional commissioner, who may authorize that adjudication be held in abeyance for another six months. Thereafter, if the Associate Commissioner, Examinations, with the concurrence of the Associate Commissioner, Enforcement, determines it is necessary to continue to withhold adjudication pending completion of the investigation, he/she shall review that determination every six months.

*See also Zahani v. Neufeld,* 2006 WL 2246211, at *2 (M.D.Fla. June 26, 2006) (stating "it is clear that 8 C.F.R. § 103.2(b)(18) provides USCIS with discretion to withhold adjudication of the adjustment of status application"). Plainly, then, the regulations retain the discretionary regime contemplated by the statute.

In the absence of statutorily prescribed time limitations or statutory factors to guide USCIS in crafting regulations for the adjustment process, it is difficult to determine how the pace of processing an application could be anything other than discretionary. *See Mahaveer, Inc. v. Bushey,* 2006 WL 1716723, at *3 (D.D.C. June 19, 2006) (explaining that "by not providing any specific factors to guide the Attorney General in crafting such regulations [to govern the conditions of nonimmigrants' entry into the United States], it can fairly be said that Congress intended the Attorney General to have full discretion in his or her decision making"). This Court therefore finds that Congress clearly intended to leave the pace of processing adjustment applications within the discretion of USCIS, and that the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

applicable regulations do so as well.

***6** The question then remains as to whether the discretionary pace of processing an adjustment application is a "decision or action" under 8 U.S.C. § 1252(a)(2)(B)(ii); if so, judicial review is precluded. This Court agrees with Judge Ellis of the Eastern District of Virginia that the "plain meaning of the word 'action' answers this question" in the affirmative: "it means 'an act or series of acts.'"*Safadi,* 466 F.Supp.2d at 699 (quoting Black's Law Dictionary 28 (6th ed.1990)); *see also Escobar v. INS,* 935 F.2d 650, 652-53 (4th Cir.1991) ("The first step in the interpretive effort is to ascertain whether the language in issue has a plain and ordinary meaning, for there is a strong presumption 'that the legislative purpose is expressed by the ordinary meaning of the [statutory] words used.'") (quoting *Am. Tobacco Co. v. Patterson,* 456 U.S. 63, 68, 102 S.Ct. 1534, 71 L.Ed.2d 748 (1982)); *Inner City Broad. Corp. v. Sanders,* 733 F.2d 154, 158 (D.C.Cir.1984) ("To determine the meaning of statutory terms, a court may consider the common usage of the term. Indeed, unless contrary indications are present, a court can assume that Congress intended the common usage of the term to apply.") (citation omitted).

"Thus, under § 1252(a)(2)(B)(ii) the term 'action' encompasses *any* act or series of acts that is discretionary within the adjustment of status process,""including the completion of background and security checks and the pace at which the process proceeds."*Safadi,* 466 F.Supp.2d at 699.To hold otherwise-that is, to hold that "action" encompasses only a final decision-"would impermissibly render the word 'action' superfluous."*Id.* at 700.Therefore, because the adjustment process, including the pace of processing applications, falls within the discretion of USCIS, and because the pace of processing applications, including completing security checks, constitutes an "action" under the plain meaning of the word, judicial review of plaintiff's claim is precluded by § 1252(a)(2)(B)(ii).

Although the Court is sympathetic to plaintiff's frustration with the lengthy delay in the application process, the determination that § 1252(a)(2)(B)(ii) precludes judicial review over plaintiff's claim is further supported by the general rule that courts should refrain from interfering with matters of immigration and national security. The Supreme Court has clearly stated that such matters are best decided by the legislative and executive branches of government and that judicial discretion should be accorded such decisions. *See INS v. Aguirre-Aguirre,* 526 U.S. 415, 425, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999) (explaining that "judicial deference to the Executive Branch is especially appropriate in the immigration context where officials 'exercise especially sensitive political functions that implicate questions of foreign relations' ") (quoting *INS v. Abudu,* 485 U.S. 94, 110, 108 S.Ct. 904, 99 L.Ed.2d 90 (1988)); *Reno v. Flores,* 507 U.S. 292, 305, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) ("For reasons long recognized as valid, the responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government.") (quoting *Mathews v. Diaz,* 426 U.S. 67, 81, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976)).

***7** USCIS has established numerous background and security checks that must be completed before an adjustment application is adjudicated. Interference by this Court, therefore, could have national security implications. Hence, this Court declines to impose an arbitrary deadline on USCIS for the completion of such investigations. *See Safadi,* 466 F.Supp.2d at 701 ("Our national security requires that caution and thoroughness in [the adjudication of adjustment applications] not be sacrificed for the purpose of expediency."); *see also Wan Shih Hsieh v. Kiley,* 569 F.2d 1179, 1182 (2d Cir.1978) (noting that "the judicial creation of ... a duty [on the INS to expedite an investigation] would have the potential for mischievous interference with the functioning of already overburdened administrative agencies"); *Zheng v. INS,* 933 F.Supp. 338, 340 (S.D.N.Y.1996) (noting that "it is not this Court's role to revamp the procedural system used by the INS")."Furthermore, to grant relief in this case would set a dangerous precedent, sending a clear signal that more litigious applicants are

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

more likely to be moved to the top of the proverbial pile over other applicants that have waited even longer. Such a situation hardly optimizes resources, and serves only the individual at the detriment to the group."*Dmitrenko,* 2007 WL 1303009, at *1. This Court concludes, therefore, that judicial review of plaintiff's claim of delay in the adjustment process is precluded by § 1252(a)(2)(B)(ii).

**II. Subject Matter Jurisdiction Under the Administrative Procedures Act**

[2] Neither 28 U.S.C. § 1331 nor the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 555(b), 702, confers jurisdiction upon this Court to review plaintiff's claim. The APA itself does not confer jurisdiction on a district court to review the decision of an administrative agency. *Califano v. Sanders,* 430 U.S. 99, 107, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). Under 28 U.S.C. § 1331, however, a district court may have subject matter jurisdiction to review a claim that an agency violated the APA, if the claim is not "wholly insubstantial and frivolous." *Bell v. Hood,* 327 U.S. 678, 682-84, 66 S.Ct. 773, 90 L.Ed. 939 (1946). Pursuant to the APA, a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."5 U.S.C. § 702. Notably, the APA defines "agency action" to include a "failure to act." 5 U.S.C. § 551(13). Because the APA requires that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it,"5 U.S.C. § 555(b), a reviewing court sometimes has the power to "compel agency action unlawfully withheld or unreasonably delayed,"5 U.S.C. § 706(1). However, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take."Norton v. S. Utah Wilderness Alliance,* 542 U.S. 55, 64, 124 S.Ct. 2373, 159 L.Ed.2d 137 (2004) (emphasis in original).

***8** Here, there are no statutory guidelines compelling USCIS to adjudicate adjustment of status applications within a certain period of time. Thus, plaintiff plainly cannot assert that USCIS has failed to adjudicate his application within a time period in which it was *required* to do so. To the contrary, 8 C.F.R. § 103.2(b)(18) specifically authorizes USCIS to withhold adjudication of applications pending resolution of outstanding investigations. At this point in time, the required FBI name check of plaintiff remains pending.

Moreover, the APA does not apply where "statutes preclude judicial review" or "where agency action is committed to agency discretion by law."5 U.S.C. § 701(a)(1), (2)."The principle purpose of the APA limitations ...-and of the traditional limitations upon mandamus from which they were derived-is to protect agencies from undue judicial interference with their lawful discretion...."*Norton,* 542 U.S. at 66, 124 S.Ct. 2373.As described above, § 1252(a)(2)(B)(ii) precludes judicial review of plaintiff's claim, and the pace of processing applications clearly falls within the discretion of USCIS. Hence, the APA does not provide jurisdiction for this Court to review plaintiff's claim.[FN2]

**III. Subject Matter Jurisdiction Under the Mandamus Act**

[3] The Mandamus Act states that "the district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."28 U.S.C. § 1361. Pursuant to the Act, a court may grant mandamus relief if "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff."*In re Medicare Reimbursement Litig.,* 414 F.3d 7, 10 (D.C.Cir.2005) (citations omitted)."As an extraordinary remedy, mandamus generally will not issue" unless these requirements are met. *Ganem v. Heckler,* 746 F.2d 844, 852 (D.C.Cir.1984) (citing *Heckler v. Ringer,*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

466 U.S. 602, 616, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984)). Notably, the act sought to be compelled must be "a clear nondiscretionary duty." *Pittston Coal Group v. Sebben,* 488 U.S. 105, 121, 109 S.Ct. 414, 102 L.Ed.2d 408 (1988) (quoting *Heckler,* 466 U.S. at 616, 104 S.Ct. 2013);*see also Cox v. Sec'y of Labor,* 739 F.Supp. 28, 30 (D.D.C.1990) ("It is well-settled that a writ of mandamus is not available to compel discretionary acts.").

[4] Here, plaintiff has not demonstrated that he has a clear right to an immediate adjudication of his adjustment application. USCIS is actively processing plaintiff's application and has the discretion to complete all appropriate investigations before making a discretionary determination of whether to grant or deny relief to plaintiff. Plaintiff does not have a clear right to an immediate adjudication before all of the required background checks have been completed, nor is there a statutory or regulatory right to adjudication within a specified time. Defendants are acting on plaintiff's application and while the process has taken far longer than plaintiff finds desirable, defendants have no clear duty to increase the pace at which they are acting. Hence, because there is no clear right to the relief sought, and no plainly defined nondiscretionary duty on the part of defendants to immediately adjudicate plaintiff's application, plaintiff has failed to demonstrate that he is entitled to mandamus relief.

## CONCLUSION

***9** This Court lacks jurisdiction to review the ongoing pace at which plaintiff's application is being adjudicated. Moreover, judicial intervention into the adjustment of status process would improperly interfere with national security interests. Accordingly, defendants' motion to dismiss will be granted. A separate order will be issued herewith.

FN1. The subchapter referred to in 8 U.S.C. § 1252(a)(2)(B)(ii) is subchapter II of Chapter 12 within Title 8, which includes sections 1151 through 1378. Although the text of 8 U.S.C. § 1255 refers to the Attorney General, the discretionary authority to adjudicate adjustment applications and promulgate regulations has been transferred to the Secretary of Homeland Security and the United States Citizenship and Immigration Services. *See*6 U.S.C. §§ 271(b), 557. The Court will therefore refer to USCIS as the entity with discretionary authority.

FN2. Interestingly, other courts have used inconsistent interpretations of the word "action" to reach the conclusion that 8 U.S.C. § 1252(a)(2)(B)(ii) does not preclude jurisdiction under the APA. First, such courts determine that the pace of processing applications *does not* constitute an "action" under 8 U.S.C. § 1252(a)(2)(B)(ii) because delays are tantamount to inaction. *See, e.g.,Song,* 2007 WL 1101283, at *4 (finding "that Section § 1252(a)(2)(B)(ii) does not bar judicial review because USCIS has not made a decision or acted," even though USCIS was awaiting the completion of FBI name checks). Yet those courts do an about-face and determine that the pace of processing applications *does* constitute an "action" for purposes of the APA because that statute defines "agency action" to include the "failure to act," which encompasses the more narrow category of delays. *Id.* (citing 5 U.S.C. § 551(13)).

D.D.C.,2007.
Orlov v. Howard
--- F.Supp.2d ----, 2007 WL 4293490 (D.D.C.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.