C
Saleem v. Keisler
W.D.Wis.,2007.

United States District Court,W.D. Wisconsin.
Mohammed M. SALEEM, A# 79 339 657, Plaintiff,
v.
Peter D. KEISLER,[FN1] Michael Chertoff, Kay Leopold, Ruth Dorochoff, Emilio Gonzales, Defendants.

FN1. Pursuant to Fed.R.Civ.P. 25(d)(1), Peter D. Keisler is substituted for his predecessor, Alberto R. Gonzales, as Acting Attorney General of the United States.

**No. 06-C-712-C.**

Oct. 26, 2007.

**Background:** Alien, a citizen of India seeking to compel United States immigration authorities to adjudicate his application to adjust his status from nonimmigrant to permanent resident, moved for summary judgment.

**Holdings:** The District Court, Barbara B. Crabb, J., held that:

(1) court had jurisdiction, and

(2) five-year delay in adjudicating alien's application was an unreasonable delay of agency action.

Motion granted.

West Headnotes

**[1] Aliens, Immigration, and Citizenship 24 385**

24 Aliens, Immigration, and Citizenship
24V Denial of Admission and Removal
24V(G) Judicial Review or Intervention
24k385 k. Jurisdiction and Venue. Most Cited Cases

District court had jurisdiction to hear alien's action to compel immigration authorities to adjudicate his application to adjust his status; immigration authorities' failure to adjudicate alien's application was not a "decision or action" within the meaning of jurisdictional statute. Immigration and Nationality Act, § 242(a)(2)(B), 8 U.S.C.A. § 1252(a)(2)(B).

**[2] Aliens, Immigration, and Citizenship 24 385**

24 Aliens, Immigration, and Citizenship
24V Denial of Admission and Removal
24V(G) Judicial Review or Intervention
24k385 k. Jurisdiction and Venue. Most Cited Cases

Immigration and Nationality Act (INA) provision stripping courts of jurisdiction to review decisions committed, in a particular subchapter, to the discretion of immigration authorities did not bar judicial review in suit seeking to compel adjudication of alien's application for adjustment of status, where nothing in the relevant subchapter gave immigration authorities discretion to fail to adjudicate such applications. Immigration and Nationality Act, § 242(a)(2)(B), 8 U.S.C.A. § 1252(a)(2)(B).

**[3] Aliens, Immigration, and Citizenship 24 332**

24 Aliens, Immigration, and Citizenship
24V Denial of Admission and Removal
24V(E) Administrative Procedure
24k332 k. Time Limitations in General. Most Cited Cases

Immigration authorities' five-year delay in adjudicating alien's application for adjustment of status was an unreasonable delay of agency action, in violation of the Administrative Procedure Act (APA). 5 U.S.C.A. § 706(1).

***1049** Erik Peterson, U.S. Attorney, W.D. of Wisconsin, Madison, WI, for Defendants.

OPINION AND ORDER

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Attachment E

BARBARA B. CRABB, District Judge.

The question in this case is whether a remedy in federal district court exists for the failure of immigration officials to decide a noncitizen's application for adjustment of status from nonimmigrant to permanent resident. Plaintiff Mohammed Saleem, an Indian citizen seeking permanent residence in the United States, contends that jurisdiction for his claim is present under 28 U.S.C. § 1331 and that the government can be compelled to act under either the Mandamus Act, 28 U.S.C. § 1361, or the Administrative Procedures Act, 5 U.S.C. §§ 701-706. Defendants, who are immigration officials, say that under 8 U.S.C. § 1252(a)(2)(B), this court lacks jurisdiction to hear the case and that plaintiff has no right to receive a decision "within any particular time frame."

The case is before the court on plaintiff's motion for summary judgment. Because I conclude that subject matter jurisdiction exists and that defendants have violated the APA by failing to adjudicate plaintiff's application after almost five years have passed, I will grant plaintiff's motion.

From the parties' proposed findings of fact, I find the following facts to be undisputed.

## UNDISPUTED FACTS

### A. *Plaintiff's Application*

Plaintiff Mohammed Saleem is a citizen of India. Defendant Peter Keisler is Acting Attorney General of the United States; defendant Michael Chertoff is Secretary of the Department of Homeland Security; defendant Emilio Gonzales is Director of the United States Citizenship and Immigration Services; defendant Ruth Dorochoff is the district director for Immigration Services in Chicago; defendant Kay Leopold is the officer-in-charge for Immigration Services in Milwaukee.

In 1999, plaintiff applied for and received an "H 1-B" visa, which is a nonimmigrant visa that authorizes a temporary stay in the United States "to perform services ... in a specialty occupation." 8 U.S.C. § 1101(15)(h)(i)(B). In November 2002, after plaintiff received approval for his I-140 petition ("Immigrant Petition for Alien Worker"), he applied for status as a permanent resident under 8 U.S.C. § 1255, using Form I-485.

Plaintiff has not received a decision on his application. In June 2006, December 2006 and April 2007, plaintiff made inquiries at the United States Citizenship and Immigration Services regarding the status of his application. (Authority to grant applications is shared by the Attorney General, 8 U.S.C. § 1255(a), and the Department of Homeland Security, 6 U.S.C. § 271(b)(5), which includes the United States Citizenship and Immigration and Services.) Each time plaintiff made an inquiry, he was told either nothing at all or that his application had not yet been decided.

### B. *Application Approval Process*

When the United States Citizenship and Immigration Services receives an alien's ***1050** application for an adjustment of status, the agency conducts mandatory security background checks. The checks include an FBI name check, an FBI fingerprint check and a check of the Interagency Border Inspection System, which contains information collected from various federal law enforcement and intelligence agencies. Under the policy of the immigration agency, all of these checks must be completed before the agency decides whether to grant or deny an application for adjustment of status.

## OPINION

### A. *Subject Matter Jurisdiction*

Plaintiff's motion for summary judgment raises several questions, but each is related to defendants' discretion in deciding applications for an adjustment of status. The threshold question is jurisdictional. Defendants concede that plaintiff's claim raises a federal question under 28 U.S.C. § 1331,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

but they argue that 8 U.S.C. § 1252(a)(2)(B) strips courts of jurisdiction with respect to any matter relating to an adjustment of status under 8 U.S.C. § 1255.

The relevant portion of 8 U.S.C. § 1252(a)(2)(B) reads as follows: "Notwithstanding any other provision of law ... no court shall have jurisdiction to review ... any other *decision or action* of the Attorney General or the Secretary of Homeland Security the authority for which is *specified under this subchapter* to be *in the discretion* of the Attorney General or the Secretary of Homeland Security."(emphasis added). Thus, before I may dismiss this case for lack of jurisdiction under § 1252, I must conclude that: (1) plaintiff is challenging a "decision or action" of defendants; *and* (2) such an action has been "specified under this subchapter to be in the discretion" of defendants.

Before resolving these questions, I acknowledge that I am not writing on a blank slate. Although it appears that no appellate court has yet considered a claim like plaintiff's, numerous district courts have done so over the last few years. Defendants leave the impression in their brief that the great weight of authority favors their position, Dfts.' Br., dkt. # 12, at 13, but this is a little disingenuous. Although it is true that a significant number of courts have concluded that jurisdiction does not exist to consider a claim involving a failure to adjudicate an application for an adjustment of status, at least as many courts have come to the opposite conclusion. *Compare Chehab v. Chertoff,* No. 07-11068, 2007 WL 2372356 (E.D.Mich. Aug. 17, 2007) (concluding that court lacked jurisdiction to hear case to compel immigration officers to decide application for adjustment in status); *Qiu v. Chertoff,* 486 F.Supp.2d 412 (D.N.J.2007) (same); *Sharif v. Chertoff,* 497 F.Supp.2d 928 (N.D.Ill.2007); *Li v. Chertoff,* 482 F.Supp.2d 1172 (S.D.Cal.2007); *Rogatch v. Chertoff,* No. CA 06-541ML, 2007 WL 1160358 (D.R.I. Apr. 17, 2007) (same); *Mustafa v. Pasquerell,* No. Civ.SA05CA-658-XR, 2006 WL 488399 (W.D.Tex. Jan. 10, 2006) (same); *Zhang v. United States Citizenship & Immigration Service,* No. 05 Civ. 4086(RJH)(AJP), 2005 WL 3046440 (S.D.N.Y. Nov. 8, 2005) (same); *Zheng v. Reno,* 166 F.Supp.2d 875 (S.D.N.Y.2001) (same) *with Linville v. Barrows,* 489 F.Supp.2d 1278 (W.D.Okla.2007) (concluding that § 1252 does not bar judicial review of a failure to adjudicate application for adjustment of status); *Xu v. Chertoff,* No. 07-366(DMC), 2007 WL 2033834 (D.N.J. July 11, 2007) (same); *Yan Yang v. Gonzales,* No. 2:07-cv-050, 2007 WL 1726501 (S.D.Ohio June 11, 2007) (same); *Song v. Klapakas,* No. 06-05589, 2007 WL 1101283 (E.D.Pa. Apr. 12, 2007) (same); ***1051***Elmalky v. Upchurch,* Civil Action No. 3:06-CV-2359-B, 2007 WL 944330 (N.D.Tex. Mar. 28, 2007) (same); *Haidari v. Frazier,* Civil No. 06-3215 (DWF/AJB), 2006 WL 3544922 (D.Minn. Dec. 8, 2006) (same); *Kim v. Ashcroft,* 340 F.Supp.2d 384 (S.D.N.Y.2004) (same); *Batista v. INS,* No. 99 Civ. 2847 MBM, 2000 WL 204535 (S.D.N.Y. Feb. 22, 2000) (same). *See also Zeng v. Upchurch,* Civil No. 2:06-cv-112, 2007 WL 2694253, *2 (D.N.D. Sep. 11, 2007) (noting that "[d]istrict courts are more or less divided on this matter").

These cases represent only a small sampling of the total. In fact, barely a day has gone by in recent weeks without a new decision weighing in on what has become a national judicial debate. Having reviewed a great many of these decisions, I conclude that those favoring jurisdiction have the better of the argument.

1. *Decision or action*

I begin with the question whether plaintiff is challenging a "decision or action" of defendants. Of course, a "decision" means that something must be decided. Although an "action" has a broader meaning, it too suggests that some conclusion has been made about the appropriate course to take. *Dong v. Chertoff,* No. C 07-0266 SBA, 513 F.Supp.2d 1158 (N.D.Cal.2007) ("The phrase 'decision or action' connotes some affirmative conduct by the Attorney General."). Because plaintiff's claim is premised on defendants' *refusal* to make a "decision" or to take

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

"action" on his application, I must conclude that § 1252(a)(2)(B) is not implicated in this case.

[1] Defendants' view that plaintiff is challenging an "action" contradicts not only common sense, but also the court of appeals' interpretation of § 1252(a)(2)(B), which makes it clear that the statute does not bar review of a refusal to adjudicate. In *Iddir v. INS,* 301 F.3d 492 (7th Cir.2002), a case that defendants do not acknowledge, the plaintiffs sought a writ of mandamus to compel the INS to adjudicate an application for an adjustment of status under the Diversity Visa Lottery Program. In that case the Solicitor General conceded that the court had jurisdiction "to hear immigration cases in which the INS wholly fails to adjudicate an applicant's status and either grant or deny relief." *Id.* at 496. The court agreed, holding that § 1252(a)(2)(B)"only bars review of actual discretionary decisions to grant or deny relief under the enumerated sections, including section 1255." *Id.* at 497.

In coming to this conclusion the court noted the important difference "between discretionary action or decision, such as a denial of relief or decision to defer, and complete inaction and failure to make any decision." *Id.* In addition, it cited *Nyaga v. Ashcroft,* 186 F.Supp.2d 1244, 1250-53 (N.D.Ga.2002), for the proposition that "seeking remediation of lack of action ... is not barred" by § 1252(a)(2)(B). *See also Patel v. Reno,* 134 F.3d 929, 931-32 (9th Cir.1997) ("when the suit challenges the authority of the consul to take or fail to take an action as opposed to a decision taken within the consul's discretion, jurisdiction exists").

A conclusion that district courts have jurisdiction to remedy a refusal to adjudicate is not contrary to cases cited by defendants and other district courts, in which the Supreme Court has stated, as defendants put it, "that judicial review in immigration matters is narrowly circumscribed." *E.g., Mathews v. Diaz,* 426 U.S. 67, 81, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976) ( "Since decisions in these matters may implicate our relations with foreign powers, and since a wide variety of classifications must be defined in the light of changing political and economic circumstances, such decisions are frequently of a character ***1052** more appropriate to either the Legislature or the Executive than to the Judiciary."), cited in Dfts.' Br., dkt. # 12, at 13 n. 3; *Kleindienst v. Mandel,* 408 U.S. 753, 766, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972) ("The power of congress to exclude aliens altogether from the United States, or to prescribe the terms and conditions upon which they may come to this country, and to have its declared policy in that regard enforced exclusively through executive officers, without judicial intervention, is settled by our previous adjudications."), cited in*Zhang v. Secretary of Homeland Security,* No. 1:07CV224, 2007 WL 2572179, *3 (N.D.Ohio Aug. 31, 2007). These are cases about judicial deference to policy judgments made by the executive branch. In this case, defendants have made no decision to which I can defer.

Most courts concluding that § 1252 bars review of a failure to adjudicate an application simply have ignored the question whether the plaintiff is challenging a "decision or action" of the defendants, but instead jump ahead to the question whether a refusal to act is "discretionary." However, defendants cite one case, *Safadi v. Howard,* 466 F.Supp.2d 696, 699 (E.D.Va.2006), in which the court concluded that an "action" under § 1252(a)(2)(B) encompasses not just final decisions but "any act or series of acts that are discretionary within the adjustment of status process."

This argument in *Safadi* is a red herring because an exercise of jurisdiction over plaintiff's claim is not contingent on whether an "action" is a final decision or includes interim actions taken along the way. The logic of *Safadi* would have force if plaintiff were challenging defendants' decision to conduct certain background checks or the actions taken in furtherance of that decision. *E.g., Ali v. Gonzales,* Nos. 06-3240, 06-3879, 502 F.3d 659, 661 (7th Cir.2007) (concluding that § 1252(a)(2)(B) bars review of "interim orders entered along the road to an unreviewable final order"). But plaintiff is not challenging any interim action of defendants, only their failure to act. Thus,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

no matter how narrowly a court defines "action," it would require an Orwellian twisting of the word to conclude that it means a failure to adjudicate. *Liu v. Novak,* Civil Action No. 07-263(EGS), 509 F.Supp.2d 1, 4-8 (D.D.C.2007) ("the argument in *Safad[i]* essentially finds that inaction is within the 'plain meaning' of action"). A second case on which defendants rely is *Grinberg v. Swacina,* 478 F.Supp.2d 1350 (S.D.Fla.2007), which in turn relied heavily on *Safadi.* However, in *Grinberg* the court relied on a different rationale that "if Congress intended to confer jurisdiction on a federal court to review the pace of adjudication for adjustment of status applications, it would have expressly provided for a time limitation in 8 U.S.C. § 1255(a)." *Id.* at 1352. *See also Li v. Gonzales,* Civil Action No. 06-5911(SRC), 2007 WL 1303000, *4 (D.N.J. May 3, 2007) (adopting same reasoning).

In addition to conflating the jurisdiction question with the merits of the case, the reasoning in *Grinberg* reverses the ordinary presumption regarding review of administrative decisions. The question is not whether evidence exists to show that Congress intended to *allow* review; rather the question is whether there is "clear and convincing" evidence that Congress intended to *preclude* review. *Iddir,* 301 F.3d at 496. In other words, the strong presumption is that jurisdiction exists under § 1331 unless Congress has made it clear that it has carved out an exception.

When this presumption is considered along with the "general presumption in favor of judicial review of administrative acts,"*id.,* and the requirement to "resolve ambiguities in favor of the aliens and find ***1053** jurisdiction to hear the grievance,"*id.* at 497, it becomes clear that it is inappropriate to infer a congressional intent to remove jurisdiction simply from the absence of a statutory deadline for making a decision. Although congressional silence on this point may inform the resolution of the *merits* of this case (whether defendants have waited too long to decide plaintiff's application), the court in *Grinberg* cited no other situations in which Congress's failure to impose a deadline was construed as a withdrawal of *jurisdiction* that would otherwise be present. *Liu,* at 5-6 (concluding that presumptions in favor of jurisdiction required court to consider merits of plaintiff's claim that defendants failed to adjudicate application for change in status).

Most of the courts concluding that they lacked jurisdiction to hear cases like plaintiff's relied solely on the reasoning of *Safadi* or *Grinberg,* including *Bugulu v. Gonzalez,* 490 F.Supp.2d 965 (W.D.Wis.2007) (Shabaz, J.). Because I do not find the reasoning of *Safadi* or *Grinberg* persuasive, I must respectfully disagree with the decision reached by the court in *Bugulu* as well.

2. *Specified under this subchapter to be discretionary*

My conclusion that a failure to adjudicate an application is not a "decision or action" within the meaning of § 1252(a)(2)(B)(ii) is sufficient to reject defendants' argument that this court lacks jurisdiction to hear this case. However, even if I were to conclude that plaintiff is seeking review of a "decision or action," I could not dismiss this case under § 1252(a)(2)(B) unless I concluded as well that the "action" challenged by plaintiff has been "specified under this subchapter to be in the discretion" of defendants.

The parties agree that "this subchapter" includes 8 U.S.C. § 1255, which makes adjustment of status determinations discretionary. 8 U.S.C.A. § 1255(a) ("The status of an alien ... may be adjusted by the Attorney General, in his discretion ..."). *See also Iddir,* 301 F.3d at 497 (§ 1252(a)(2)(B)"bars review of actual discretionary decisions to grant or deny relief under the enumerated sections, including section 1255"). But, as discussed above, the question raised by plaintiff is not whether defendants have made an appropriate decision regarding his application for an adjustment of status but rather whether they are required to make a decision at all. Because § 1255(a) is silent on this question, that statute does not provide a basis for removing jurisdiction under § 1252(a)(2)(B). *Singh v. Still,* 470 F.Supp.2d 1064, 1067 (N.D.Cal.2007) ("there is a

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

difference between the ... discretion over how to resolve an application and the ... discretion over whether [the agency] resolves an application"); *Haidari,* 2006 WL 3544922, at *4 (distinguishing the discretionary decision of whether to grant or deny an adjustment application from the mandatory duty to make any decision).

Somewhat surprisingly, a number of courts have concluded that defendants *do* have discretion whether to adjudicate an application for an adjustment in status. *Li,* 2007 WL 1303000, at*5; *Elzerw v. Mueller,* Civil Action No. 07-00166, 2007 WL 1221195, *2 (E.D.Pa. Apr. 23, 2007); *Safadi,* 466 F.Supp.2d at 699. In coming to this conclusion, they observe correctly that neither a statute nor a federal regulation contains an express command to do so. I conclude that this is another red herring. For the purpose of determining whether § 1252 bars judicial review, the question is not whether a statute expressly imposes a duty on defendants to make a decision but whether a statute expressly ***1054** "specifie[s]" defendants' authority to exercise their discretion on a particular matter. *Cao v. Upchurch,* 496 F.Supp.2d 569, 573 (E.D.Pa.2007) ("While 8 U.S.C. § 1255(a) specifically places the decision of whether to adjust status in the discretion of the Attorney General, it says nothing about the pace of such a decision, and certainly does not confer on the Attorney General discretion to let such a petition languish indefinitely.").

[2] In any event, I agree with those courts that have concluded that a nondiscretionary duty may exist even in the absence of precise language directing defendants to adjudicate an application for an adjustment of status within a particular time period. *E.g., Hu v. Reno,* No. 3-99-CV-1136-BD, 2000 WL 425174, *3 (N.D.Tex. Apr. 18, 2000); *Yu v. Brown,* 36 F.Supp.2d 922, 931 (D.N.M.1999). For one thing, although the statutes do not contain an explicit command, the regulations are drafted on the assumption that defendants *will* decide each application. 8 C.F.R. § 245.6 ("Each applicant for adjustment of status under this part shall be interviewed by an immigration officer."); 8 C.F.R. § 245.2 ("the applicant shall be notified of the decision of the director, and, if the application is denied, the reasons for the denial"); *id.*("the director shall record the alien's admission for lawful permanent residence"). *See also*8 U.S.C. § 1103 ("The Attorney General shall be charged with the administration and enforcement of this chapter and all other laws relating to the immigration and naturalization of aliens.") In similar contexts, the court of appeals has inferred a nondiscretionary duty to adjudicate an application despite the absence of statutory language including a specific command to do so. *Iddir,* 301 F.3d at 499-500.

More generally, and more important, the duty of defendants to decide applications for a change in status may be inferred from Congress's statutory authorization to noncitizens to submit an application. As the court of appeals recognized in *Subhan v. Ashcroft,* 383 F.3d 591, 595 (7th Cir.2004), it is "unlikely that Congress, intending, as it clearly did, to entitle ... aliens to seek an adjustment of status ... at the same time also intended section 1252(a)(2)(B)(ii) to place beyond judicial review decisions by the immigration authorities that nullified the statute." In other words, a right to request relief inherently implies a corresponding obligation to respond. To say otherwise not only encourages irresponsible governance, but allows one branch of government simply to ignore the law, calling into question the rule of law itself. *Duan v. Zamberry,* Civil Action No. 06-1351, 2007 WL 626116, *3 (W.D.Pa. Feb. 23, 2007) (noting "potential for abuse" and "purposeful disregard" for law on immigration matters if § 1255(a) were interpreted as giving defendants discretion whether to decide applications).

Perhaps sensing the troubling implications of an argument that they have carte blanche to ignore applications authorized by statute, even defendants concede that they have a statutory obligation to adjudicate adjustment of status applications. Dfts.' Br., dkt. # 13, at 3. Once defendants make this concession, they have backed themselves into a corner. Although they argue that they have discretion over the "pace" of the decision making process (and, therefore, that § 1252(a)(2)(B) deprives this court

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

of the power to review that "pace"), that argument is flatly inconsistent with their concession.

If defendants have unreviewable discretion to decide an application whenever they want, the authority for this comes from § 1255(a), which, as noted above, states that "[t]he status of an alien ...***1055** may be adjusted by the Attorney General, in his discretion." Although a colorable argument may exist that § 1255 grants discretion with respect to *any* matter involving an application for an adjustment in status, there is simply no plausible reading of the provision supporting a view that the statute does *not* grant discretion regarding whether an application must be decided but *does* grant discretion regarding whether there are time limits for making that decision. Tellingly, defendants point to no textual basis for making such a distinction and I do not see one.

Defendants' position is inconsistent on a more practical level as well. If defendants have an obligation to decide applications but have unfettered discretion to put off deciding an application for as long as they want, how could the duty to decide ever be judicially enforced? Under defendants' view, the answer to that question would be never, except perhaps if they expressly refused to make a decision. So long as defendants say that they are still reviewing the application (or even if they say nothing at all), an applicant must continue to wait indefinitely, no matter how long the delay has been. Such discretion would strip defendants' duty of any meaning: "The duty to act is no duty at all if the deadline is eternity." *Tang v. Chertoff,* 493 F.Supp.2d 148, 149 (D.Mass.2007). *See also Lopez v. Secretary, Dept. of Homeland Security,* No. 6:07-cv-735-Orl-31KRS, 2007 WL 2728353, *2 (M.D.Fla. Sept. 17, 2007) ("If the Defendant's argument is followed to its logical conclusion, the Attorney General would have discretion to simply ignore a status application and delay its resolution indefinitely. Surely, the Attorney General does not have such discretion.")

A number of courts have concluded that 8 C.F.R. § 103.2(b)(18) deprives courts of jurisdiction to review a failure to adjudicate and have criticized other courts for failing to consider the regulation's importance. *E.g., Qiu,* 486 F.Supp.2d at 418-19 ("The Court finds it instructive that none of the cases holding that a non-discretionary duty exists to process I-485 applications have discussed the implications of § 103.2(b)(18)."); *see also Emamian v. United States Dept. of Homeland Security,* No. SA-06-CA-0789-RF, 2007 WL 3047213, *2 (W.D.Tex. Oct. 11, 2007); *Tao v. Mueller,* Civil No. 07-804(RBK), 2007 WL 2459423, *3 (D.N.J. Aug. 23, 2007); *Li,* 2007 WL 1303000, at *5. Although defendants do not rely on § 103.2(b)(18), because courts have an independent obligation to determine the existence of subject matter jurisdiction, I will consider the effect of the regulation on this court's authority to hear this case.

Under the relevant provision:

A district director may authorize withholding adjudication of a visa petition or other application if the district director determines that an investigation has been undertaken involving a matter relating to eligibility or the exercise of discretion, where applicable, in connection with the application or petition, and that the disclosure of information to the applicant or petitioner in connection with the adjudication of the application or petition would prejudice the ongoing investigation. If an investigation has been undertaken and has not been completed within one year of its inception, the district director shall review the matter and determine whether adjudication of the petition or application should be held in abeyance for six months or until the investigation is completed, whichever comes sooner. If, after six months of the district director's determination, the investigation has not been completed, the matter shall be reviewed ***1056** again by the district director and, if he/she concludes that more time is needed to complete the investigation, adjudication may be held in abeyance for up to another six months. If the investigation is not completed at the end of that time, the matter shall be referred to the regional commissioner, who may authorize that adjudication be held in abeyance for another six months. Thereafter, if the Associate Commissioner, Examinations, with the concurrence of the Asso-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ciate Commissioner, Enforcement, determines it is necessary to continue to withhold adjudication pending completion of the investigation, he/she shall review that determination every six months.

8 C.F.R. § 103.2(b)(18). Although this regulation grants defendants discretion in the sense that it provides authority to withhold adjudication under a particular set of circumstances, it does not deprive this court of jurisdiction.

First, it must be remembered that § 1252(a)(2)(B) does not bar review of *any* discretionary act by defendants, but only those discretionary acts the "authority for which is specified under this subchapter." Obviously, because § 103.2(b)(18) is a regulation and not a statute, any discretion granted by the regulation is not "specified under this subchapter" for the purpose of acting as a bar to judicial review. *Soltane v. United States Dept. of Justice,* 381 F.3d 143, 146 (3d Cir.2004) ("the language of the statute in question must provide the discretionary authority before the bar [under § 1252(a)(2)(B) ] can have any effect"); *Zafar v. United States Attorney General,* 426 F.3d 1330, 1335 (11th Cir.2005) (holding that if acts "are not statutorily-proscribed," they are not "discretionary acts" within meaning of § 1252(a)(2)(B) and are subject to judicial review).

Second, courts relying on § 103.2(b)(18) have assumed without explanation that the regulation would bar review even if the defendants do not claim to have followed the procedures under the regulation. I agree with those courts that have concluded that whatever discretion § 103.2(b)(18) grants, the regulation could not preclude judicial review unless the defendants actually exercised their discretion pursuant to the regulation. *Tang v. Chertoff,* Civil Action No. 07-203-JBC, 2007 WL 2462187, *4 (E.D.Ky. Aug. 29, 2007) ("[W]hile the regulation gives authority to withhold adjudication on an adjustment of status, this must be done consistent with the terms of the regulation."); *Lin v. Chertoff,* No. CIV-07-382-F, 2007 WL 2301118, at *2 (W.D.Okla. Aug. 8, 2007) (refusing to dismiss case under § 103.2(b)(18) because "defendants have not submitted any evidence that they exercise any discretion pursuant to 8 C.F.R. § 103.2(b)(18)").

This conclusion is consistent with *Subhan,* 383 F.3d at 595, in which the Court of Appeals for the Seventh Circuit held that § 1252(a)(2)(B) did not extend to a decision that did not involve an exercise of discretion. In *Subhan,* the plaintiff attempted to appeal an immigration judge's denial of a motion for a continuance, but the government invoked § 1252(a)(2)(B) as barring review. Although the court of appeals assumed that a denial of a motion for a continuance would ordinarily be a discretionary act covered by § 1252(a)(2)(B), it held that the denial was not discretionary in the case before it because the immigration judge had failed to give a reason for his decision. The court explained: "When a request for an adjustment of status is denied there is no judicial review because the denial is one of the discretionary orders expressly made nonreviewable by section 1252(a)(2)(B). But no discretion was exercised here to deny a requested adjustment of status; instead, the denial of the ***1057** continuance prevented the alien from obtaining action on his request." *Id.* at 594.

The principle articulated in *Subhan* is similar to that discussed above with respect to whether a failure to act is an "action" under § 1252(a)(2)(B). The purpose of § 1252(a)(2)(B) is to "shield from judicial review judgments regarding the propriety of adjusting an alien's status,"*Subhan,* 383 F.3d at 594, not to permit a refusal to act at all. In other words, defendants may not obtain the benefit of a statute that protects "discretionary" acts when they have not exercised any discretion. Because defendants do not suggest that they followed the procedures outlined in § 103.2(b)(18), that regulation cannot provide a basis for dismissing this case for a lack of jurisdiction.

### B. *Right of Action*

Having concluded that this court has jurisdiction to hear the case, I turn to the merits. Like most other parties seeking an adjudication of an applica-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

tion for an adjustment of status, plaintiff seeks to compel action under the Administrative Procedure Act and the Mandamus Act. Under the APA, courts are authorized to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); *see also*5 U.S.C. § 555(b) ("within a reasonable time, each agency shall proceed to conclude a matter presented to it"). Under the Mandamus Act, relief will be granted if the plaintiff can demonstrate (1) a clear right to the relief sought; (2) the defendant has a duty to do the act in question; and (3) no other adequate remedy is available. *Iddir,* 301 F.3d at 499. Because I conclude that plaintiff is entitled to relief under the APA, it is unnecessary to decide whether plaintiff is entitled to relief under § 1361. *Valona v. United States Parole Commission,* 165 F.3d 508, 510 (7th Cir.1998) ("APA ... authorizes district courts to 'compel agency action unlawfully withheld or unreasonably delayed' without the need of a separate action seeking mandamus.").

Defendants begin their argument about the APA by saying that it does not provide plaintiff with a right of action. They rely on 5 U.S.C. § 701(a), which says that the requirements of the APA do not apply if "agency action is committed to agency discretion by law." Because I have already concluded that defendants' duty to decide applications for an adjustment of status is not discretionary, I will limit my discussion of this question to arguments unique to the APA.

Defendants' primary argument is that the "pace" of adjudication is committed to their discretion within the meaning of § 701 because there is no statutory deadline for making a decision. In support, defendants cite *Heckler v. Chaney,* 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), but this is quite a stretch. *Heckler* did not hold that agencies cannot be compelled to act in the absence of an express deadline. Rather, in *Heckler* the Court held only that a matter is "committed to agency discretion" under § 701"in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply." *Id.* at 830, 105 S.Ct. 1649 (internal citations and quotations omitted). The facts in *Heckler* involved an agency's refusal to enforce an asserted violation of the law, a decision that is "presumptively unreviewable." *Id.* at 832, 105 S.Ct. 1649. The Court concluded that the plaintiffs could not rebut this presumption because the relevant statute provided no guidelines for determining when an enforcement action should be initiated. *Id.* at 833-34, 105 S.Ct. 1649.

In this case, the APA itself provides the appropriate standard of review ("unreasonable delay"), so *Heckler* is not instructive. *Yu,* 36 F.Supp.2d at 931-32 ("the APA ***1058** itself imposes on them the duty to complete action on Plaintiffs' application within a reasonable time"). Defendants cite no authority for the proposition that a reasonableness standard is so broad as to provide no guidance.

*Norton v. Southern Utah Wilderness Alliance,* 542 U.S. 55, 124 S.Ct. 2373, 159 L.Ed.2d 137 (2004), and *Brock v. Pierce County,* 476 U.S. 253, 106 S.Ct. 1834, 90 L.Ed.2d 248 (1986), are two other cases on which defendants rely for the proposition that there can be no unreasonable delay unless the agency fails to meet a specific statutory deadline. These are a little closer to the mark, but not by much. The holding in both cases was unrelated to the meaning of "unreasonable delay" under § 706. The question in *Norton* was whether the agency had failed to take a "discrete agency action" required by statute; in *Brock,* the Court considered whether an agency lost authority to act after missing a statutory deadline. In both cases the Court made statements in dicta that § 706 would authorize courts to compel an agency to comply with a statutory deadline, *Norton,* 542 U.S. at 65, 124 S.Ct. 2373; *Brock,* 476 U.S. at 260 n. 7, 106 S.Ct. 1834, but the Court did not suggest in either case that § 706 was limited to compelling action under those circumstances. *Alkeylani v. Dept. of Homeland Security,* 514 F.Supp.2d 258, 264 (D.Conn.2007) (rejecting argument that *Norton* required denial of relief in case challenging failure to adjudicate application for adjustment in status).

Although it does not appear that the Court of Appeals for the Seventh Circuit has defined

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

"unreasonable delay" under § 706(1), other courts have held that an unreasonable delay may be found even if the "agency has no concrete deadline establishing a date by which it must act." *Forest Guardians v. Babbitt,* 164 F.3d 1261, 1271 (10th Cir.1998); *see also Frey v. EPA,* 403 F.3d 828, 834 (7th Cir.2005) (in dicta, expressing doubt that EPA should be protected from review "as long as [the agency] has any notion that it might, some day, take further unspecified action"); 2 Am.Jur.2d Administrative Law § 379 ("Even though agency action may be subject to no explicit time limit, a court may compel an agency to act within a reasonable time."). In a number of cases in which the plaintiff sought to compel action under § 701, the defendants did not even raise the argument that a statutory deadline is a prerequisite to such a suit and the courts proceeded as if no such limitation existed. *E.g., Reddy v. Commodity Futures Trading Commission,* 191 F.3d 109, 120 (2d Cir.1999); In *re City of Virginia Beach,* 42 F.3d 881, 885 (4th Cir.1994); *Silverman v. NLRB,* 543 F.2d 428, 430 (2d Cir.1976).

This lack of argument is not surprising because an interpretation of "unreasonably delayed" to mean only "beyond a statutory deadline" would render the phrase superfluous. Section 706(1) gives courts authority to "compel agency action unlawfully withheld *or* unreasonably delayed." (Emphasis added.) If an agency failed to meet an explicit statutory deadline, that would be agency action "unlawfully withheld." If "unreasonably delayed" has any independent meaning (as it is presumed to have, *TRW Inc. v. Andrews,* 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001)), it must refer to agency inaction in the absence of an explicit deadline.

C. *Unreasonable Delay*

This leaves the question whether defendants' delay is in fact unreasonable under § 706. Certainly, there is no clear bright line separating a reasonable delay from an unreasonable one. But courts are not left completely without standards, contrary to defendants' assertion. The factors courts ***1059** consider in assessing reasonableness are predictable: the length of the delay, the complexity of the matter under review, the relative fault of the parties in causing the delay and the effect that compelling action will have on the parties and others. *Reddy,* 191 F.3d at 120; *Forest Guardians,* 164 F.3d at 1269; *Telecommunications Research and Action Center v. FCC,* 750 F.2d 70, 74 (D.C.Cir.1984); *Linville,* 489 F.Supp.2d at 1282-83.

A preliminary question is which party has the burden to prove the reasonableness or unreasonableness of the delay. Neither side discusses this issue. My review of the case law does not reveal a clear answer. Rather, most courts appear to place the burden on one side or the other without explanation. In my view, it makes sense to place at least some of the burden on the parties with the best access to the information, which in this case is defendants. *Green Tree Financial Corp.-Alabama v. Randolph,* 531 U.S. 79, 96, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) ("where fairness so requires, burden of proof of a particular fact may be assigned to 'party who presumably has peculiar means of knowledge' of the fact") (quoting 9 *J. Wigmore, Evidence* § 2486 (J. Chadbourn rev. ed.1981)); *Secaida-Rosales v. INS,* 331 F.3d 297, 313 (2d Cir.2003) ("while [plaintiff] bears the burden of proof, a burden of production rests with the INS as the party with greater access to information"); *National Communications Association Inc. v. AT & T Corp.,* 238 F.3d 124, 130 (2d Cir.2001) ("all else being equal, the burden is better placed on the party with easier access to relevant information"). Of course, defendants know much better than plaintiff why the decision has taken as long as it has and are in a much better position to explain the delay.

[3] To the extent plaintiff has a burden, I conclude that he has made a prima facie showing of unreasonableness. The facts show that defendants have had five years to perform three background checks on plaintiff before adjudicating his application. Important as these checks are, common sense suggests that in the absence of special circumstances, the investigation should not require five

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

years to be conducted adequately. *Liu,* 501 F.Supp.2d at 9-11 ("As defendants have described the name check process as one where data is primarily retrieved from an electronic database, and only occasionally from paper records, it does not seem reasonable to the Court that this process would take over four years to complete."); *Dong,* at 1169-72 ("According to the documents submitted by the defendants, only 20 percent of FBI name checks take up to six months to resolve, and less than one percent remain pending for more than six months.")

Defendants have made no effort to show that special circumstances are present that would justify the delay. They propose no facts suggesting that plaintiff's application presents any unusual challenges or complications that would require extra time, that plaintiff himself is responsible for the delay as the result of providing incorrect information or that their administrative burden is so great that five years is simply not enough time to perform three background checks.

In their brief, defendants devote only four sentences to arguing that their delay in adjudicating plaintiff's application is a reasonable one. Even these constitute little more than citations to other cases in which courts have denied relief to plaintiffs who have waited four years or more for a decision on an application for an adjustment of status. However, in all but one of these cases, the court denied relief not because it concluded that four or more years was a reasonable amount of time to adjudicate an application, but because the ***1060** court concluded that it lacked jurisdiction to hear the case. *Patel v. Chertoff,* No. 4:06CV01207 ERW, 2007 WL 1223553 (E.D.Mo. Apr. 24, 2007); *Grinberg,* 478 F.Supp.2d 1350; *Safadi,* 466 F.Supp.2d 696. (*Patel* is somewhat equivocal on this point because it appears to conflate the questions of jurisdiction and reasonableness. However, the court concluded by saying it did not have "jurisdiction pursuant to the APA," *Patel,* 2007 WL 1223553, at *3.) The remaining case cited by defendants, *Saleh v. Ridge,* 367 F.Supp.2d 508 (S.D.N.Y.2005), is not persuasive because it did not require defendants to provide any individualized explanation for the delay, but simply noted that the defendants had many applications to process. Even *Saleh* is distinguishable because in that case the defendants at least had provided the plaintiff with an estimated time for making a decision.

Further, *Saleh* is the only case I have found in which the court found reasonable a delay as long as the one in this case. In fact, many courts have found similar delays and significantly shorter ones to violate the APA in cases brought to compel immigration officials to adjudicate applications for an adjustment of status. *Liu,* 501 F.Supp.2d at 9-11 (four years); *Alkeylani,* at 266 (three years); *Alsharqawi v. Gonzales,* Civil Action No. 3:06-CV-1165-N, 2007 WL 1346667, *4 (N.D.Tex. Mar. 14, 2007) (four years); *Haidari,* 2006 WL 3544922, at *6 (four years); *Yu,* 36 F.Supp.2d at 935 (two and one-half years); *Paunescu v. INS,* 76 F.Supp.2d 896, 902-03 (N.D.Ill.1999) (two years).

In addition to their citation to *Saleh,* defendants pepper their brief with references to the "post 9/11 world" and suggestions that an order compelling defendants to act might somehow undermine national security. *E.g.,* Dfts.' Br., dkt. # 12, at 22. Of course, plaintiff's suit raises an issue of vital importance to the country and the judiciary must give the other branches of government due deference in their efforts to keep the nation secure. But "national security" is not a magic talisman that can be waved in front of courts whenever the government seeks to insulate itself from judicial review. Defendants must make some showing that a requirement to process plaintiff's application in five years presents a danger; they cannot rely solely on an *ipse dixit. E.g., Singh,* 470 F.Supp.2d at 1069 ("[T]he mere invocation of national security is not enough to render agency delay reasonable per se."). Because defendants have adduced no evidence that deciding plaintiff's application in a timely fashion will undermine national security in any way, this argument is not persuasive.

Perhaps even more important, any reliance on "national security" as an excuse for delay is self-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

defeating in a case like this one in which the plaintiff is already in the United States and has been for many years. As another court recognized: "[T]he thoroughness of background checks must be weighed against the need to actually conduct them. The plaintiffs are currently living and working in the United States. If there is some legitimate national security concern with them or other applicants currently living and working in the country, this surely militates in favor of prompt security checks, not in favor of delay." *Dong*, at 1169-70. And if defendants do discover any information suggesting that plaintiff presents a security threat, they have total discretion to deny his application.

Finally, I note defendants' argument that plaintiff is not harmed at all by the delay and that he has "an alternate remedy" of simply "wait[ing] for [defendants] to adjudicate his application in the normal course." Dfts.' Br., dkt. # 12, at 16. ***1061** "Waiting" is not a "remedy" and it is inaccurate to say that plaintiff is suffering no harm. Although the government is not seeking to deport plaintiff at this time, plaintiff's "inability to obtain permanent resident status affects a wide range of important rights, including but not limited to travel and the ability [to] petition to immigrate close family members." *Singh*, 470 F.Supp.2d at 1070. In addition to these tangible harms, it cannot be ignored that defendants have left plaintiff in a "state of 'limbo,' leaving [him] to languish there indefinitely," a state that likely would cause anyone significant distress. *Kim*, 340 F.Supp.2d at 393.

Without any explanation from defendants for their failure to reach a decision on plaintiff's application, I must conclude that defendants' five-year delay is not reasonable. Accordingly, I will grant plaintiff's motion for summary judgment and give defendants two months to adjudicate plaintiff's application.

ORDER

IT IS ORDERED that plaintiff Mohammed Saleem's motion for summary judgment is GRANTED. Defendants Peter Keisler, Michael Chertoff, Kay Leopold, Ruth Dorochoff and Emilio Gonzales may have until December 24, 2007 within which to adjudicate plaintiff's application for an adjustment of status. The clerk of court is directed to enter judgment in favor of plaintiff and close the case.

W.D.Wis.,2007.
Saleem v. Keisler
520 F.Supp.2d 1048

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.