C
Maftoum v. Chavez
E.D.Mich.,2007.
Only the Westlaw citation is currently available.
United States District Court,E.D. Michigan,Southern Division.
Elia MAFTOUM, Plaintiff,
v.
Maria R. CHAVEZ, et al., Defendants.
**No. 07-CV-12819.**

Oct. 31, 2007.

**OPINION AND ORDER GRANTING "DEFENDANTS' MOTION TO DISMISS"**

ROBERT H. CLELAND, United States District Judge.

*1 Pending before the court is Defendants' "Motion to Dismiss," filed September 17, 2007. The motion has been fully briefed and the court concludes that a hearing is unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will grant Defendants' motion.

## I. BACKGROUND

This is an action by Plaintiff Elia Maftoum to compel Defendants to adjudicate his I-485 Application to Adjust Status, which was filed on October 25, 2005. If Plaintiff's application were granted, he would become a lawful permanent resident of the United States. Plaintiff is a citizen of Canada and current resident of Rochester Hills, Michigan. (Pl.'s Compl. at ¶ 8.) On May 9, 2005, Plaintiff married Mary Awadi, a native-born United States citizen. (*Id.* at ¶ 16.)On July 22, 2005, Plaintiff was lawfully admitted to the United States as a TN nonimmigrant. (*Id.* at 15.)

On October 25, 2005, Plaintiff's wife filed a I-130 Petition for Alien Relative on Plaintiff's behalf, so that Plaintiff could be classified as an "immediate relative" of Awadi for purposes of obtaining an immigrant visa.(*Id.* at ¶¶ 17, 23.)That same day, Plaintiff filed an I-485 Application to Adjust Status, in order to adjust his nonimmigrant status to permanent resident of the United States. (Pl.'s Resp. at 5.) The I-130 application was approved on May 10, 2006. (Notice of Approval, Pl.'s Compl. Ex. E.) Plaintiff's I-485 application remains pending, subject to completion of a "name check" by the Federal Bureau of Investigation ("FBI").

When an individual files an I-485 adjustment of status application, United States Citizenship and Immigration Services ("USCIS") conducts several forms of background checks to ensure that the applicant is eligible to adjust status and that he or she is not a risk to national security or public safety. (Brownrigg [FN1] Aff. at ¶ 4, Defs.' Mot. Ex. A.) The three background checks include: (1) a FBI fingerprint check, which provides information regarding the applicant's criminal history, including arrests and prior convictions, (2) an Interagency Border Inspection System ("IBIS") check, which provides information from over twenty government agencies relating to persons who are wanted or under investigation for serious crimes or suspected of terrorism-related activity and (3) a FBI name check, which runs the applicant's name against investigative databases of the FBI.[FN2](*Id.*)

FN1. Thomas Brownrigg is a supervisory district adjudications officer with USCIS. (Brownrigg Aff. at ¶ 1, Defs.' Mot. Ex. A.)

FN2. Michael Cannon, section chief of the name check program, provided an affidavit detailing the FBI name check process. (Cannon Aff. at ¶ 1, Defs.' Mot. Ex. C.) The FBI name check program runs the alien's name against FBI investigative databases that are more in-depth than the fingerprint and IBIS checks. The name check cross-references the alien's name with the FBI's Universal Index that searches all instances of the alien's name, social security number, dates close to his or her birth, and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Attachment J

will detect whether the alien is currently the subject of a FBI investigation. (*Id.* at ¶¶ 13-18.)The FBI follows a "first in, first-served" protocol. (*Id.*) FBI name checks for eighty percent of cases are completed within weeks, and the remaining twenty percent are resolved within six months. (4/25/06 USCIS Fact Sheet at 2, Defs.' Mot. Ex. B.) Less than one percent of all cases remain pending longer than six months.(*Id.*)

USCIS submitted a name check request for Plaintiff to the FBI on November 8, 2005. (Brownrigg Aff. at ¶¶ 8-9, Defs.' Mot. Ex. A.) Plaintiff's fingerprint and IBIS checks have been completed, however, his FBI name check has not.FN3 Only after all three checks are complete and current can USCIS adjudicate Plaintiff's application.[FN4]Plaintiff maintains that he has contacted USCIS to inquire about his application, but has not received an explanation regarding why his name check has not yet been completed. (Pl.'s Compl. at ¶ 21.)

FN3. There is no indication that the results of the fingerprint and IBIS checks have revealed any disqualifying information. (*Id.*)

FN4. Fingerprint checks are required to be kept updated, and expire when they are more than fifteen months old. (Brownrigg Aff. at ¶ 8, Defs.' Mot. Ex. A.) Plaintiff's fingerprints expired on May 28, 2007. (*Id.*) Similarly, IBIS checks must be kept up to date, and Plaintiff's may have expired. (*Id.* at ¶ 9.) Once USCIS receives Plaintiff's name check results, USCIS may ask for updated fingerprints and run another IBIS check. (*Id.* at ¶ 12.)

***2** On July 6, 2007, Plaintiff filed the instant action to compel Defendants to adjudicate his application within thirty days. (*Id.* at ¶ 34.)Plaintiff alleges that the now over two-year delay in adjudicating his I-485 application has resulted in substantial harm to him, his family and his *Id.* at ¶ 28.)

FN5. Plaintiff maintains that because his current immigration status requires him to obtain advance permission prior to traveling outside of the United States, he has encountered problems re-entering the United States following trips abroad. (*Id.* at ¶¶ 28-30). Plaintiff further notes that his current status has forced him to miss several connecting flights, which has harmed not only him, but his employer. (*Id.*) Plaintiff indicates that he has been prevented from attending conferences and meetings, and the delay in adjudicating his application has created great stress in his personal relationships with his wife and stepdaughter. (*Id.*) Lastly, Plaintiff notes that he is unable to apply for naturalization until he has been a permanent resident of the United States for two years and nine months, and the delay in processing his I-485 application has prevented him from accruing time towards eligibility for naturalization. (*Id.* at ¶ 31.)

On September 17, 2007, Defendants filed a motion to dismiss, arguing that the court lacks subject matter jurisdiction over Plaintiff's action because Defendants have discretion over the timing and pace of adjustment of status adjudications, and thus, the court cannot intervene. (*See generally* Defs.' Mot.) Plaintiff counters that, although Defendants have discretion to grant or deny Plaintiff an adjustment of status, Defendants have an affirmative duty to adjudicate Plaintiff's application within a reasonable time, and thus the court is not precluded from hearing this matter and enforcing that duty. (*See generally* Pl.'s Resp.)

## II. STANDARD

Defendants bring their motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).Rule 12(b)(1) allows dismissal for "lack of jurisdiction over the subject matter," while Rule 12(b)(6) addresses the failure to state a claim upon

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

which relief may be granted. Fed.R.Civ.P. 12(b)(1) & (6). When a defendant moves for a motion to dismiss under both Rule 12(b)(1) and (6), the court should consider the 12(b)(1) motion first because the 12(b)(6) motion is moot if subject matter jurisdiction does not exist.[FN6] *Moir v. Greater Cleveland Reg'l Transit Auth* ., 895 F.2d 266, 269 (6th Cir.1990). The plaintiff has the burden of proving subject matter jurisdiction by a preponderance of the evidence. *Hedgepath v. Kentucky,* 215 F.3d 608, 611 (6th Cir.2000). The court must construe the complaint in a light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. *Sistrunk v. City of Strongsville,* 99 F.3d 194, 197 (6th Cir.1996).

FN6. In light of the court's determination that it lacks subject matter jurisdiction over Plaintiff's claims, it need not discuss the Rule 12(b)(6) standard or analysis.

### III. DISCUSSION

Plaintiff's action is one among many cases filed across the country challenging the pace at which Defendants are adjudicating I-485 applications. The central issue of this case is whether this court has subject matter jurisdiction to entertain a claim that seeks to compel adjudication of an adjustment of status application. Plaintiff asserts that the court has subject matter jurisdiction pursuant to 28 U.S.C. § 1361 (Mandamus Act), 5 U.S.C. § 704 (Administrative Procedures Act), 28 U.S.C. § 1331, (Federal Question Statute) and 28 U.S.C. §§ 2201 (Declaratory Judgment Act). (Pl.'s Compl. at ¶¶ 3-5.) For the reasons discussed below, the court disagrees.

First, the Declaratory Judgment Act does not provide an independent basis for subject matter jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671-72 (1950). Prior to invoking the Declaratory Judgment Act, a federal court must have jurisdiction under another federal statute. *Toledo v. Jackson,* 485 F.3d 836, 839 (6th Cir.2007). Similarly, the federal question statute, 28 U.S.C. § 1331, does not provide an independent source for subject matter jurisdiction, as the statute only confers jurisdiction in cases arising under the Constitution and laws of the United States. 28 U.S.C. § 1331. Accordingly, subject matter jurisdiction only exists if it is granted by the Mandamus Act or the APA.

### A. Background on the Immigration and Nationality Act

***3** The Immigration and Nationality Act (INA), 8 U.S.C. § 1255, authorizes the Attorney General FN7 to adjust to permanent resident status certain aliens who have been admitted into the United States. The statute provides:

FN7. While 8 U.S.C. § 1255(a) provides that the Attorney General has the authority to adjudicate applications for adjustment of status, that authority has been transferred to the Secretary of Homeland Security and the USCIS. *See*6 U.S.C. §§ 271(b)(5), 557; 8 C.F.R. § 245.2(a).

> The status of an alien who was inspected and admitted or paroled into the United States ... may be adjusted by the Attorney General, *in his discretion and under such regulations as he may prescribe,* to that of an alien lawfully admitted for permanent residence.

8 U.S.C. 1255(a) (emphasis added). Neither the statute nor its implementing regulations establish any time frame in which a determination on an application must be made.[FN8] Immigration officials may withhold adjudication, without time limit, while applications are investigated. 8 C.F.R. § 103.2(b)(18).[FN9]

FN8.8 U.S.C. § 1571(b) does provide that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application."This provision is non-binding and does not impose any obligation upon US-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

CIS. *See Yang v. Cal. Dep't of Social Serv.*, 183 F.3d 953, 961-62 (9th Cir.1999) ("[T]he sense of Congress provision amounts to no more than non-binding, legislative dicta.").

FN9.8 C.F.R. § 103.2(b)(18) provides in pertinent part:

Withholding adjudication. A district director may authorize withholding adjudication of a visa petition or other application if the district director determines that an investigation has been undertaken involving a matter relating to eligibility or the exercise of discretion, where applicable, in connection with the application or petition, and that the disclosure of information to the applicant or petitioner in connection with the adjudication of the application or petition would prejudice the ongoing investigation.

**B. Jurisdiction Under the Mandamus Act and the APA**

Under the Mandamus Act, a district court has the authority to "compel an officer or employee of the U.S. or any agency thereof to perform a duty owed to the plaintiff."28 U.S.C. § 1361. Mandamus relief is a "drastic and extraordinary remedy" that is "only to be reserved for extraordinary situations."*Cheney v. U.S. Dist. Court for the Dist. of Columbia,* 542 U.S. 367, 380 (2004). The relief afforded by a writ of mandamus cannot be used to "compel or control a duty in the discharge of which by law [a federal officer] is given discretion" and is only appropriate where petitioner has exhausted all administrative remedies and defendant official owes petitioner a clear and nondiscretionary duty. *Work v. United States ex rel. Rives,* 267 U.S. 175, 177-78 (1925); *Heckler v. Ringer,* 466 U.S. 602, 616 (1984).

Under the APA, an agency has a duty to conclude a matter presented to it within a "reasonable time." 5 U.S.C. § 555(b). The APA allows a court to "compel agency action unlawfully withheld or unreasonably delayed."5 U.S.C. § 706(1). However, the APA does not apply where the statute at issue "precludes judicial review" or the "agency action is committed to agency discretion by law."5 U.S.C. § 701(a). Therefore, if either the pace of status adjustment is a matter of agency discretion or the INA precludes judicial review, this court does not have subject matter jurisdiction under either the Mandamus Act or the APA.

Plaintiff does not dispute that the final determination regarding status adjustment is indeed committed to agency discretion. (*See generally* Pl.'s Resp.) Plaintiff instead asserts that Defendants have a clear non-discretionary duty to make a decision within a reasonable time, and that they have violated that duty by allowing Plaintiff's application to remain pending for over two years. (*Id .*) Defendants counter that the discretion granted by 8 U.S.C. § 1255(a) extends to all aspects of adjusting an immigrant's status, including the pace of status adjustments. (*See generally* Defs.' Mot.)

The court first observes that there is a split of authority concerning whether courts have subject matter jurisdiction to hear a claim seeking to compel adjustment of an application to adjust status. A number of federal district courts have concluded that the Attorney General does not have discretion to dictate the pace at which adjustment of status applications are processed, and thus, courts have subject matter jurisdiction to hear adjustment of status claims. *See, e.g., Cao, et al. v. Upchurch,* 496 F.Supp.2d 569, 572 (E.D.Penn.2007) (holding that delay in processing adjustment application was not a "judgment" for purposes of 8 U.S.C. § 1252(a)(B)(i), and applicants could seek relief under the APA); *Liu v. Novak,* --- F.Supp.2d ----, No. 07-263, WL 2007 2460425, at *7 (D.D.C. Aug. 30, 2007) (holding that prohibition of the review of "decision[s] or action[s]" of DHS pursuant to 8 U.S.C. § 1252(a)(2)(B)(ii) only bars review of actual discretionary decisions, not the failure to render decisions); *Tang v. Chertoff,* 493 F.Supp.2d 148, 156 (D.Mass.2007) (holding that § 1252(a)(2)(B)(ii) does not address the discretion associated with the pace of processing). A similarly sizeable number of courts have dismissed claims similar to Plaintiff's, concluding that 8 U.S.C. §

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1252 grants the Attorney General discretion over the decision whether to grant an I-485 application *and* the attendant adjustment process-including the speed at which applications are adjudicated. *See Safadi v. Howard,* 466 F.Supp.2d 696 (E.D.Va.2006); *Chaudry v. Chertoff,* No. 06-1303, 2006 WL 2670051 (D.Minn. Sept. 18, 2006); *Espin v. Gantner,* 381 F.Supp.2d 261 (S.D.N.Y.2005). Although no federal court of appeals has ruled on this issue to date, courts in the Eastern District of Michigan have thus far been unanimous in holding that courts do not have subject matter jurisdiction over claims seeking to compel an adjustment of status application. *See, e.g., Shen v. Chertoff,* 494 F.Supp.2d 592 (E.D.Mich.2007) (Friedman, J.); *Kiromi v. USCIS,* No. 07-10446, 2007 WL 2049521 (E.D.Mich. July 13, 2007) (Cook, J.); *Xu v. Chertoff,* No. 06-CV-15398, 2007 WL 2221401 (E.D.Mich. July 31, 2007) (Steeh, J.); *Chehab v. Chertoff,* No. 07-11068, 2007 WL 2372356 (E.D.Mich. Aug. 17, 2007) (O'Meara, J.); *Kuchumov v. Chertoff,* No. 07-12277, 2007 2782045 (E.D.Mich. Sept. 24, 2007) (Duggan, J.); *Azadegan, et al v. Chertoff,* 07-CV-11238, 2007 WL 2822783 (E.D.Mich. Sept. 27, 2007) (Borman, J.).[FN10] For the reasons stated below, the court finds the latter group of cases more persuasive in their reasoning.

FN10. In the recent decision in *Zalmout v. Gonzalez, et al.,* No. 07-12575, 2007 WL 3121532 (E.D.Mich. Oct. 24, 2007) (Duggan, J.), the court, after first noting that the Attorney General has discretion to dictate the pace at which adjustment of status applications are processed, also found that the INA imposes a duty upon Defendants to adjudicate all properly filed applications. *Zalmout,* 2007 WL 3121532 at *7-8. The court found that a four-year delay in adjudicating the plaintiff's application constituted abandonment of the defendants' duty to process the plaintiff's application. *Id.* at *8. The court ordered the parties to appear at a hearing to determine whether the defendants' abandonment was the cause of the delay or whether there was a specific and justifiable explanation for the inordinate delay. *Id* . at *9. The *Zalmout* decision does not undermine the court's present holding because this court has not found that the two-year delay involved in this case constitutes an abandonment.

***4** Although the court is not insensitive to the plight of Plaintiff and others in his position who must wait, sometimes several years, for a decision on their applications to adjust status, the court is not persuaded this it has subject matter jurisdiction over Plaintiff's claims. First, the Attorney General's authority to adjust the status of an alien admitted or paroled into the United States is within "his discretion and under such regulations as he may proscribe."8 U.S.C. § 1255(a). Additionally, Congress has expressly precluded judicial review of any judgment regarding the granting of relief under § 1255 [adjustment of status] and any other discretionary "decision or action" of the Attorney General or Secretary of Homeland Security. 8 U.S.C. §§ 1252(a)(2)(B)(i), (ii); *Shen,* 494 F.Supp.2d at 596. In the court's view, § 1252 read in conjunction with § 1255 demonstrates a preclusion of judicial review of all agency action relating to I-485 applications, including whether the agency is processing the application in a reasonable time frame. [FN11]

FN11. The court also rejects Plaintiff's argument that Defendants' unreasonable delay in processing his application is tantamount to withholding adjudication of his application. Assuming that Defendants have a duty to render a decision upon Plaintiff's application, a two-year delay in processing the application does not necessarily constitute a failure to perform that duty. Defendants have given no indication that they plan to withhold a decision from Plaintiff. To the contrary, Defendants have processed Plaintiff's application in accordance with their normal protocol and maintain that once the FBI finishes the name check, which is currently pending, Defendants can and will render a decision on Plaintiff's application. (Defs.' Mot. at 13.)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Notably, in other sections of the INA empowering the Attorney General to adjudicate an application, Congress has set forth a statutory time period for adjudication and an explicit provision granting applicants a right to judicial review upon the expiration of that time period. *See*8 U.S.C. § 1447(b) (stating that applications for naturalization must be adjudicated within 120 days). That Congress has not provided a similar provision with respect to adjustment of status applications lends support to the court's present holding.

Further reinforcing the court's holding is that it is in keeping with important policy considerations. The delay in processing Plaintiff's application appears to stem, at least in part, from the FBI's struggle to process large numbers of name check requests with limited resources.[FN12]Although the court is not unsympathetic to the concerns of frustrated immigrant plaintiffs who want simply a resolution to their long-pending applications, imposing upon Defendants a deadline by which they must complete their adjudication is a policy determination more appropriately taken by the executive and legislative branches, not the courts. For the reasons set forth above, the court concludes that it lacks subject matter jurisdiction over Plaintiff's claims.

FN12. Before September 11, 2001, the FBI processed approximately 2.5 million name check requests per year. (Cannon Aff. at ¶ 19, Defs.' Mot. to Dismiss Ex. C.) As a result of post-9/11 counter-terrorism efforts, the number of FBI name checks has grown considerably. (*Id.*) For fiscal year 2006, the FBI processed in excess of 3.4 million name checks. (*Id.*) A number of variables affect the time it takes to resolve a particular name check, and while only a small percentage experience significant delays, that percentage translates into thousands of applicants. (*Id.* at ¶¶ 24-28.)The FBI cannot provide a specific or even general time frame for completing any particular name check. (*Id.* at ¶ 37.)

## IV. CONCLUSION

IT IS ORDERED that Defendants' "Motion to Dismiss" [Dkt. # 9] is GRANTED. This case is hereby DISMISSED.

E.D.Mich.,2007.
Maftoum v. Chavez
Slip Copy, 2007 WL 3203850 (E.D.Mich.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.