**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **Rajesh Radhakrishnan**<br>**49 Ballou St Cumberland**<br>**RI 02864** | ) | |
| **Smitha Sankaran Nair**<br>**49 Ballou St Cumberland**<br>**RI 02864**<br>**Plaintiffs'** | ) | **CIVIL ACTION**<br>**NO. CA 07 327S** |
| **v.** | ) | |
| ***Michael Chertoff***<br>**Secretary, Department of Homeland Security**<br>**Office of the General Counsel**<br>**U.S. Department of Homeland Security**<br>**20 Massachusetts Ave, NW, Suite 402**<br>**Washington, D.C. 20528** | ) | **THIRD AMENDED COMPLAINT** |
| ***Emilio T Gonzales***<br>**Director of the U.S. Citizenship and Immigration Service**<br>**Office of the General Counsel**<br>**U.S. Department of Homeland Security**<br>**20 Massachusetts Ave, NW, Suite 402**<br>**Washington, D.C. 20528** | ) | **Honorable Judge William Smith** |
| ***Robert S. Mueller III***<br>**Director of Federal Bureau of Investigation**<br>**J. Edgar Hoover Building**<br>**935 Pennsylvania Avenue**<br>**NW, Washington, DC 20535-0001** | ) | |
| **Evelyn Upchurch , Director**<br>**Texas Service Center**<br>**U. S. Citizenship and Immigration Services**<br>**Mesquite, TX 75185** | ) | |
| **Alberto Gonzalez, Attorney General**<br>**U.S. Department of Justice**<br>**950 Pennsylvania Av., NW**<br>**Washington, DC 20530-0001** | ) | |

**Condoleezza Rice** )
**United States Secretary of State** )
**U.S. Department of State** )
**2201 C Street NW** )
**Washington, DC 20520** )
**Defendants** )
)
________________________________________)

**PLAINTIFF'S THIRD AMENDED COMPLAINT**

Plaintiffs, Rajesh Radhakrishnan and Smitha Sankaran Nair, **Pro Se** in their third amended Complaint against Defendants state as follows:

## I. INTRODUCTION

1. Instant complaint is not about USCIS withholding adjudication of Plaintiffs application to adjust status because he is detrimental to national security. This complaint is about USCIS abdicating its mandated duty to process Plaintiffs application in a reasonable amount of time. This case is about USCIS failure to comply with its own regulations with regard to withholding adjudications. It is clear that the sole justification for withholding adjudication of Plaintiffs application between April 1, 2005 and December 31, 2007 is that USCIS had not yet received the results of Plaintiff's FBI "name check". It is also undisputed that visa numbers were mostly available for plaintiff during this period. Since February 4, 2008, the results of the FBI namecheck is no longer required for adjudication of Plaintiffs adjustment of status applications. But in a kafkaesque turn of events (again of USCIS making), Defendants claim that Plaintiffs application cannot be adjudicated now because visa numbers are not available in plaintiffs category. USCIS has a statutory duty to request visa numbers required to adjudicate application such as plaintiffs in the order of applicant's priority dates. Yet it adjudicated other applicants in Plaintiffs category( EB2, Indian Nationals) with much later priority dates whilst Plaintiff Rajesh Radhakrishnan's namecheck languished in FBI in clear violation of 8 U.S.C. § 1153(e). To date, they have furnished no documents to prove that withholding adjudication of Plaintiffs application was reasonable and that national security required such an action. Congress quite sensibly committed the merits of the decision on applications for adjustment of status to the Executive Branch, which, by its nature, retains the competence and expertise to evaluate whether a particular individual is eligible for legal permanent residence. At the same time, it is clear from the text of the Immigration and Nationality Act(INA) that Congress intended the Secretary of Homeland Security to process and act on applications in the order of their priority dates. Since November 2002, they have expedited FBI namechecks in a capricious manner which exemplifies abuse of executive discretion. Effectively by their actions, the Executive Branch has infact imposed a

de facto moratorium on plaintiff's adjustment of status applications. It may take years before visa numbers are available to plaintiff. Congress clearly did not intend that plaintiff with a priority date of April 3, 2000 is left languishing by USCIS while USCIS approved applicants in the same category with much later priority dates. Such approvals in addition to violation of established statutes is a grave injustice against applicants affected by retrogression such as in instant case and warrants estoppel. It is not difficult to envisage a similar scenario in future, where visa numbers are available to plaintiff and USCIS again reverses it's policy for requiring FBI namecheck results for adjudicating I-485 applications and plaintiff is snared again in the same "limbo" that existed on August 29, 2007.

## II. NATURE OF COMPLAINT

2. Plaintiffs allege they were harmed by defendants' violations of federal statutes and their own regulations. Defendants have misadministered the system and waiting list that determine how and when employment based immigrant applicants can become lawful permanent residents of the United States. Defendants' errors have prevented plaintiffs from becoming lawful permanent residents of the United States since April 1, 2005. Specifically, defendants have unlawfully withheld plaintiff's adjudication pending so called FBI namechecks since April 1, 2005. As a result of their action, Plaintiffs were deprived of valuable visa numbers that were available to them for most time since filing their application.

3. Plaintiffs, Rajesh Radhakrishnan and Sankaran Nair filed their application to Adjust Status to Permanent Resident (hereinafter "I-485") on March 11, 2005 with the U.S. Citizenship and Immigration Services, (hereinafter "USCIS"). Since then, Plaintiffs have made numerous inquiries and requests for their I-485 applications to be adjudicated. In their response, Defendant USCIS declare that Plaintiff Radhakrishnan's Application is pending FBI namechecks and can be adjudicated only after results from the checks are obtained(Walker Declaration at para 8). Defendants FBI declare that FBI namechecks for Plaintiff Radhakrishnan were pending since April 1, 2005 (Canon Declaration at para 41).

4. Defendants have expanded the scope of background checks required for applicants such as Plaintiff since November 2002 without congressional mandate. Defendants have unlawfully withheld adjudication of Plaintiffs applications. In addition, Defendants have failed to comply with their own internal regulations which specify in detail, the procedure to withhold adjudication. Defendants are alleged to have capriciously adminstered the expedite option for FBI namechecks in an abuse of official discretion.

5. Furthermore, after nearly three years of litigating similar cases, Defendants recently reversed their policy for requiring namechecks for adjudication of applicants such as plaintiffs. If FBI namechecks results were truly mandated by statute as required for adjudication of applications, such flimsy reversals of policies are not possible. If this memorandum was effective March, 2005, Plaintiff

would have received his Green Card around September, 2005 and by September 2010 been eligible to apply for citizenship. With the vast array of legal resources available at it's disposal, it is unjustifiable that USCIS and DHS instituted these procedures in the first place. Why did the government, at significant expense and time expended, engage in justifying it's frivolous stand in hundreds of FBI namecheck related lawsuits all across the nation ? Given the commonality of these lawsuits why did the Government not initiate class action remedy to determine the nature of relief mandated for I-485 applicants stuck in FBI name check queries. Defendants have further abused the judicial system by delaying such litigant relief using the policy of win-some, lose-some(i.e.. lawsuits) at significant expense. Applicants stuck in FBI namecheck such as Plaintiff have got Courts to grant relief in Plaintiff friendly district like Northern District of California and USCIS did not appeal these decisions. As a result, Plaintiffs continue to suffer significant and ongoing harms.

## III. JURISDICTION

6. This Court has subject matter jurisdiction over this petition under 28 U.S.C. § 1331 (Federal question statute) since this is a civil action arising under the Constitution and the laws of the United states, including the Fifth Amendment to the U.S. Constitution, provisions of Title 8 U.S.C. § 1101 et seq. (Immigration and Nationality Act, INA) and applicable regulations, policies and procedures arising thereunder. This Court may grant relief in this action under 28 U.S.C. § 1361 (Mandamus Act); 28 U.S.C. § 1651 (All Writs Act); 28 U.S.C. § 2201 (Declaratory Judgment Act); and under 5 U.S.C. § 701 et seq. (Administrative Procedures Act).

7. There are no administrative remedies available to Plaintiffs to redress the grievances described herein. This action does not challenge the granting or denials of individual applications; therefore, the jurisdictional limitations under the INA §242, 8 USC §1252, do not apply.

## IV. VENUE

8. Venue is proper in this district as Plaintiffs resides in Cumberland, Rhode Island which is in this District and no real property is involved in this action. See 8 U.S.C. § 1391(e).

## V. PARTIES

9. Plaintiffs are citizens of India. Plaintiff, Rajesh Radhakrishnan was admitted to the United States in August, 1998 as an F1 non-immigrant student. On January 11, 2001, his status changed to H1B, a non-immigrant category, until 26 November, 2003. Subsequently, his H1B was extended for a further period of three years until 26 November, 2006. Plaintiff Radhakrishnan is the beneficiary of an immigrant petition in the EB2 category, form I-140 filed by his petitioning

employer, Simulia, Inc. Plaintiff Smitha Sankaran Nair was admitted to the United States in December 2004 as an H-4 non-immigrant dependent visa.

10. Defendant Emilio T. Gonzalez is sued in his official capacity as the Director of the United States Citizenship & Immigration Services (USCIS), an agency within the U.S. Department of Homeland Security, which is charged by law with the duty of adjudicating I-485 applications for adjustment of status to lawful permanent resident and for the adminstration of the USCIS and the implementation of the immigration laws of the United States.

11. Defendant Michael Chertoff is sued in his official capacity as the Secretary of the Department of Homeland Security. In that capacity, he has responsibility for the administration and enforcement of the immigration laws pursuant to 8 U.S.C. §1103(a), including the accurate, efficient and secure processing of immigration benefits. As a result of a massive reorganization, the Immigration and Naturalization Service (I.N.S.) was dissolved on March 1, 2003, and its functions were taken over by the Department of Homeland Security.

12. Defendant Alberto Gonzalez is sued in his official capacity as the attorney general of the United States and is charged with the authority and duty to direct, manage, and supervise all employees and all files and records of the Department of Justice including the security checks required to obtain an immigration benefit such as the I-485 adjustment of status to lawful permanent residence.

13. Defendant Robert S. Mueller, III is sued in his official capacity as the Director of the Federal Bureau of Investigation (hereinafter "FBI"), an agency within the United States Department of Justice, which is responsible for conducting both criminal record checks and National Name Check Program ("NNCP"). The NNCP disseminates information from the FBI's Central Records System in response to requests submitted by federal agencies, including the USCIS. Upon the request of the USCIS, the FBI performs name checks and other security checks on all applicants for adjustment of status to lawful permanent residence.

14. Defendant Evelyn Upchurch, is sued in his official capacity as the Director of the Texas Service Center of USCIS. In his capacity as the director of the Texas Service Center, USCIS, Mr. Upchurch is responsible for the adminstration of immigration benefits and services including the processing of employment based immigration petitions. As such, he has decision-making authority over the matters alleged in this complaint.

15. Defendant Condoleeza Rice is sued in her official capacity as the U.S. Secretary of State. She is generally charged with implementing U.S. foreign policy and is further authorized to delegate such powers and authority to subordinate employees of the Bureau of Consular Affairs("BCA"), which is an agency within the Department of State. The BCA is responsible for the issuance of visas to foreign nationals for entry to the U.S. and is also responsible for the tracking and

allocation of visa numbers to foreign nationals. The BCA releases a monthly visa bulletin that indicates when a foreign national may appy for a class of immigrant visas based on his or her priority dates. Only visa applicants with a priority date earlier than the cut off date listed for each category in the Visa Bulletin may be assigned a visa number and granted an immigrant visa. In that capacity, she also has responsibility for issue of immigrant visa numbers pursuant to 8 U.S.C. § 1255(b).

## VI. EXHAUSTION OF ADMINSTRATIVE REMEDIES

16. Plaintiffs have exhausted all their administrative remedies. Plaintiffs have supplied the USCIS documents that clearly establish their eligibility to Register Permanent Resident or Adjust Status. Plaintiffs have made numerous enquiries concerning the status of their I-485 applications to no avail. Plaintiffs have suffered, are suffering, and will continue to suffer significant and irreparable harm because of defendants' policies, procedures, acts and failures to act as described herein. Plaintiffs have no remedy to compel the defendants to adjust her status in the proper order, other than through this lawsuit. Plaintiff have no remedy to compel the government to issue visa numbers for the plaintiffs other than through this complaint. Plaintiffs can obtain justice of a backdated green card only via this complaint.

## VII. EMPLOYMENT BASED IMMIGRATION

17. In general, the first step to obtain lawful permanent residence in the United States is for an employer to file with the Department of Labor an application for a labor certification to certify that there are not sufficient United States workers available, and the employment of an alien (beneficiary) will not adversely affect the wages and working conditions of workers in the United States similarly employed.

18. In general, once the labor certification is granted, the employer files Form I-140 ("Immigrant Petition for Alien Worker") with USCIS on behalf of the alien.

19. The "priority date" is the date on which USCIS receives and accepts for filing the alien's labor certification in cases for which a labor certification is required before filing the I-140 application. Plaintiff Rajesh Radhakrishnan is one such applicant. USCIS clearly provides the priority dates for such applicants on the Form I-140 approval notice.

20. Then, when an alien's priority date comes current, the alien files with USCIS Form I-485 ("Application to Register Permanent Residence or Adjust Status"), which, if granted, grants the alien lawful permanent residence status, *i.e.* the alien gets a "green card."

21. Moreover, an alien who is eligible to adjust status pursuant to an employment based petition can also add his or her spouse and unmarried minor children as

derivative beneficiaries. Derivative beneficiaries are accorded the same priority date as primary applicants.

## VIII. VISA BULLETIN PROCEDURE

22. Section 201 of the INA establishes limits on family and employment based immigration; the yearly limit for the issuance of employment-based visas is approximately 140,000; the yearly limit for the issuance of family-based visas is approximately 226,000.

23. Section 202 of the INA sets the per-country limit for preference immigrants at 7% of the total annual Family-sponsored and Employment-based preference limits, i.e. a minimum of 25,620. The annual per-country limitation of 7% is a cap, meaning visa issuances to any single country may not exceed this figure. This limitation is not a quota to which any particular country is entitled, however. The per-country limitation serves to avoid monopolization of virtually all the visa numbers by applicants from only a few countries. If there are sufficient numbers in a particular category to satisfy all reported documentarily qualified demand, the category is considered "Current."

For example, if the Employment Third preference monthly target is 5,000 and there are only 3,000 applicants, the category is considered "Current".

24. For each sub-category of employment based immigrants, 8 U.S.C. § 1153 further specifies numerical limits(28.7 % for EB2 category). This translates to roughly 2802 visas for Indian Nationals in the EB2 category for each fiscal year.

25. However, 8 U.S.C. § 1152 specifies that the 7% per-country limit can be exceeded when visa numbers are available. Congress certainly intended that USCIS use visa numbers to the fullest extent possible and made sure that additional provisions are provided to this effect.

26. Whenever the total of documentarily qualified applicants in a category exceeds the supply of numbers available for allotment for the particular month, the category is considered to be "oversubscribed" and a visa availability cut-off date is established. The cut-off date is the priority date of the first documentarily qualified applicant who could not be accommodated for a visa number.

For example, if the Employment Third preference monthly target is 5,000 and there are 15,000 applicants, a cut-off date would be established so that only 5,000 numbers would be used, and the cut-off date would be the priority date of the 5,001st applicant.

27. If these limits are exceeded in a particular category, for a particular nationality, a waiting list is created and applicants are placed on the list according to the date of their case filing. This date is called a "Priority Date." The priority date is the

single, most important, factor in any immigration case.

28. The American Competitiveness in the Twenty-First Century Act (AC21) recaptured a "pool" of 131,000 Employment numbers unused in fiscal years 1999 and 2000, and allowed those recaptured numbers to be used by the oversubscribed countries. The AC21 removed the per-country limit in any calendar quarter in which overall applicant demand for Employment-based visa numbers is less than the total of such numbers available(See Section 106(d) of the act available at: http://history.nih.gov/01docs/historical/documents/PL106-313.pdf). In recent years, the application of the rules outlined in AC21 has allowed countries such as China - mainland born, India, and the Philippines to utilize large amounts of employment numbers which would have otherwise gone unused. To illustrate the effect of the reduced per-county limitation during FY-2006 on the oversubscribed countries, it should be noted that during FY-2005 India used approximately 47,175 Employment numbers. During FY-2006, due to anticipated heavy demand, the AC21 provisions are not expected to apply, and the amount of Employment numbers available to any single country will be subject to the 7% cap. In passing AC21, Congressional intent was clear. Visa numbers are valuable and are expected to be used. Qualified employment based immigrants from any nation are a valuable asset for the nation and must be granted permanent resident status to the fullest extent possible.

29. The State Department publishes a monthly visa bulletin, which, *inter alia*, lists the availability of employment-based immigrant visas for the upcoming month. Based on the listed availability, USCIS and consular officers world wide request visas for applications being adjudicated at their posts or local USCIS offices.

30. The monthly visa bulletin indicates the availability of visas for family and employment-based preference categories, and separately lists countries that may have exceeded their allocation of visas; countries that have exceeded their allocation of visas are "oversubscribed," and individuals from those countries must wait before a visa can be issued. This is called retrogression.

31. Only individuals with a priority date earlier than the one listed on the visa bulletin, i.e.. when the priority dates become "current," they may file an I-485 application. Individuals whose priority date is after the one listed in the tables must wait until the priority dates become current in a subsequent visa bulletin.

32. 245(a) of the INA provides as follows
The status of an alien who was inspected and admitted or paroled into the United States or the status of any other alien having an approved petition for classification ... may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately

available to him at the time his application is filed.
8 USC §1255(a).

33. It has been USCIS's pattern and practice to rely on the State Department's monthly bulletin when it, *inter alia*, requests visa numbers from the State Department. The State Department's monthly visa bulletin is the only source of information regarding the availability of visa numbers. The State Department has archived the monthly visa bulletins that are dated since January 10, 1994 on its website. *See* http://dosfan.lib.uic.edu/ERC/visa_bulletin/.

34. The July visa bulletin included the following forecast about the continued availability of employment based immigrant visas.

> E. EMPLOYMENT-BASED VISA AVAILABILITY DURING THE COMING MONTHS
> All Employment Preference categories except for Third "Other Workers" have been made "Current" for July. This has been done in an effort to generate increased demand by Citizenship and Immigration Services (CIS) for adjustment of status cases, and to maximize number use under the annual numerical limit. However, all readers should be alert to the possibility that not all Employment preferences will remain Current for the remainder of the fiscal year. Should the rate of demand for numbers be very heavy **in the coming months**, it could become necessary to retrogress some cut-off dates for September, most likely for China-mainland born and India, but also possibly for Mexico and Philippines. Severe cut-off date retrogressions are likely to occur early in FY-2008.
> *Id.* (emphasis added).

## IX. WITHHOLDING ADJUDICATIONS

35. A specific regulation imposes a non-discretionary duty upon the defendants with a specific framework for both the timing and manner of withholding adjudication of adjustment of residency status. The overlooked regulation is 8 C.F.R. § 103.2(b)(18), entitled "Withholding adjudication." This regulation provides:

> *A district director may authorize withholding adjudication of a visa petition or other application if the district director determines that an investigation has been undertaken involving a matter relating to eligibility or the exercise of discretion, where applicable, in connection with the application or petition, and that the disclosure of information to the applicant or petitioner in connection with the adjudication of the application or petition would prejudice the ongoing investigation. If an investigation has been undertaken and has not been completed within one year of its inception, the district director shall review the matter and determine whether adjudication of the petition or application should be held in abeyance for six months or until the investigation is completed,*

> *whichever comes sooner. If, after six months of the district director's determination, the investigation has not been completed, the matter shall be reviewed again by the district director and, if he/she concludes that [**23] more time is needed to complete the investigation, adjudication may be held in abeyance for up to another six months. If the investigation is not completed at the end of that time, the matter shall be referred to the regional commissioner, who may authorize that adjudication be held in abeyance for another six months. Thereafter, if the Associate Commissioner, Examinations, with the concurrence of the Associate Commissioner, Enforcement, determines it is necessary to continue to withhold adjudication pending completion of the investigation, he/she shall review that determination every six months.*

Thus, the source of the defendants' non-discretionary duty to "act" upon the plaintiffs' application is specifically traced to 8 C.F.R. § 103.2(b)(18). The procedural requirements specified in this regulation ensure that some timely decision is made or action taken on these applications without need of invoking the APA's default rule of reasonable timeliness. The defendants have a non-discretionary duty to comply with 8 C.F.R. § 103.2(b)(18) in order to lawfully withhold adjudication. If the USCIS has failed to comply with 8 C.F.R. § 103.2(b)(18), then this Court has subject matter jurisdiction under either the APA, the mandamus statute, or both, to compel an agency action unlawfully withheld.[1]

## X. UNREASONABLE DELAY AND APA

36. Ultimately, the courts decision regarding the reasonableness of the delay in this complaint requires it to balance the Government's systemic justification against Plaintiffs individual interests. If the Governments justifications were truly systemic – that is, if they applied to all applicants for adjustment of status- the outcome might be different. Instead, some applicants receive relatively speedy adjudication whereas others do not, and the Government does not explain adequately why. When an applicant has been waiting for years for adjudication, knowing that other have received decisions much more quickly, it is not enough to say, to paraphrase the Government's response: this is the system. See Dong, 513 F. Supp. 2d at 1170-72 (describing conclusory allusions to national security as "something of a red herring," acknowledging fiscal and administrative burden of processing name checks but rejecting the burden as a basis for relieving defendants of their obligation to fulfil mandatory duties, and finding no merit in argument that court interference will favor applicants who are able to hire attorneys and engage in "line cutting"); Liu, 2007 WL 2433337, at *6 & n.11 (concluding that neither the volume of adjustment applications nor the "mere invocation of national security, without a particular explanation of how it caused

1 See Dong v Chertoff, 513 F. Supp. 2d 1158(N.D. Cal, 6 Sept. 2007), Lin v. Chertoff, 2007 U.S. Dist. LEXIS 57964, 2007 WL 2301118, at *2 (W.D. Okla. 2007), Saleem v. Keisler, F. Supp. 2d, No. 06-C-712-C, 2007 U.S. Dist. LEXIS 80044, 2007 WL 3132233 (W.D. Wis. Oct. 26, 2007). Also see Siddiqi v Mueller, Case No. H-07-580( S.D. Texas, 4th Feb 2008)

delay, is insufficient to justify delay"). The APA provides Plaintiffs with a means to challenge the system. This court should also note that the precedent decision of the Rogatch case(Rogatch v. Chertoff, 2007 WL 1160358) has been rendered incorrect by several other courts since then. There the decision of Judge Lisi (without analysis of arguments) relied primarily on the Safadi court that has been discarded by many other judges including Judge Brinkema of the same court in Aslam v Mukasey, 07-CV331 (LMB/BRP), 2008 U.S. Dist. LEXIS 5616(E.D. Va, 25 Jan 2008). The pivotal judgement by Judge Baylson in Mocanu v. Mueller, 2008 U.S. Dist. LEXIS 10122(E.D. Pa) and subsequent policy change by USCIS(not requiring FBI namechecks for adjudicating application such as plaintiffs) merits careful consideration.

37. Judge Baylson applying adminstrative principles had this to say about FBI namechecks in a recent opinion on Mocanu v Mueller:

> The Court concludes that USCIS has required FBI name checks under the mistaken impression that it has authority, based on its own regulations, to require such checks for LPRs who seek to become naturalized citizens. Based on a review of the facts and bedrock principles of administrative agency law, the Court finds that USCIS's name check requirement has (1) never been authorized by Congress; (2) is not mentioned or contemplated by any fair reading of the current USCIS regulations; and (3) may not, without USCIS initiating notice and comment procedures, be used to delay action on Plaintiffs petitions for naturalization...
>
> According to the argument, because the regulation uses the term "includes," the list that follows is not exhaustive, and thus, USCIS has the authority to require a "name check" even though the term is not on the list. The problem with this argument is that while the list that follows the term "includes" is not necessarily exhaustive, the list does not set forth the components of a "full criminal background check" but only provides for several kinds of confirmations from the FBI. The first two [*32] refer to an administrative or criminal record, and the third refers to "unclassifiable" fingerprint cards, all without further definition or explanation. The "includes" argument would make more sense if, for example, the list following the term "includes" set forth various forms of background checks, such as an IBIS check, to which the "name check" could logically be added. The Court finds the "includes" argument unpersuasive.
>
> The Court concludes that USCIS has required FBI name checks under the mistaken impression that it has authority, based on its own regulations, to require such checks for LPRs who seek to become naturalized citizens. Based on a review of the facts and bedrock principles of administrative agency law, the Court finds that USCIS's name check requirement has (1) never been authorized by Congress; (2) is not mentioned or contemplated [*33] by any fair reading of the current USCIS regulations; and (3) may not, without USCIS initiating notice and comment procedures, be used to delay action on Plaintiffs petitions.

See Mocanu v Mueller, 2008 U.S. Dist. LEXIS 10122(E.D. Pa, Feb 8, 2008).

## XI. ESTOPPEL IN IMMIGRATION CONTEXT

38. "Estoppel is an equitable doctrine invoked to avoid injustice in particular cases." *Heckler v. Community Health Services*, 467 U.S. 51 (1984). The law of estoppel has long recognized that a wrongdoer should not be permitted to reap unfair advantage from his or her own wrongful conduct. In the immigration context, estoppel-type arguments might be raised where a respondent has relied on a government misrepresentation to his or her detriment, or to prevent the government from gaining an unfair advantage from a wrongful act that deprives the respondent of a constitutionally protected liberty or property interest. In fact, it was in an immigration case that the United States Court of Appeals for the Second Circuit explained that the government may be precluded from benefiting from its own wrongful conduct even where the Act, "read in vacuo, might suggest a different result." *Corniel-Rodrigues v. INS*, 532 F.2d 301 (2nd Cir. 1976).

39. The traditional elements of "equitable estoppel" are: (a) a misrepresentation; (b) that the party making the misrepresentation had reason to believe the party asserting estoppel would rely on it; (c) that it was reasonable for the party asserting estoppel to rely on the misrepresentation; and (d) that the party asserting estoppel relied on the misrepresentation to his detriment. *Heckler*, 467 U.S. at 59. Several federal circuit courts have found equitable estoppel to lie where there is an element of "affirmative misconduct" on the part of the government. See *Corniel-Rodrigues*, 532 F. 2d 301 (2d Cir. 1976) (INS failure to warn alien that her visa would automatically become invalid if she married before arriving to the United States sufficient to support estoppel); *Yang v. INS*, 574 F.2d 171, 174-75 (3rd Cir. 1978) (affirmative misconduct by government official gives rise to estoppel); In Santiago v. INS, 526 F.2d 488, the Ninth Circuit Court reiterated it's belief "that estoppel is available . . . where the particular facts warrant it." 526 F.2d at 492.

40. In Villena v. INS, 622 F.2d 1352; 1980 U.S. App. LEXIS 16975, the Ninth Circuit further held that the rule of estoppel may be invoked against the government in immigration cases where there is affirmative misconduct. Citing Sun Il Yoo v INS, 534 F.2d at 1328, it noted that a one-year delay [**20] in recognizing the validity of a petition for preference classification, where the INS offered no explanation for the delay, was so oppressive as to constitute such affirmative misconduct.

> *In May 1968 Villena petitioned for preference classification based upon his occupation. Had the INS acted within a reasonable period of time, as it is under a duty to do, a visa undoubtedly would have been available to him. The INS did not respond to his petition until almost four years later, however. There is no apparent justification for this delay. Thus, we believe that the INS is estopped from claiming that Villena failed to adequately pursue his claim*

*for preference classification.* The Ninth circuit further observed *that the facts, rather, suggest that the INS was at fault. Villena should not be penalized because of an unjustified INS delay in responding to his petition within a reasonable period of time. The rule of estoppel may be invoked against the government in immigration cases where there is affirmative misconduct. A one year delay in recognizing the validity of a petition for preference classification, where the Immigration & Naturalization Service (INS) offers no explanation for the delay, is so oppressive as to constitute such affirmative misconduct. Deportation is a drastic measure that may inflict the equivalent of banishment or exile, and result in the loss of all that makes life worth living. When such serious injury may be caused by INS decisions, its officials must be held to the highest standards in the diligent performance of their duties. Once an alien has supplied the INS with all of the relevant information, the INS has a duty to accord him within a reasonable time the status to which he is entitled.*

## XII. FACTUAL ALLEGATIONS

41. Plaintiff Radhakrishnan is the beneficiary of an immigrant petition in the EB2 category, form I-140 filed by his petitioning employer, Simulia, Inc. (world renowned for simulation software ABAQUS), which was approved on February 12, 2002 and has a priority date of April 3, 2000. Attached hereto as **Exhibit A** (an acknowledgement document by the USCIS).

42. Plaintiff, Rajesh Radhakrishnan and Plaintiff, Smitha Sankaran Nair filed their application to Adjust Status to Permanent Resident (hereinafter "I-485") on March 11, 2005 with the U.S. Citizenship and Immigration Services, (hereinafter "USCIS") Vermont Service Center in Saint Albans, Vermont. Attached hereto as **Exhibit B** (an acknowledgement document by the USCIS. An immigrant visa was immediately available to the plaintiffs at the time, I-485 was filed.

43. USCIS publishes processing dates every month online at: https://egov.uscis.gov/cris/jsps/Processtimes.jsp?ServiceCenter=TSC. In August 2007, at the time of filing instant complaint, Texas Service Center was completing/processing AOS applications filed on or before October 27, 2006 while Plaintiffs submitted his application in March 2005. Attached hereto as **Exhibit C**.

44. Plaintiffs submitted their fingerprints to USCIS on May 17, 2005. Plaintiff, Rajesh Radhakrishnan submitted his fingerprints for the second time on May 5, 2007. Plaintiff, Smitha Sankaran Nair submitted her fingerprints for the second time on June 14, 2007. Attached hereto as **Exhibit D** (copy of fingerprint notices from USCIS).

45. Plaintiffs have applied for multiple Employment Authorization Documents that were approved. Both plaintiffs have one Travel( Advance Parole) Applications that were granted to them.

46. Since August, 2005, Plaintiff, Rajesh Radhakrishnan has been contacting USCIS over the phone about the case status to figure out why the processing of their cases has been delayed and has received no definitive responses or relief.

47. On March 12, 2007, Plaintiffs and got a response from Vermont USCIS that the I-485 case was transferred to the Nebraska USCIS office to speed up processing. Attached hereto as **Exhibit E** (copy of transfer notice issued by USCIS). If Defendants wanted to speed up processing, Plaintiffs seeks to know why their long pending namechecks were not expedited instead. Defendants are well aware of the fact that USCIS namecheck requests are routinely flagged as "routine requests with no specific deadlines" by the FBI NNCP staff.

48. On April 5, 2007, Plaintiff, Rajesh Radhakrishnan requested Congressional Assistance from the office of Jack Reed to get the case Adjudicated and FBI name check finalized. Attached hereto as **Exhibit F** (copy of Plaintiff's letter to Congressman Jack Reed's office submitted via the Congressman's website). On May 23, 2007, Plaintiff received information from the office of Jack Reed indicating that he has send additional correspondence to the USCIS Texas Service Center. Attached hereto as **Exhibit F**.

49. On May 14, 2007, plaintiff, Rajesh Radhakrishnan appeared before the USCIS Providence in order to enquire about the status of his case. Plaintiff was finally told by an immigration officer that USCIS still had not completed the FBI Name Check Clearance and that it has been pending since May, 2005.

50. On July 12, 2007, Plaintiff, Rajesh Radhakrishnan contacted the USCIS via the national hotline to enquire about the status of the case. The USCIS officer informed the Plaintiff that the case is still under review. A Service request about the cases was initiated on the recommendation of the USCIS officer.

51. On July 25, 2007, Plaintiff, Rajesh Radhakrishnan decided to file a FOIPA(Freedom of Information Privacy Act) to see if the reason behind the FBI Name Check Clearance delay was due to a Record in the FBI Central Record System(CRS). The FBI name check is made against the CRS system which is updated by 20 other agencies for various reasons.

52. On August 17, 2005, Plaintiff, Rajesh Radhakrishnan got a response back from David M. Hardy, Section Chief of CRS stating that there were "No Records" or "Hits" in the system based on the name provided by the Plaintiff. Attached hereto as **Exhibit G**. This is the same system coincidently that the FBI make repeated Name Check inquiries against on behalf of USCIS for all applicants filing for Permanent Residency in the light of September 11, 2001.

53. Defendant FBI's inaction and refusal to complete Plaintiff's namecheck and to transmit a "FBIQUERY System" response is both arbitrary and capricious, as the

FBI has a mandatory, non-discretionary duty, as required by law, to complete this process. Defendant FBI's inaction is a violation of the APA in that it has unreasonably delayed action on Plaintiff's FBI NNCP namecheck. The APA provides a remedy to compel agency action unlawfully withheld or unreasonably delayed.

54. On August 24, 2007, Plaintiff, Rajesh Radhakrishnan contacted the USCIS via the national hotline to enquire again about the status of the service request. The USCIS officer informed the plaintiff that the USCIS had still not completed his background check; and therefore was unable to approve the petition.

55. As of August 29, 2007, more than 2 years and 5 months after submitting all documents to USCIS, no resolution on Plaintiffs application has been reached so he filed the initial complaint with the Rhode Island District Court. This action challenges the defendants timeliness in adjudication of Plaintiffs applications, not the granting or denial of that application. An immigrant visa was immediately available to the plaintiffs at that time.

56. Plaintiff further alleges that both USCIS( in cohorts with FBI) in response to DOS opening the floodgates with visa numbers completed the security checks and consumed about 60,000 visa numbers in June 2007. Notwithstanding the workload of either agencies, that a record number of visa numbers were consumed by USCIS weakens their argument that they are overburdened with applications. Plaintiffs allege that USCIS was requesting visa numbers on Sunday July 1st, and Monday morning July 2, 2007 - and that visa numbers were still being issued as late as the morning of July 2, 2007. In fact, close to 30,000 visa numbers were requested and issued in July - through the morning of July 2nd. And Plaintiffs believe that many - if not most - of the requests made in the first two days of July were for applicants whose priority dates were not current in June, 2007. Were USCIS employees in District offices requesting visa numbers in advance of actually approving adjustment of status applications ? Were they requesting visa numbers on cases based on the fact that requests for security clearances had been pending for over 180 days - and then planning to wait to approve the case until the security clearance came through ? To support the argument of affirmative misconduct against the USCIS, plaintiff urges the honorable court to require that defendants submit information on details of namechecks conducted for all approved applicants approved in June 2007. Plaintiff also urges that Defendants be required to state under oath where visa number were pre-allocated to applicants whose namechecks had not been **completed**(emphasise). The CIS Ombudsman's report for fiscal year 2007 indicates that USCIS service centers process newer and simpler cases in a prioritized manner to obtain additional grants in future years( the grant allocation is proportional to the cases adjudicated by each service center).

57. On September 7, 2007, Plaintiff, Rajesh Radhakrishnan received information from the office of Jack Reed indicating that he has send additional

correspondence to the USCIS Texas Service Center. As in **Exhibit F**, he had obtained no further information. Attached hereto as **Exhibit H**.

58. On September 8, 2007, Plaintiff, Rajesh Radhakrishnan received a response from the USCIS Texas Service Center. It states: *"The processing of your case has been delayed. A check of our records establishes that your case is not yet ready for decision, as the required investigation into your background remains open".* Attached hereto as **Exhibit I.**

59. On September 14, 2007, plaintiffs appeared before the USCIS Providence in order to enquire about the status of Plaintiff Smitha Sankaran Nair's background checks. Plaintiff was finally told by an immigration officer that her "name check" has cleared( No information was given on when the name check was cleared), but the processing of her case cannot proceed unless the primary applicant, Plaintiff, Rajesh Radhakrishnan's "security clearance" is cleared.

60. On October 10, 2007, the plaintiffs attorney for I-485, received two Request for Evidence (**RFE**) letters from USCIS Texas Service Center for both plaintiffs'. Both stated that *" The medical examination (Form I-693) contained in your Service file does not indicate that the required Tuberculin skin test was conducted. You should return to the civil surgeon who first examined you( or another civil surgeon authorized by this service) to properly complete the form I-693 medical examination to include the required tuberculin skin test".* Attached hereto as **Exhibit J**. The original I-693 was completed in December 2004. It included the Chest X-ray results to prove that plaintiffs did not have active Tuberculosis. Plaintiffs seeks to know why the RFE was issued in October 2007, when the completed I-693 was available to USCIS with the original I-485 application submitted in March 2005. Plaintiffs request the honorable court that USCIS be ordered to prove that the mandatory tuberculin skin test results were verified for all I-485 applications approved since March 2005. Plaintiffs have strong reasons to believe that the changed guidelines were issued by the Center for Disease Control and Prevention(CDC) in March 2007(attached hereto as **Exhibit K**). The RFE indicated that plaintiffs have 30 days to respond to this letter. Plaintiff's life is continously being put on hold(held at ransom) until the I-485 application is adjudicated because of RFE's like these. Plaintiff is concerned about the extended processing time for these RFE's. Plaintiff suspects that the USCIS is using the RFE injudiciously to justify the inexcusable delay in adjudicating I-485 application like the plaintiff's. USCIS requests have been complied with and the online status of the applicant indicates that USCIS received the response on October 26, 2007. Attached hereto as **Exhibit N.** If Defendants had expedited the namechecks by then, Plaintiffs applications would surely have been adjudicated atleast before the January Visa Bulletin came into effect (Filing of mandamus lawsuits have been accepted by USCIS in the past to expedite namechecks).

61. On November 9, 2007, Plaintiff, Smitha Sankaran Nair received a response from

USCIS Texas Service Center. It states: *The processing of your case has been delayed. We are currently awaiting the results of required security checks on this case.* Attached hereto as **Exhibit L**

62. Plaintiff, Rajesh Radhakrishnan has been unable to apply for the job of Senior Stress Analyst with the current employer as the job requires U.S. Citizenship or Permanent residency. Attached hereto as Exhibit **M.** This job is a promotion from the plaintiff's current position( Development Engineer II) with the company. Defandants actions have caused Plaintiff promotion opportunities. The defendants inability to timely adjudicate plaintiff's application has caused enormous financial burden and emotional stress on Plaintiff's family as they have to pay high mortgages in a financially unsecure housing market and yet are unable to advance their career in a dynamic and vibrant job market.

63. On December 10, 2007, Department of State(DOS) issued the January 2008 Visa bulletin (available at http://travel.state.gov/visa/frvi/bulletin/bulletin_3897.html) (referred herein as January bulletin). On January 7, 2008, DOS issued the February 2008 Visa bulletin( available at http://travel.state.gov/visa/frvi/bulletin/bulletin_3925.html) (refered herein as February Bulletin). Both bulletins are attached hereto as **Exhibit O.** January Bulletin states that visa numbers for Indian Nationals under the employment based EB2 category will have retrogressed to January 2000. Plaintiffs have a priority date of April 3, 2000 and thus were affected by the retrogression since January 2008. The February Bulletin states that visa numbers are unavailable for Indian Nationals in the EB2 category for the rest of fiscal year. The Nyaga court observed that "Because the statute did not plainly prohibit the adjudication of Nyaga's application, the court turned to congressional intent and concluded that "Congress could not have intended for aliens to lose their eligibility .. due solely to government inaction.". See *Nyaga v. Ashcroft*, 323 F.3d 906 (11th Cir. 2003) . In instant complaint, Defendants, USCIS are well aware of the fact that Indian Nationals in the employment based immigration categories frequently face retrogression of visa numbers. Defendants USCIS have recklessly violated the congressional intent of processing applications as expressed in 8 U.S.C. 1153(e) and adjudicated applications with priority dates later than the plaintiffs. They have and will continue to hold Plaintiff's life and careers in a state of limbo. There is no order to the movement of priority dates for immigrant visa numbers, especially with regard to high demand nations like India and China.

64. Plaintiffs wish to bring to the attention of honorable court developments in two related mandamus lawsuits filed recently in the District Court of Columbia. In these two lawsuits, Defendants seem to have completed the adjudication of I-485 applications of plaintiffs in record time. The case numbers for these lawsuits are 07-CV-2268 and 07-CV-2299. The lawsuits were filed around 20 December, 2007. The plaintiffs in both these cases, brought forward the argument that they would soon be adversely affected by retrogression pursuant to the visa bulletin of

January 2008.[2] Plaintiff, Rajesh Radhakrishnan notified Defendants Attorney, Richard Myrus over the phone around December 12, 2007 that he too would be affected by the same retrogression and wished to have his namecheck expedited or in the alternative have visa numbers pre-allocated for him and his spouse. Plaintiff also cited case CV-07-0967-PK(District of Oregon) to the Defendants Attorney(where Plaintiff Karthigeyan Seetharam's adjudication seemed to have been expedited in a similar manner or a visa number was preallocated to him). Plaintiff was specifically told that his request could not be accommodated. Plaintiffs request the honorable court to force USCIS and the FBI to release all pertinent information on how applications of these individuals were adjudicated in record time and why those factors were not applied to Plaintiffs in instant complaint. Of specific interest is the nature of FBI namechecks that were completed if any and if they were expedited on request from USCIS. If indeed, the checks were expedited, of specific interest is who authorized them and why. Also of specific interest is whether visa numbers were pre-allocated to these plaintiffs. USCIS should also be compelled to inform the honorable court of all specific instances where expedite namecheck requests for I-485 applicants and/or preallocation of visa numbers were issued under similar circumstances. In these cases, the Government implicitly agree to their mandatory duty to adjudicate I-485 applications.[3] By their actions to adjudicate these applications, Defendants implicitly agree that inaction on the Government's part cannot be employed to penalize an alien who appears to have always acted in good faith and timely submitted all documents to process his I-485 application. Immigration agents may have no duty to inform aliens of matters of national security, but they have primary responsibility to complete investigations of such nature in a timely fashion, esp. if the nature of their investigation lies in their faulty databases on which basis they initiated the investigation. The delay is not justifiable if they cannot prove to the court any set/s of facts that show plaintiffs to be a risk to this country. USCIS officials are under a duty to accord to him within a reasonable time the decision on his I-485 application to which he is entitled by law. By its maneuvers here, the INS has ensnared plaintiff in a "Catch-22" predicament; the Service's conduct is analogous to the entrapment of a criminal defendant and, as such, cannot be countenanced. Given the present uncertainty about retrogression date movement, this would "result in the loss of all that makes life worth living" for the plaintiff. When such serious injury may be caused by USCIS decisions, its officials must be held to the highest standards in the diligent performance of their duties. Here, their duty was clear. Just like the plaintiffs mentioned in these lawsuits, Plaintiff had a clear right under the USCIS own regulation to have his I-485 application adjudicated in a timely manner. USCIS officials, by their inaction, deprived Plaintiffs in instant complaint of that right without justification. See

---

2 In case 07-CV2268, Plaintiff Jayasekar Kovuri is an Indian Citizen who had a labor priority date of 12/07/2000 in EB2 Category and I-485 filing date was 12/2002. In case 07-CV2299, Plaintiff Anand Srinivasan is an Indian Citizen who had a labor priority date of March 1998 in EB3 Category and I-485 filing date was 05/01/2006.

3 These lawsuits were filed in District of Columbia, where they cite the precedent opinion of Judge Emmet G. Sullivan in Liu v Novak, 509 F.Supp. 2d 1, 13(D.D.C. Aug 30, 2007).

*Fano v. O'Neill*, 806 F.2d 1262 (5th Cir. 1987) (allegation that INS acted "willfully, wantonly, recklessly, and negligently" in delaying processing of alien's visa application encompassed element of affirmative misconduct necessary to state equitable estoppel claim); Justice and fair play can only be achieved in this case by holding, as we do, that the Government is estopped from denying plaintiff the benefit of securing a visa-number in seeking an adjustment of his status under 8 U.S.C. § 1255. Plaintiff's application should be remanded so that they may be adjudicated under the same circumstances as if the FBI had completed all required checks within a reasonable time after receiving their applications on March 2005.

65. Plaintiffs also allege that between January 2005 and February 2007, USCIS had unofficially permitted filing of lawsuits such as this to expedite FBI namecheck. USCIS had issued an internal memorandum to that effect(**attached hereto as Exhibit Q**). Plaintiffs have been denied this avenue to obtain relief and this warrants estoppel.

66. On February 4, 2008, Defendants issued an internal memorandum to its field offices( made public many days later on their website under laws and regulations) **(Attached hereto as Exhibit R)**. Until this memo was issued, USCIS required that FBI namechecks and subsequent review of results need to completed before applicants be adjudicated. This memo states that FBI namecheck results are no longer required for adjudication of adjustment of status applications if the checks are pending for over 180 days. If derogatory information is uncovered by these checks the permanent resident status conferred on such applicants would be summarily revoked.

67. On February 7, 2008, Plaintiff Rajesh Radhakrishnan attended an infopass appointment at the local USCIS office. He was told by Immigration Officer Norberg that his application was preadjudicated under review as of November 1, 2007. She said visa numbers could have been preallocated to Plaintiffs application on that date but the records do not confirm that numbers have indeed been allocated. With regard to plaintiffs applications, nothing precludes the government from claiming an unused number from FY 2005-2007. Indeed, nothing in the INA explicitly prohibits using a employment based visa number from the fiscal years. In contrast, a diversity immigrant loses eligibility for a visa when fiscal year ends (see 8 U.S.C. § 1154(a)(1)(I)(ii)(II)). Also, 8 U.S.C. § 1156 does not restrict reuse of the unused number during any particular fiscal year. See also 8 U.S.C. § 1153(g) - if a person fails to apply for immigrant visa within a year after s/he is notified that a visa number is available, s/he is no longer eligible for a visa. However, if a person shows that the failure happened because of the circumstances beyond alien control, a visa number can be reinstated within 2-year period.

68. Since February 4, 2007, Defendants presently err in denying Plaintiffs visa numbers.. i.e.. Visa number are indeed available. See Ngwanyia v Ashcroft, 302

F. Supp. 2d 1076( Dist. Minnesota, Feb 12, 2004)- *Because the Court "must presume that a legislature says in a statute what it means and means in a statute what it says," Connecticut Nat. Bank v. Germain, 503 U.S. 249, 254, 117 L. Ed. 2d 391, 112 S. Ct. 1146 (1992), the Court presumes that Congress acted intentionally when it omitted a temporal limit on the use of asylee adjustment numbers...Just as "courts are obligated to refrain from embellishing statutes by inserting language that Congress has opted to omit," Root v. New Liberty Hospital Dist., 209 F.3d 1068, 1070 (8th Cir. 2000), so too must Defendants avoid taking away with their practices what Congress has granted by statute. Defendants have no more power to extinguish these numbers than they have to create them.*

69. Nearly three years have elapsed since USCIS and FBI received plaintiffs' application for review. Defendants give no reason for this delay other than that, due to increased national security, FBI namechecks for Plaintiffs must be complete. Other courts have rejected this general argument, explaining plaintiffs, such as Rajesh Radhakrishnan and his family, are already living and working in the United States while the application is pending. See Tang, 493 F. Supp. 2d at 158. Defendants provide no reason why Plaintiff's application requires such an extended delay and point to no single action that has been taken to further Plaintiff's particular application. Plaintiffs educational and employment history is not particularly complicated. Perhaps the FBI's initial search revealed some record that needs to be reviewed that is difficult to retrieve. Perhaps Plaintiff's name is sufficiently common that many records need to be reviewed. Perhaps the FBI has encountered some other difficulty in determining whether possible derogatory information exists. However, the FBI has not deigned to enlighten either Plaintiff or the court as to what has placed him in the 1% of name check requests that cannot be completed within 60 days. Furthermore, the record is devoid of any attempt by the USCIS to reduce the amount of delay by making an expedited request to the FBI. Since February 2007, that request presumably has not been made in accordance with the new policy not to make any expedited requests simply because a lawsuit is filed, regardless of the length of the delay. However, no explanation is given as to why the USCIS made no expedited request before February 2007 or why the new policy was instituted. See Liu v. Chertoff, 2007 U.S. Dist. LEXIS 65687(D.Oregon, Aug 29, 2007). The government has not even reported if an FBI analyst has even begun processing plaintiffs namecheck."The [US]CIS simply does not possess unfettered discretion to relegate aliens to a state of 'limbo,' leaving them to languish there indefinitely." Kim v. Ashcroft, 340 F. Supp. 2d 384, 391-92 (S.D.N.Y. 2004)). Now, USCIS again has arbitrarily decided that FBI namecheck results need not be completed in order to adjudicate applicants such as plaintiffs(See exhibit R). In doing so, Defendants USCIS seem to engage in a deliberate pattern of deception; and that, as a result, Plaintiffs were forever prevented from obtaining visa numbers for the fiscal years 2005-2008. *Unexplained delays by the Immigration and Naturalization Service in its administrative procedures can amount to affirmative misconduct. If these delays actually prejudice the alien, then the government is estopped from denying the*

*alien the relief he has requested.* See *Mendoza-Hernandez v. INS*, 664 F.2d 631, 639 (7th Cir. 1981). These claims have enough "possible validity" to constitute a colorable cause of action for equitable estoppel. See Mauting v. INS, 16 Fed. Appx. 788 (9th Cir. 2001).

70. In Akbarin, the first circuit court stated that "the soundest method for analyzing a claim of estoppel against the Government in an immigration case is to make two principal inquiries: whether the Government's action was error, and if the complaining party reacted to the error, whether the action was intended to or could reasonably have been intended to induce reliance." 669 F.2d at 843. See Akbarin v. INS, 669 F.2d 839, 842-44 (1st Cir. 1982). Here the Government failed to comply with regulations in withholding adjudication pending FBI namecheck. Indeed even the propriety of FBI namechecks for I-485 applications can be called in to question. Defendants violated statutes in requesting visa numbers for applications with much later priority dates; implemented a capricious system of expediting namechecks and adopted an unreasonable litigation strategy on related lawsuits and failed to expedite plaintiffs FBI namechecks depriving plaintiffs of visa numbers. Plaintiff relied on USCIS's conduct for timely adjudication of their applications. There exists no parameters surrounding this complaint that the Plaintiffs can be held at fault.

71. Plaintiffs are eligible and remain eligible for adjustment of status. However, USCIS misconduct is denying them visa numbers now. They are still waiting to adjust their status even though they filed adjustment application in March, 2005 and have a priority date of April 3, 2000. The priority dates were current till September 2005 and current again in July 2007. USCIS conduct continues to deprive Plaintiffs benefit of accruing time toward naturalization.

72. If the defendants had distributed all visa numbers available for plaintiffs category every fiscal year since 2005 and distributed the numbers in the mandated order, they already would have adjusted Plaintiffs status. The defendants have not adjusted his status in the mandated order, that is, by priority dates. Plaintiffs has no remedy to compel the defendants to adjust his status in the proper order, other than through this lawsuit.

> *Another aspect of the present misconduct relates to the agency's failure to fulfill a statutory duty. The INS has a statutory obligation to issue visas to qualified applicants to the full extent of the annual quota limits established by Congress. The legislative history of the Immigration & Naturalization Act indicates that this duty has not been left to agency discretion,[..] but is obligatory upon the agency.* See, Galvez v. Howerton, 503 F. Supp. 35(C.D. Cal. 1980).

73. After 15 months, the defendants consider the fingerprints to have "expired" and destroy the fingerprint records supplied by plaintiffs. The defendants have obligated the plaintiffs to be re-fingerprinted before their adjustment applications

have been approved, at additional expense and inconvenience, even though, of course, their fingerprints have not changed. Defendants do not coordinate the fingerprinting to ensure that all approvable cases have valid fingerprints at the time the employment adjustment numbers are assigned.

74. Because of defendants' delays in processing EAD applications, Plaintiffs must apply to renew their EADs months before they expire and, then, must hope that the defendants process the renewal application before their current EAD expires. Plaintiffs run the risk of losing jobs or employment opportunities and accruing illegal status because of the defendants' delays in approving the EAD renewals.

75. Defendants do not maintain accurate records of the queue. The DOS distributes employment based adjustment numbers based on unreliable reports from the USCIS regarding which applications are ready to be approved or have been approved. Defendants do not have a system for correcting improper allocations of employment adjustment numbers (i.e. adjustments granted out of priority date order).

76. Defendants are unable or unwilling to tell Plaintiffs where they are in the queue or how long they will have to wait to adjust status, except very generally and inaccurately. Plaintiffs have no way to determine if they even are on a waiting list or if so, when they can expect to be adjusted. Retrogression can have serious consequences because applicants and their families who expected to obtain green cards suddenly cannot. Plans that depend on a green card status, such as to study, advance in a job, or obtain essential credentials, are delayed.

77. Plaintiffs have no way to verify whether defendants are adjusting employment based applicants in the order in which their adjustment applications were filed.

78. Estoppel here would not interfere unduly with the operation of the immigration laws. AC21 has infact established congressional intent in allocation of visa numbers exceeding per-country limits. No irreparable harm would befall by allocating two visa numbers to Plaintiffs now. USCIS has itself to blame on why someone with Plaintiffs priority date is still languishing without having a visa number. In fact, congressional intent is best served by using visa numbers available from AC21 in fiscal year 2005 or visa numbers that were unutilized in fiscal year 2006( and plaintiffs are granted a backdated Green Card that they rightly deserve).

79. In McNary, the United States Supreme Court held that Congress did not preclude judicial review of the constitutionality of the procedures adopted by the INS in reviewing SAW applications. See id. at 483-84. Plaintiffs in McNary alleged, among other things, that the INS conducted arbitrary interviews, did not allow applicants to present witnesses, and did not provide competent translators. See McNary v. Haitian Refugee Ctr., Inc., 498 U.S. 479, 112 L. Ed. 2d 1005, 111 S. Ct. 888 (1991).

80. Though no statutory deadline is imposed for adjudication of Plaintiffs applications, if either of them is truly a security threat to the US, it behooves the Defendants, USCIS and the FBI to act on their application promptly so that this threat is quickly identified. To the extent that any disclosure about the progress of the name check would reveal sensitive information, the Court could allow submission of pleadings under seal for ex parte review.

81. Section 202 (8 U.S.C. § 1571) of the Title II of the American Competitiveness in the Twenty-first Century Act of 2000(AC21) clearly lays down the parameters of reasonableness in immigration adjudication, stating: "...It is the sense of Congress that the processing of an immigration benefit application should be completed not later than **180 days** after the initial filing of the application.

82. Plaintiffs have a clear right to have their I-485 application adjudicated in a timely manner. The adjudication of an I-485 adjustment of status application is ministerial, non-discretionary task that Defendants must perform within a reasonable period of time. See, *Nyaga v. Ashcroft*, 323 F.3d (11th Circ. 2003). The court in Nyaga held that although it did not have jurisdiction to order the Immigration Service to issue a decision, the court can order the Immigration Service to "adjudicate the application thoroughly and make a decision one way or another." Id. at 1253; . (*Yu v. Brown*, 36F. Supp. 2d 922, 925 (D.N.M. 1999); Agbemaple v. I.N.S., 1998 U.S. Dist. LEXIS 7953 (N.D. Ill. May 12, 1998). In Yu, where plaintiff sought a writ of mandamus to force INS to act on her application for lawful permanent residence two and half years after she applied, the court concluded that Yu's petition properly stated a claim for mandamus. Also in Elkhatib v. Bulter, 2005 U.S. Dist. LEXIS 22858 (S.D. Fla. Jun 6, 2005) court found that respondents have a non-discretionary duty to process Plaintiff's application within a reasonable period of time

83. Under § 706 of the Administrative Procedure Act (APA), a court may set aside any agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). In Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984), the Supreme Court established a two-pronged framework for judicial review of an administrative agency's interpretation of the statutes and regulations that it administers: If congressional intent is clear, both the court and the agency must give effect to the unambiguously expressed intent of Congress. If, however, Congress has not directly addressed the exact issue in question, a reviewing court must defer to the agency's construction of the statute so long as it is reasonable. In this case, congressional intent is clear in 8 U.S.C. § 1153(e). *Immigrant visas made available under subsection (a) or (b) of this section shall be issued to eligible immigrants in the order in which a petition in behalf of each such immigrant is filed with the Attorney General.* On November 29, 1991, the Service published a final rule on employment-based petitions in the Federal

Register at 56 FR 60897-60913. The final rule, codified at 8 CFR 204.5(d), provided that the priority date for an employment-based petition accompanied by a labor certification shall be the date on which any office within the employment service system of the Department of Labor accepted the request for labor certification. A priority date determines when an alien who has had an immigrant visa petition approved on his or her behalf may submit his or her application for permanent resident status or an immigrant visa. Plaintiff, Rajesh Radhakrishnan has a priority date of April 3, 2000. USCIS action in adjudicating applications with a priority date later than that of plaintiff is indeed arbitrary, capricious and an abuse of discretion. USCIS action in selectively expediting namechecks for applicants who have filed mandamus lawsuits is an abuse of discretion. Section 706(1) of the APA also provides that courts may "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). "In the absence of a definite statutory deadline for action," an agency's inaction may become final if one of three situations exist:

1. the agency affirmatively reject's a proposed course of action;
2. the agency unreasonably delays action; or
3. the agency delays responding, beyond the time in which action could be effective.

See Coalition for Sustainable Resources, Inc. v. U.S. Forest Service, 259 F.3d 1244, 1251 (10th Cir. 2001).

84. The Ninth circuit court in Mauting v. INS, 16 Fed. Appx. 788 (9th Cir. 2001) opined that Estoppel may be applied against the INS where it engages in some "affirmative misconduct" beyond mere negligence. In instant complaint, Estoppel against the government applies because the USCIS wrongful act of issuing Green Cards to applicants with a priority date later than the plaintiffs(on the sole basis that plaintiffs in instant complaint have a long-pending namecheck due to FBI inaction) is in violation of 8 U.S.C. 1153. "Deference to the [agency's] interpretation of the immigration laws is only appropriate if Congress' intent is unclear." See Socop-Gonzalez v. INS 272 F.3d 1176, 1183 (9th Cir. 2001). This constitutes serious injustice. Plaintiff further notes that public's interest will not suffer undue damage by imposition of the liability of obtaining a visa number for the plaintiffs. Unlike diversity visa applicants, employment based applicants can claim visa numbers from any fiscal year. In instant case, Plaintiffs allege that the USCIS recklessly issued visa numbers to applicants with later priority dates and unlawfully witheld adjudication in Plaintiffs case, in violation to it's own regulations(8 C.F.R. §103.2(b)(18)). Defendants in claiming that national security requires that plaintiffs namechecks be complete, notwithstanding the fact that the FBI was unable to identify any security threats due to Plaintiffs for the past thirty six months; seem to engage in a deliberate pattern of deception; and that, as a result, the Plaintiffs were forever prevented from obtaining visa numbers from the fiscal years 2005-2008. These claims have enough "possible validity" to constitute a colorable cause of action for equitable estoppel.

85. These allegations if proved right would enable this court to estopp the

Government agencies. See Santiago v. INS, 526 F.2d 488, 492 (9th Cir.1975) (en banc) (holding in the immigration context that the court continues "to believe that estoppel is available in such cases where the particular facts warrant it") (citing INS v. Hibi, 414 U.S. 5, 8 (9th Cir.1973)); USCIS has had much more than reasonable time to complete all requirements for adjudicating Plaintiffs long pending adjustment application. To date, neither the USCIS nor it's contracting agency, FBI, has offered any plausible explanation that warranted withholding of the adjudication since April 3, 2005.

86. Also see Sun Il Yoo v INS, 534 F.2d. 1325, ( 9th Cir.1976) " *in short, no apparent justification for the Service's unreasonable delay in recognizing the bona fides of Yoo's petition. Such conduct, it seems to us, fully merits the [**7] characterization of "oppressive"*. Also see, Galvez v. Howerton, 503 F. Supp. 35(C.D. Cal. 1980) *"In the present case,... the plaintiffs were clearly eligible for permanent resident status at the time they filed their applications.... The Court finds that the INS has engaged in affirmative misconduct ... and that defendants are estopped from denying them permanent resident status"*. The principle recognized in this case is applicable to instant complaint. Obviously, USCIS and its contracting agency FBI had primary responsibility for completing plaintiffs namecheck in a reasonable time. Alternatively, Plaintiff's priority date warranted that USCIS had expedited Plaintiff namecheck or preallocated visa numbers to honor congressional mandate for priority dates. Under the principle recognized in Sun Il Yoo, id., it would be inequitable to make plaintiffs liable for the lack of due diligence shown by Defendants to adjudicate plaintiff's application. See also Yu v. Brown, 36 F. Supp. 2d 922, 935 (D.N.M. 1999)("The Court cannot imagine a reasonable justification for allowing Yu's application to go unresolved for more than two years, until after Yu reached the age of majority meaning she may no longer be eligible for SIJ status").

87. In the instant case, plaintiff's reliance on USCIS conduct not only caused plaintiff to suffer detriment, but was also reasonable under the circumstances. After having furnished all required information, plaintiff relied on USCIS to process his application in a reasonable and timely manner. Furthermore, plaintiff relied on USCIS to process his application in the order of their priority dates as expressed in 8 U.S.C. § 1153(e). Nothing in this case suggests that any part of the nearly three year delay in the processing of plaintiff's application was plaintiff's fault. The conclusion is inescapable that in plaintiff's case the delay was unwarranted and unnecessary, even taking into account the workload of the USCIS.

88. Defendants have sufficient information to determine Plaintiffs eligibility pursuant to applicable requirements and complete the processing procedures. Plaintiffs have done everything possible to get their cases adjudicated but the Defendants have clearly not given the Plaintiff any form of relief.

## XIII. INJURY TO PLAINTIFF

89. The delay has resulted in significant hardship to the Plaintiffs. Plaintiffs have been deprived of the status of lawful permanent residence which has resulted in their incurring numerous additional expenses, including but not limited to legal expenses, USCIS filing fees, and other expenses directly related to their not having Lawful Permanent Resident Status.

90. Plaintiffs are waiting and will continue to wait for a significant amount of time for a decision on their AOS application. Their status in the United States has been and will continue to be uncertain. Plaintiffs could not plan ahead because they have not known and do not know when they would become a permanent resident.

91. Plaintiffs have lost a significant time while pursuing his adjustment of status application, making inquiries with USCIS, meeting with lawyers, applying for yearly work authorization renewals, reporting for fingerprinting, and otherwise pursuing his delayed permanent residency.

92. Plaintiffs have to obtain yearly work authorization permits while his AOS application is pending. Plaintiffs have to obtain advance parole document to travel abroad to meet their family. Plaintiffs had to obtain transit visa from British Embassy to merely travel via London Heathrow Airport to their home country(India) to visit family. This results in significant out-of-pocket expenses, including attorneys' fees, inconvenience and loss of wages.

93. Some universities and colleges consider a person without permanent residency to be an out-of-state resident and hence charge him or her out-of-state tuition. Due to that Plaintiff Smitha Sankaran Nair could not proceed with her educational plans.

94. Due to delays in adjudication of Plaintiff's permanent residency application, Plaintiff's naturalization(to become a U.S. Citizen) have been delayed. Therefore Defendants' unreasonable delay in adjudicating AOS application deprived Plaintiffs for longer time of citizenship benefits like a right to vote and fully participate in our democracy; receive a United States passport; travel freely into and out of the United States; hold a job that is restricted to United States citizens; run for public office. Also, Plaintiffs have been and will continue to be unable to petition for his family members to immigrate to the United States as immediate relatives.

95. Plaintiffs rights to due process of law and equal protection under the Fifth Amendment to the United States Constitution have been and are being violated and will continue to be violated by Defendants' failures as described herein.

96. The last demonstrable action by the defendants is sending a FBI namecheck request for plaintiffs application to the FBI in April 2005. The delay plaintiffs have experienced is unreasonable. The USCIS's assurance that it will finish the plaintiff's application as soon as visa numbers are available does not render the delays experienced any less unreasonable.

## XIV. GROUNDS FOR RELIEF

97. Defendants, despite having a duty to act on Plaintiffs application within reasonable time, have failed to process and adjudicate Plaintiff's application for permanent residency in a timely manner. This duty is non-discretionary and mandated by federal and judicial precedent.

98. Defendant USCIS are legally bound to request visa numbers for applicants such as plaintiff based on priority dates of applicants. Violation of this statute is affirmative misconduct and warrants estoppel.

99. Defendant USCIS conduct in failing to process Plaintiff's application and adjudicate his case in a reasonably timely manner has caused unnecessary and injurious delays to Plaintiff, in violation of his rights.

**Count I.**
**Mandamus Action**
**28 U.S.C. § 1651, 28 USC § 1361, 8 C.F.R. §103.2(b)(19) and 8 C.F.R. §245.2(a)(5)(i)**

100. Plaintiffs have exhausted all administrative remedies available and have determined that no adequate remedy exists.

101. Plaintiffs incorporate all allegations made hereinabove that are pertinent to this Court.

102. Defendants in their response dated 21 December 2007, submitted the Canon Declaration from FBI. This declaration from the FBI clear demonstrates that Defendant FBI has a non-discretionary duty to complete all USCIS-requested NNCP namechecks within a reasonable time. There is no legal authority for the argument that FBI may choose not to complete a USCIS-requested NNCP name check. Plaintiff have demonstrated that their claim for relief from the FBI's inaction is clear and certain in that there is no legal authority for the FBI to justify it's inaction or to refuse to complete their USCIS-requested NNCP namecheck. The FBI's duty to complete plaintiff's NNCP name checks are purely ministerial in nature and so plainly prescribed by Executive Order that the Agency's duty is free from doubt. Plaintiff's exhaustion of remedies show that there is no other adequate remedy available to them

103. Defendants are charged with the mandatory responsibility of administering and implementing the Immigration and Nationality Act.

104. Defendants bear sole responsibility for timely adjudication of AOS application and to honor congressional mandate in requesting visa numbers for such

applications according to their priority dates.

105. Defendants have failed to discharge their mandated duties.

106. As a result, Plaintiff has suffered and continues to suffer irreparable harm and damages entitling him to declaratory, injunctive and other relief.

107. Plaintiff has exhausted all possible administrative remedies and there exists no other adequate remedy.

108. Strong humanitarian factors favor granting of Mandamus relief.

**Count II.**
**Administrative Procedures Act**
**5 U.S.C. §§ 555, 701 et seq., 8 C.F.R. §103.2(b)(19) and 8 C.F.R. §245.2(a)(5)(i)**

109. By failing to render timely decision on Plaintiff's application, Defendants have violated the Administrative Procedures Act and this constitutes agency action that is arbitrary and capricious, and not in accordance with law. The Court of Appeals for DC Circuit noted that while "[t]here is no per se rule as to how long is too long to wait for agency action … a reasonable time for agency action is typically counted in weeks or months, not years". *In re American Rivers and Idaho Rivers*, 372 F.3d 413, 415 (D.C. Cir. 2004). The delay in this instant case is not judicially unmanageable as the USCIS failed to achieve a concrete goal – to issue a decision upon an application and violated the APA provision to do so within a reasonable time. 5 U.S.C. § 555(b). This Court has power under 5 U.S.C. § 706(1) to compel agency to perform "action unlawfully withheld or unreasonably delayed". The Defendants required by 8 C.F.R. § 103.2(b)(19) and by 8 C.F.R. § 245.2(a)(5)(i) to provide the Plaintiff a notice about the decision upon Plaintiff's application and they have failed to do so within a reasonable time.

**Count III.**
**Administrative Procedures Act**
**5 U.S.C. § 701 et seq. and 8 C.F.R. §103.2(b)(18)**

110. Plaintiffs incorporate all allegations made hereinabove that are pertinent to this Court.

111. The Code of Federal Regulations establishes conditions under which the adjudication of the Plaintiff's application can be withheld. The Plaintiff's application has been pending for over 2.5 years at the time of filing his complaint with the District Court. So, according to the requirements of 8 C.F.R. § 103.2(b)(18), his application should have been reviewed twice by the USCIS district director (at 1 and 1.5 year marks), once by the USCIS regional commissioner (at 2 year mark) and once by the Associate Commissioner,

Examinations, with the concurrence of the Associate Commissioner, Enforcement. There is no evidence that these procedures have been followed. Therefore, the USCIS have violated the Federal regulations and "unlawfully withheld" adjudication of the legal alien's application. Furthermore, 8 C.F.R. § 103.2(b)(18) is not part of the Subchapter II of the Chapter 12 of the INA, therefore jurisdictional bar of the INA § 242(a)(2)(B)(ii) does not preclude review of the withholding of adjudication. Thus, this Court has the power to grant a relief under 5 U.S.C. § 706(1) and to compel the USCIS to perform agency action "unlawfully withheld".

112. Defendants have failed to discharge their mandated official duties.

113. As a result, Plaintiffs have suffered and continues to suffer irreparable harm and damages entitling him to declaratory, injunctive and other relief..

**Count IV.**
**Declaratory Judgment Act**
**28 U.S.C. § 2201, 8 C.F.R. §103.2(b)(18), 8 C.F.R. §103.2(b)(19) and 8 C.F.R. §245.2(a)(5)(i)**

114. Plaintiffs incorporate all allegations made hereinabove that are pertinent to this Court.

115. Plaintiffs contend that Defendants' actions and decisions relating to delays in I-485 adjudication and attendant procedures are unconstitutional, violate the INA and the applicable regulations, and are arbitrary and capricious and seek a declaration to that effect under 28 USC § 2201.

116. Defendants have failed to discharge their mandated official duties.

117. As a result, Plaintiffs have suffered and continues to suffer irreparable harm and damages entitling him to declaratory, injunctive and other relief.

**Count V.**
**Administrative Procedures Act**
**5 U.S.C. § 706 et seq. and 8 U.S.C. § 1153**

118. Plaintiffs incorporate all allegations made hereinabove that are pertinent to this Court.

119. Plaintiffs contend that Defendants' actions and decisions relating to delays in I-485 adjudication and attendant procedures are unconstitutional, violate congressional intent in 8 USC § 1153(e) regarding priority dates for requesting visa numbers for applicants.

120. Defendants have failed to discharge their mandated official duties.

121. It would be gross injustice if Plaintiffs with a priority date of April 3, 2000 are denied visa numbers, unutilized solely due to actions of USCIS. USCIS position in Plaintiffs application is arbitrary, capricious and unreasonable.

122. As a result, Plaintiffs have suffered and continues to suffer irreparable harm and damages entitling him to declaratory, injunctive and other relief.

**Count VI.**
**Equitable Estoppel**

123. The equitable considerations in this case are considerable and overwhelming.

124. Plaintiffs incorporate all allegations made hereinabove that are pertinent to this Court.

125. There is no prejudice to the government if visa numbers are made available to plaintiff. Such grant will not adversely affect public interest.

126. It would be gross injustice if Plaintiffs with a priority date of April 3, 2000 are denied visa numbers, unutilized solely due to actions of USCIS. USCIS position in Plaintiffs application is arbitrary, capricious and unreasonable.

**Count VII.**
**Equal Access to Justice Act**
**5 U.S.C. § 504 and 28 U.S.C. § 2412**

127. Plaintiffs incorporate all allegations made hereinabove that are pertinent to this Court.

128. If prevailed, Plaintiffs will seek legal fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 5 U.S.C. § 504 and 28 U.S.C. § 2412.

## XV. PRAYER

129. WHEREFORE, in view of the arguments and authority noted herein, the Plaintiffs respectfully prays that the Court:

(a) Assume jurisdiction over this cause.

(b) Compel or Estopp Department of State(DOS) to release visa numbers required for adjudicating plaintiff applications. Many options remain to obtain a visa number:

i) Obtain AC21 visa numbers for year 2005

ii) Obtain unused visa numbers for year 2006 or 2007

iii) Obtain AC21 visa numbers for year 2008 or estop Government from denying visa numbers from year 2005-2008.

(c) Compel Defendants to expeditiously adjudicate plaintiffs application using visa number obtained from DOS.

(d) If plaintiffs are indeed found eligible for permanent resident status, compel or estopp government from denying plaintiffs benefit of permanent resident status as of a date deemed proper by this court.i.e.. grant a backdated Green Card. Many options remain:

i) Backdate Green Card issue date to 180 days from I-485 receipt date of March 11, 2005.

ii) Backdate Green Card issue date to first date of fiscal year from which visa number is used.

(e) Grant such other and further relief as the Court deems proper under the circumstances; and

(f) Grant Plaintiffs the right to seek reasonable fees, which covers the filing fees and time cost the Plaintiff spent to prepare the case, pursuant to the Equal Access to Justice Act.

Respectfully Submitted,

Dated February 26, 2008

Rajesh Radhakrishnan

Rajesh Radhakrishnan
**PRO SE**
49 Ballou St
Cumberland RI 02864

Telephone ( 401)401-0591
Facsimile ( 401)-276-4408
Email: rip@3ds.com

Smitha Sankaran Nair

Smitha Sankaran Nair
**PRO SE**
49 Ballou St
Cumberland RI 02864

# CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2008, I filed the Motion for leave to file Third Amended Complaint with the Clerk of the United States District of Rhode Island and a copy has been forwarded by certified mail, postage prepaid, to the Defendants' Counsel at:

Robert Clark Corrente,
United States Attorney
United States Attorney's Office
Fleet Center
50 Kennedy Plaza, 8th Floor,
Providence
RI 02903

Rajesh Radhakrishnan

Rajesh Radhakrishnan
49 Ballou St
Cumberland
RI 02864 USA
Ph: 401 441 0485
Email: radhakrishnan.rajesh@gmail.com